**WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
Michael R. Adele, 138339
techlitcenter@yahoo.com
Faye Rasch, State Bar No. 253838
frasch@wgllp.com
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Telephone     714-966-1000
Facsimile     714-966-1002

Attorneys for Chapter 7 Trustee
Weneta M.A. Kosmala

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:16-bk-14227-ES |
| DENNY ROY STEELMAN, | Chapter 7 |
| Debtor. | Adversary No. 8:18-ap-01042-ES |
| WENETA M.A. KOSMALA, solely in her capacity as Chapter 7 Trustee of the Estate of Denny Roy Steelman, | **CHAPTER 7 TRUSTEE'S EMERGENCY MOTION FOR:**<br>**(1)  TEMPORARY RESTRAINING ORDER AND;**<br>**(2)  ISSUANCE OF ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE.** |
| Plaintiff, | |
| KEVIN LIEBECK, as executor of the Estate of DENNY ROY STEELMAN, KEVIN LIEBECK as successor Trustee of the Survivors Trust, as under the 2010 Steelman Inter-Vivos Trust, MARK ZIEBOLD as trustee of the PRIVATE RETIREMENT TRUST, SHAUNAH LYNN STEELMAN; an individual, and JODI DENISE STEELMAN, an individual, NATIONWIDE LIFE INSURANCE COMPANY, NATIONWIDE LIFE AND ANNUITY COMPANY, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF FAYE C. RASCH, WENETA M.A. KOSMALA, HOWARD B. GROBSTEIN AND CLAUDIA YOSHONIS RE: NOTICE**<br><br>**DATE:    July 31, 2018**<br>**TIME:    9:30 a.m.**<br>**CTRM: 5A** |
| Defendants. | |

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE,

2  DEFENDANTS AND ALL OTHER PARTIES-IN-INTEREST:

3      Plaintiff Weneta M.A. Kosmala ("Plaintiff"), in her capacity as the duly appointed and acting

4  chapter 7 trustee of the bankruptcy estate ("Estate") of Denny R. Steelman ("Debtor"), hereby files

5  this motion on an emergency basis for: (1) temporary restraining order; and (2) issuance of order to

6  show cause why a preliminary injunction should not issue ("Motion"), and respectfully represents as

7  follows:

8  **I.    INTRODUCTION**

9      As a result of newly discovered evidence, the Trustee is seeking the issuance of a temporary

10 restraining order ("TRO") on an emergency basis prohibiting Kevin Leibeck as successor Trustee

11 of the Survivors Trust under the 2010 Steelman Inter-Vivos Trust Dated 8/10/2010 and as executor

12 of the of the Estate of Denny Roy Steelman ("Leibeck"), Mark Zeibold ("Zeibold"), as Trustee of

13 the Private Retirement Trust ("PRT") , Jodi Denise Steelman ("Jodi") and Shauna Lynn Steelman

14 ("Shauna" along with Jodi, Leibeck and Zeibold collectively the "Defendants") from taking any

15 action to dispose of or dissipate assets of the PRT: including but not limited to the proceeds of the

16 Nationwide Contract that were initially deposited into the "Union Bank account in the name of The

17 Private Retirement Trust #Steden1007 Mark Ziebold," account number 0073642555. (the "Bank

18 Account").

19     The Trustee believes that, at this time, there is a need for immediate court intervention.  The

20 Debtor, who died post-petition, through the PRT, owned a Variable Annuity Contract ("Nationwide

21 Contract") with Nationwide Life Insurance Company ("Nationwide") under which the Debtor was

22 the annuitant. On July 26, 2018 (last Thursday), the Trustee was advised that on March 5, 2017 (ie.

23 post-petition), Nationwide was notified of the Debtor's death and a request to pay the surrender value

24 of the policy was made. Thereafter, Nationwide paid the full surrender value of the Nationwide

25 Contract ($534,390.30) ("Nationwide Proceeds") and deposited the same into the Bank Account. The

26 Trustee was never notified of the cash out of the Nationwide Contract, and Nationwide was not

27 notified of the Debtor's bankruptcy case.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1    The Bank Account is held in the name of the PRT – an Estate asset. The PRT is specifically

2    listed as an asset of the Estate on the Debtor's schedules. Put simply there can be no dispute as to

3    whether the PRT is property of the Estate because the Debtor himself scheduled it as an asset. That

4    the Debtor claimed an exemption in the PRT (an exemption that Trustee believes is wholly invalid)

5    certainly does not give the Defendants free access to dissipate a scheduled asset of the Estate.

6        Thus, the Plaintiff claims a legal and equitable interest in the PRT and all of its assets. The

7    Plaintiff is concerned that in the absence of the relief requested herein, the assets of the PRT,

8    especially the Nationwide Proceeds – a liquid asset, will be dissipated and become unavailable to the

9    Debtor's creditors. Indeed, the Trustee is concerned that this may, to some extent, have already

10    occurred. If the Defendants are not enjoined from taking such action during the pendency of this

11    proceeding, the Defendants will cause irreparable harm to the Estate.  On the other hand, the

12    Defendants will not suffer any harm if they are enjoined from dissipating the assets of the PRT.  On

13    the contrary, the assets of the PRT including the Nationwide Proceeds will merely be preserved while

14    the parties litigate their respective alleged interests in the Bank Account, Nationwide Proceeds and

15    other assets of the PRT.

16        The balance of hardships is clearly in favor of issuing a TRO in favor of the Estate in order

17    to maintain the status quo during the pendency of this proceeding. The Plaintiff has no adequate

18    remedy at law for the injuries that are being threatened. Should the PRT assets be spent or

19    otherwise dissipated, the Estate's interest in the PRT will be greatly diminished, all to the detriment

20    of creditors of the Estate.  A TRO is the only remedy available in this instance to prevent the

21    Defendants from dissipating the Bank Account, Nationwide Proceeds and/or other PRT assets.

22    **II.    FACTUAL AND PROCEDURAL HISTORY**

23        **A.    The Bankruptcy Case**

24        On October 13, 2016, (the "Petition Date") the Debtor filed a voluntary petition for relief

25    under chapter 7 of the United States Bankruptcy Code. Weneta M.A. Kosmala was appointed chapter

26    7 trustee. On that same day, the Debtor filed his schedules ("Debtor's Schedules"). A true and correct

27    copy of the Debtor's Schedules is attached hereto **as Exhibit "1".** Schedule B under section 21.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1    Retirement or pension Accounts lists the PRT and states that the PRT has a value of $1,385,805. See

2    Exhibit 1 at p.5.

3    Several months into the case the Debtor died.  The Debtor's affairs are being managed by

4    the Defendants. Mr. Liebeck is the executor of the Debtor's probate estate and successor trustee

5    under the 2010 Trust. Zeibold is the trustee of the PRT. Jodi and Shauna are the Debtor's daughters.

6    In accordance with the Debtor's schedules, the largest creditor in the case is the Trustees of

7    the Southern California IBEW-NECA Pension Plan (the "Pension Fund"). The Pension Fund is

8    judgment creditor who has prevailed on its motion for summary judgment in the litigation entitled

9    *Trustees of the Southern California IBEW-NECA Pension Pan v. Kevin Liebeck, as Executor of the*

10   *Estate of Denny R. Steelman* ("Pension Fund Litigation"). In the Pension Fund litigation, the Debtor

11   was found liable for withdrawal liability with regard to his prior company's pension fund. The

12   District Court further found that "Steelman cannot avoid liability merely because he shifted the

13   property into a separate legal entity." A true and correct copy of the District Court Order granting

14   the MSJ is attached hereto as **Exhibit "2** (at p.7 of 8)."

15   **B.    The Pre- and Post- Petition Fraudulent Transfer and Dissipation of the**

16   **Debtors' Assets**

17   **1.    Pre-Petition Fraudulent Transfer of the Debtor's Assets**

18   The Pension Fund Litigation was commenced on April 8, 2015, and sought to recover from

19   the Debtor, *inter alia*, $1,421,938.87 in unpaid pension fund withdrawal liability, plus attorneys'

20   fees.  On August 24, 2015, the court in the Pension Fund Litigation set trial in the action for June 14,

21   2016.

22   Also, in 2015, after the Pension Fund Litigation had already been filed, the Debtor began a

23   transparent effort to fraudulently shelter his assets from creditors, and to prevent the Pension Fund

24   from ever collecting on the (summary) judgment it ultimately would receive.  Specifically, the Debtor

25   engaged TRUST-CFO to set up and administer the purported "Private Retirement Trust" -- PRT. In

26   accordance with the PRT documents, the PRT was formed on December 9, 2015 (less than four

27   months after trial setting in the Pension Fund Litigation). True and correct copies of the relevant

28   pages of the PRT are attached hereto as **Exhibit "3."** The Debtor is the sole participant in the PRT.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1    The listed employer/sponsor of the PRT is Retirement Wealth Management LLC ("RWM"). In

2    accordance with RWM's Operating Agreement (the "Operating Agreement"), RWM began operating

3    contemporaneously with the PRT on December 9, 2016.  A true and correct copy of the Operating

4    Agreement of RWM is attached hereto part of Exhibit "3" at 000108.  RWM's purpose, per its

5    operating agreement, is to provide "centralized management of investments and business activities."

6      Tellingly, the Debtor's entire career was as a contractor in the *electrical field,* yet the Debtor

7    started a new company in a completely different field at age 70, even though he was set to retire

8    months later at 71, all in connection with his so-called "Private Retirement Trust" -- PRT.

9      Per the PRT documents, the Debtor funded the PRT with four (4) cash deposits from his

10    Union Bank Checking Account as follows: (i) December 28, 2015 $500.00, (ii) January 4, 2016

11    $875,000, (iii) March 21, 2016 $195,000 and (iv) March 21, 2016 $287,586.15 for a total of

12    $1,358,086.15 (collectively the "Transfers").  Exhibit "3" at 000094. Therefore, in the year leading

13    up to the Debtor's bankruptcy – and with a trial date looming in the Pension Fund Litigation[1] -- the

14    Debtor deposited almost $1.5 Million Dollars into the newly formed PRT ("PRT Assets").

15      The beneficiary of the PRT is the "Survivor's Trust as under the 2010 Steelman Inter Vivos

16    Trust." Exhibit "3" at 000013. To further complicate matters, the Survivor's Trust is the 100% owner

17    of RWM (the alleged employer under the PRT). It therefore seems that all of the asset protection

18    vehicles employed by the Debtor were designed to benefit him at the expense of his creditors.

19      Even worse, shortly after its creation, on or about March 16, 2016, the Debtor invaded the

20    PRT, and caused the PRT to make a loan to "Denny R. Steelman, Trustee of the Survivor's Trust

21    under the 2010 Steelman Inter Vivos Trust dated August 10, 2010" in the amount of $815,000 ("PRT

22    Loan"). A true and correct copy of the Promissory Note and Deed of Trust are attached here as part

23    of Exhibit "3" at 000155.  The PRT Loan is further evidenced on the Debtor's Schedule D. The PRT

24    Loan is secured by the property commonly known as 26422 Lombardy Road, Mission Viejo,

25

26    _____

27    [1] On January 2016, pursuant to stipulation of the parties the court in the Pension Fund Litigation continued the trial date to September 13, 2016.

28

1  California 92692 ("Property"). It should be noted that while the Debtor listed the entire PRT Loan

2  as secured, the Deed of Trust states that it secures only $2,000.00 of indebtedness. Thus, the secured

3  claim, if any, would only be $2,000.00[2] The Debtor's Schedule C lists the Property as the Debtor's

4  residence and claims an exemption therein.  See Debtor's Schedule D attached hereto as Exhibit "1".

5          The Trustee investigation and review of the PRT documents shows that the funds deposited

6  into the PRT by the Debtor were used as follows: (i) PRT Loan ($815,000) and (ii) Nationwide

7  Annuity ($523,714.19).  The Trustee believes that as of September 30, 2016, $50,466.15 of cash

8  remained in the PRT.  A true and correct copy of the PRT Consolidated Financial Statement is

9  attached hereto as part of Exhibit "3" at 000169.

10          The foregoing makes clear that the Debtor was not in fact accruing cash for his retirement,

11  but instead using the PRT as a shield to hide assets from his creditors while availing himself of the

12  protections of the Bankruptcy Code.

13          Thus, as is set forth in detail below, three things are true. First, the PRT is property of the

14  estate as the exemption has not been allowed. Second, the Debtor's claimed exemption in the PRT is

15  invalid. Third, the transfers to the PRT made by the Debtor were fraudulent.  Accordingly, on

16  February 21, 2018, the Trustee commenced an adversary action seeking declaratory relief, turnover

17  of property of the estate, an avoidance of fraudulent transfers (the "Complaint").  The Complaint

18  centers the Debtor's transfers in connection with the PRT. A true and correct copy of the Complaint

19  is attached hereto as **Exhibit "4."**

20                    **2.        Post-Petition Transfer of the Debtor's Assets.**

21          The Trustee has requested an accounting as to the PRT assets from the Defendants.  As of the

22  date hereof, the Trustee has not received an accounting.  Last week, on July 26, 2018, counsel for the

23  Trustee received a letter from counsel for Nationwide that indicated that the entire Nationwide

24  Contract had been paid out **post-petition** and deposited into the Bank Account. A true and correct

25  copy of the Nationwide Letter is attached hereto as Exhibit "5." Nationwide's counsel has advised

26

27  _____

28          [2] There also appears to be an unrecorded security agreement which also purports to secure the PRT Loan. As it is
unrecorded, the Trustee will shortly be filing a motion under Section 544(a) to avoid the unrecorded agreement.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

**Weiland Golden Goodrich LLP**
**650 Town Center Drive, Suite 600**
**Costa Mesa, California 92626**

1  Trustee's counsel that Nationwide <u>was not</u> given notice of the bankruptcy case.   Thus, it cannot be

2  disputed that there was a post-petition transfer of Estate assets without the knowledge of the Trustee.

3  ### III.    MEMORANDUM OF POINTS AND AUTHORITIES

4  ### A.    The Issuance of a Temporary Restraining Order is Warranted

5          Injunctive relief is available in bankruptcy court in two ways: pursuant to the court's

6  discretionary and inherent equitable power under Section 105(a) of the Bankruptcy Code to issue

7  any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

8  title, or under the auspices of Bankruptcy Rule 7065, which makes Federal Rule 65 applicable in

9  adversary proceedings.  *See In re Rinard (Rinard v. Positive Investments Inc.*, 451 B.R. 12 (2011).

10  The Court is not bound to restrict its basis for issuing a temporary restraining order or preliminary

11  injunction under Federal Rule of Civil Procedure 65 ("Rule 65") because Section 105(a) of the

12  Bankruptcy Code serves the same purpose and the same standards for issuing such injunctions are

13  applicable.  *Id.*

14          "The standards for granting a temporary restraining order and a preliminary injunction are

15  identical."  *Haw. County Green Party v. Clinton*, 980 F.Supp. 1160, 1164 (D.Haw.1997); *cf.*

16  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (observing

17  that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary

18  restraining order).

19          Under Rule 65, the traditional criteria for issuing a preliminary injunction are: "1) a strong

20  likelihood of success on the merits, 2) the possibility of (now likely, not just possible) irreparable

21  injury to plaintiff if the preliminary relief is not granted, 3) a balance of hardships favoring the

22  plaintiff, and 4) advancement of the public interest (in certain cases)."  *Morgan-Busby v. Gladstone*

23  *(In re Morgan-Busby)*, 272 B.R. 257, 261 (9th Cir. B.A.P. 2002).  All of the above listed elements

24  are met in the instant case.

25  ### 1.    Strong Likelihood of Success on The Merits

26          In order to obtain a TRO, the moving party must show that there is a strong likelihood of

27  success on the merits.  *See Owner-Operator Ind. Drivers Ass'n v. Swift Transp. Co.*, 367 F.3d 1108,

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1   1111 (9th Cir. 2004); *see generally Hernandez v. Downey S&L Ass'n*, 2009 U.S. Dist. LEXIS 21495

2   (S.D. Cal. Mar. 17, 2009); *Rinard*, 451 B.R. at 22.

3            a.      Debtors Do Not Have Free Access to Property Claimed as Exempt

4            Here, there is a strong likelihood of success on the merits.  As a preliminary matter, even if

5   the PRT were exempt which it clearly is not, the Defendants seem confused about the effect of

6   asserting an exemption.  Claiming an exemption in an asset does not remove an asset from the estate

7   until such exemption has been allowed. *In, In re Zavala*, 444 B.R. 181, 190 (Bankr. E.D. Cal. 2011),

8   the Court expressly rejected the debtor's attempts to argue otherwise.

9            The Debtors are incorrect in their contention that by claiming an
10           exemption in the prepetition accounts they have removed the accounts
             from the bankruptcy estate…A debtor claiming an exemption in
11           property of the estate may contact the trustee to obtain a distribution
             of that portion of such property of the estate which is properly exempt.
12
13           If the Chapter 7 trustee refuses or fails to properly distribute or
             abandon exempt property of the bankruptcy estate, the remedy under
14           the Bankruptcy Code for the debtor is to obtain an order for
             abandonment pursuant to 11 U.S.C. § 554(b).

15  *In re Zavala*, 444 B.R. 181, 192 (Bankr. E.D. Cal. 2011). *Owen v. Owen*, 500 U.S. 305, 308
16  (1991)("No property can be exempted (and thereby immunized), however, unless it first falls within
    the bankruptcy estate."); *In re Jarski*, 301 B.R. 342, 348 (Bankr. D. Ariz. 2003)(Property remains
17  property of the estate until an exemption is allowed).

18           In accordance with the foregoing case law, it is abundantly clear that a debtor may not simply

19  hide, retain or dissipate claimed exempt property. Notwithstanding, that is exactly what has happened

20  here. The exemption has not been allowed, and the Trustee's time to object to the exemption has not

21  elapsed.  Yet, the Defendants have concealed and likely dissipated the PRT assets and defend their

22  actions by claiming the PRT is exempt.

23           b.      Any Claimed Exemption in the PRT is Invalid

24           Put simply, the PRT cannot be exempt because it does not meet the requirements of CCP

25  §704.115 as required. That section provides as follows: "[a]ll amounts held, controlled, or in process

26  of distribution by a private retirement plan, for the payment of benefits as an annuity, pension,

27  retirement allowance, disability payment, or death benefit from a retirement plan are exempt."  CCP

28  § 704.115(b).  A "private retirement plan" includes the following:

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

(1) Private retirement plans, including, but not limited to, union retirement plans.

(2) Profit-sharing plans designed and used for retirement purposes.

(3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1986, as amended, including individual retirement accounts qualified under Section 408 or 408A of that code, to the extent the amounts held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.

CCP § 704.115(a).  Private retirement plans (i.e, corporate retirement plans) are fully exempt, but, in order to qualify as a private retirement plan under CCP § 704.115, the plan must be designed and used for retirement purposes.  See *Bloom v. Robinson* (In re Bloom), 839 F.2d 1376, 1378 (9th Cir. 1988)(Emphasis Added). Among the factors courts have considered in determining whether this requirement was satisfied are (1) the terms of the pension plan itself, (2) the degree of control exercised by the debtor over the plan, (3) the debtor's compliance with the plan's provisions, and (4) whether transactions appear to be more withdrawals than loans.  *See Bloom*, 839 F.2d at 1379. However, there is not an exhaustive list of factors and no one factor is dispositive.  Instead, all of the circumstances "must be considered in the light of the fundamental inquiry–whether the plan was designed and used for a retirement purpose."  *Id*. at 1379-80. *Yaesu Electronics Corp.v. Tamara,* 28 Cal.App.4 8, 14 (1994) (The dispositive inquiry under the California statute is whether the plan was designed and used for retirement purposes); see also *Schwartzman v. Wilshinsky*, 50 Cal.App.4 618, 628;

For example, in *In re Daniel*, 771 F.2d 1352 (9th Cir. 1985), cert. den. 475 U.S. 1016 (1986) the Ninth Circuit rejected the exemption where the debtor had borrowed the contents of his duly established retirement plan to fund the down payment on his home and failed to make any payments until shortly before his bankruptcy filing, when he repaid $40,000 and asserted the exemption. The Ninth Circuit held that his conduct in dealing with the plan suggested that the plan was not used for retirement purposes. Similarly, in *In re (Cathy Lee) Crosby*, 162 B.R. 276, 285 (Bankr. C.D. Cal. 1993), the court found that borrowing substantially all of the value of the plan is

generally identified as a basis for denying the exemption.

The foregoing case law parallels our facts almost identically. As is explained in detail by the Trustee's accountant, Howard Grobstein in his declaration filed concurrently herewith, the PRT was not validly created for several reasons. First, the PRT was not established by a third party as required, but rather RWM was created solely to facilitate the transfer of assets to the PRT. Second, the PRT was designed with an unreasonably short target retirement date. At the date of the formation of the PRT, the Debtor was 70 years, 3 months of age. The "Target Retirement Age" for PRT participants was 71 – less than a year from the establishment of the retirement plan. The PRT called for immediate 100% vesting for the participant. An investment horizon of less than a year for a participant over 70 years of age is not reasonably intended for retirement planning purposes. Exhibit "2" at 000009. Third, the Debtor created the PRT and almost immediately borrowed more than 50% of the PRT's funds. Fourth, the PRT was funded in a very short period, inconsistent with accepted retirement plan objectives. Contrary to a typical retirement plan, where moneys are contributed at regular intervals over time, the subject PRT was overfunded with several large lump sums over a very short time frame. Specifically, within approximately three months of the PRT's formation, over $1.3 million dollars was funded into the PRT, with no subsequent contributions made. Fifth, the PRT Loan to the Debtor was at below-market rates inconsistent with the purpose of the retirement plan. See, Grobstein Declaration.

Because the PRT was neither designed nor used principally as a retirement plan, it does not qualify for an exemption under CCP §704.115(b). Thus, any claimed exemption in the PRT is invalid and the transfers made to the PRT were fraudulent as they were made to hinder, delay, or defraud creditors.

The Debtor's schedules show he was insolvent at the time of the Transfers to the PRT, or, alternatively, rendered insolvent as a result of the Transfers. Namely, the Debtor lists $2,700,762.74 in assets and $3,228,953.00 in liabilities in his schedules. *See* Exhibit "1." Even if the gross value

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1  of the PRT was used to determine the solvency of the Debtor when the transfers occurred, the Debtor

2  was insolvent.  And after the transfers were made, he was unquestionably insolvent.  Because the

3  Debtor  (i) received no value in return for the assets he transferred to the PRT; (ii) the PRT is not a

4  validly created private retirement trust, and (iii)  he was either insolvent or rendered insolvent by the

5  transfer, the Plaintiff will prevail under 11 U.S.C. § 548 and/or CCC 3439.04/3439.05 and recover

6  the Debtor's interest in the PRT.

7      There is a strong likelihood the Plaintiff will prevail on one or more of her claims in

8  connection with the Estate's interest in the PRT.  In addition, the Trustee is likely to prevail on her

9  (to be filed shortly) objection to the claimed exemption which is timely as the Debtor's 341(a)

10 meeting has not yet been concluded.

11          **2.    Irreparable Injury Will Be Suffered By The Plaintiff If**

12              **An Injunction Is Not Issued**

13      Courts evaluating a request for an injunction will next analyze the likelihood of irreparable

14 injury to movants if the injunction is not granted.  *See Owner-Operator Ind. Drivers Ass'n v. Swift*

15 *Transp. Co.*, 367 F.3d 1108, 1111 (9th Cir. 2004); *see generally Hernandez v. Downey S&L Ass'n*,

16 2009 U.S. Dist. LEXIS 21495 (S.D. Cal. Mar. 17, 2009); *Rinard*, 451 B.R. at 22.  A temporary

17 restraining order or preliminary injunction "may only be granted when the moving party has

18 demonstrated a significant threat of irreparable injury."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716,

19 725 (9th Cir. 1999).  The threat of harm must also be imminent.  *Hernandez v. Downey S&L Ass'n*,

20 2009 U.S. Dist. LEXIS 21495 at 26.

21      The Trustee has repeatedly requested an accounting from the Defendants as to the PRT assets.

22 No such accounting has ever been provided. Further, until last Thursday, the Trustee was unaware

23 that the Nationwide Contract had been cashed out. The Defendants never disclosed that fact to the

24 Trustee. The Trustee only learned of the cash out in connection with its adversary proceeding against

25 Nationwide.

26      At this time, the Trustee cannot prevent the Bank Account, Nationwide Proceeds and/or

27 remaining PRT's assets from being dissipated.  It should be noted that the Defendants have refused

28 to agree to any order to prevent dissipation of the funds. It is therefore critical to obtain an injunction

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1   to preserve assets for the benefit of the Estate. This is especially important because the Nationwide

2   Proceeds are easily liquidated and were cashed out outside the purview and accountability of the

3   bankruptcy court. It is therefore clear that the Estate will suffer irreparable harm if an injunction is

4   not issued.

5               **3.    The Balancing of The Hardships Favors The Plaintiff**

6           In balancing the hardships to the movant compared to the respondent, the court must find that

7   the balance weighs in favor of the moving party. *See Owner-Operator Ind. Drivers Ass'n v. Swift*

8   *Transp. Co.*, 367 F.3d 1108, 1111 (9th Cir. 2004); *see generally Hernandez v. Downey S&L Ass'n*,

9   2009 U.S. Dist. LEXIS 21495 (S.D. Cal. Mar. 17, 2009); *Rinard*, 451 B.R. at 22.

10          Here, the Defendants may be using the Bank Account, Nationwide Proceeds, and other assets

11  of the PRT for their own purposes. If the dissipation of the Bank Account, Nationwide Proceeds and

12  PRT assets are not enjoined during the pendency of this proceeding, the Estate will be irreparably

13  harmed because most, if not all, of the PRT's assets will be lost before this proceeding is adjudicated.

14          On the other hand, the Defendants will not suffer any harm if they are enjoined from

15  disbursing funds or dissipating assets.  The balance of hardships is clearly in favor of issuing a

16  preliminary injunction in favor of the Estate in order to maintain the status quo during the pendency

17  of this proceeding.

18              **4.    Advancement of Public Interest Favors the Plaintiff**

19          Generally, unless a court determines that there exists a public interest in either the granting

20  or denial of an injunction, courts do not need to consider this particular factor.  *In re Rinard*, 451

21  B.R. at 30-31.  However, courts have held that the interests of creditors in a bankruptcy estate are the

22  equivalent of the "public interest" factor in determining whether to grant an injunction.  *See In re*

23  *Eagle-Picher Indus., Inc.*, 963 F.2d 855, 861 (6th Cir. Ohio 1992); *In re Nat'l Century Fin. Enters.*,

24  289 B.R. 873, 879 (Bankr. S.D. Ohio 2003).

25          Here, creditors of the Estate hold a public interest that weighs in favor of issuing an

26  injunction.  Without an injunction prohibiting the dissipation of PRT assets, the Plaintiff may have

27  nothing left to recover from the PRT once the proceeding is adjudicated.  In turn, the Estate's

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1181030v1

EMERGENCY MOTION

1    creditors will receive no distribution.  The best interest of the creditors of the Estate should be

2    considered in protecting an asset that could produce funds for distribution by the Plaintiff.

3

4    **IV.    CONCLUSION**

5           Based on the foregoing, the Trustee respectfully requests that this Court grant the Motion as

6    follows:

7                  1.    Issuing a temporary restraining order prohibiting the Defendants, from

8    selling, encumbering, pledging, hypothecating, transferring, assigning, conveying, leasing,

9    disposing of, abandoning or otherwise alienating the PRT Assets, Bank Account and

10   Nationwide Proceeds: wherever located, including but limited to, accounts controlled by the

11   Defendants or their respective counsel; and

12                 2.    Directing the Defendants to provide an accounting with regard to the PRT

13   Assets from its inception to the current time; and

14                 3.    For such other and further relief as the Court may deem just and proper.

15                             Respectfully submitted,

16   Dated:  July 27, 2018              WEILAND GOLDEN GOODRICH LLP

17

18                             By:   /s/ Faye C. Rasch
                                     JEFFREY I. GOLDEN
19                                   FAYE C. RASCH
                                     Attorneys for Plaintiff,
20                                   Weneta M.A. Kosmala, Solely in her
                                     capacity as Trustee of the Estate of Denny
21                                   Steelman

22

23

24

25

26

27

28

*Weiland Golden Goodrich LLP*
*650 Town Center Drive, Suite 600*
*Costa Mesa, California 92626*

1181030v1                                    13                          EMERGENCY MOTION

## DECLARATION OF WENETA M.A. KOSMALA

I, Weneta M.A. Kosmala, declare as follows:

1.    I am an individual over the age of eighteen, and I am the duly appointed, qualified, and acting Chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of Denny R. Steelman ("Debtor").

2.    Except as otherwise indicated, all statements made herein are based on my personal knowledge or my review of relevant documents.  If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

3.    I make this declaration in support of the attached *Emergency Motion For Temporary Restraining Order.*  Capitalized terms not defined in this declaration have the meaning given them in the Motion.

4.    On October 13, 2016, the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.  On the same day, I was appointed as interim Chapter 7 Trustee of the Estate.

5.    On that same day, the Debtor filed his schedules ("Debtor's Schedules"). A true and correct copy of the Debtor's Schedules is attached as Exhibit "1".  Shortly thereafter the Debtor died.

6.    I am informed and believe that the Debtor's affairs are being managed by the Defendants. Mr. Liebeck is the executor of the Debtor's probate estate and successor trustee under the 2010 Trust. Zeibold is the trustee of the PRT. Jodi and Shauna are the Debtor's daughters.

7.    I have reviewed Debtor's schedules which reflect that the largest creditor in the case is Trustee of the Southern California IBEW-NECA Pension Plan- a judgment creditor who has prevailed on its motion for summary judgment in the litigation entitled Trustees of the Southern California IBEW-NECA Pension Pan v. Kevin Liebeck, as Executor of the Estate of Denny R. Steelman ("Pension Fund Litigation"). A true and correct copy of the minute order granting the motion for summary judgment is attached hereto as Exhibit "2."

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1181030v1

EMERGENCY MOTION

8.      I am informed and believe that in 2015, after the Pension Fund Litigation had already been filed, the Debtor engaged TRUST-CFO to set up and administer the purported PRT. In accordance with the PRT documents, the PRT was formed on December 9, 2015. True and correct copies of the relevant pages of the PRT are attached as Exhibit "3".

9.      I am informed and believe that the Debtor is the sole participant in the PRT and that the listed employer/sponsor of the PRT is Retirement Wealth Management LLC ("RWM"). I am informed and believe that in accordance with RWM's Operating Agreement (the "Operating Agreement"), RWM began operating contemporaneously with the PRT on December 9, 2016.  A true and correct copy of the Operating Agreement of RWM is attached as part of Exhibit "3" at 000108.  I am informed and believe that RWM's purpose, per its operating agreement, is to provide "centralized management of investments and business activities."

10.      Interestingly, I am informed and believe that the Debtor's entire career was as a contractor in the electrical field, yet the Debtor started a new company in a completely different field at age 70 and that even more interesting -- the Debtor formed the PRT at age 70 and was set to retire just one year later at 71.

11.      I have reviewed the PRT documents, which reflect that the Debtor funded the PRT with four (4) cash deposits from his Union Bank Checking Account as follows: (i) December 28, 2015 $500.00, (ii) January 4, 2016 $875,000, (iii) March 21, 2016 $195,000 and (iv) March 21, 2016 $287,586.15 for a total of $1,358,086.15.  Exhibit "5" at 000094. Therefore, in the year leading up to the Debtor's bankruptcy, the Debtor deposited almost $1.5 Million Dollars into the newly formed PRT.

12.      I have reviewed the PRT, which reflects that the beneficiary of the PRT is the "Survivor's Trust as under the 2010 Steelman Inter Vivos Trust." A true and correct copy of which is attached as Exhibit "3" at 000013.  The PRT also reflects that the Survivor's Trust is the 100% owner of RWM (the alleged employer under the PRT).

13.      I have reviewed the PRT which reflects that on or about March 16, 2016, the Debtor invaded the PRT, and caused the PRT to make a loan to "Denny R. Steelman, Trustee of the Survivor's Trust under the 2010 Steelman Inter Vivos Trust dated August 10, 2010" in the amount

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

14.     The PRT Loan is further evidenced on the Debtor's Schedule D which reflects that it is secured by the property commonly known as 26422 Lombardy Road, Mission Viejo, California 92692 ("Lombardy Property"). The Debtor's Schedule C lists the Lombardy Property as the Debtor's residence and claims an exemption therein. A true and correct copy of the Debtor's Schedule D is attached hereto as Exhibit " 1.".

15.     I am informed and believe and from my review of the PRT documents, funds deposited into the PRT by the Debtor were used as follows: (i) PRT Loan ($815,000) and (ii) Nationwide Annuity ($523,714.19). The Trustee believes that as of September 30, 2016, $50,466.15 of cash remained in the PRT. A true and correct copy of the PRT Consolidated Financial Statement is attached hereto as part of Exhibit "3" at 000169.

16.     The Estate has no adequate remedy at law should the PRT assets be dissipated. If the PRT's assets are dissipated, the Estate's interest in the PRT will be greatly diminished, all to the detriment of creditors of the Estate, because the Estate may be unable to recover the money or property distributed by the PRT. An injunction is the only remedy available in this instance to prevent the Defendants from dissipating the assets of the PRT.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 27, 2018, at Santa Ana, California.

Weneta M.A. Kosmala

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

**<u>DECLARATION OF FAYE C. RASCH</u>**

I, Faye C. Rasch, declare as follows:

1.      I am an attorney at law duly licensed to practice before this Court.  I am of counsel to the law firm of Weiland Golden Goodrich LLP, counsel of record for Weneta M.A. Kosmala, the Chapter 7 Trustee in this action.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      I make this declaration in support of the Emergency Motion to which this declaration is attached.  Capitalized terms not defined in this declaration have the meaning given them in the Motion.

3.      On February 21, 2018, on behalf of the Trustee, I commenced an adversary action seeking declaratory relief, turnover of property of the estate, an avoidance of fraudulent transfers (the "Complaint").  The Complaint centers the Debtor's transfers in connection with the PRT. A true and correct copy of the Complaint is attached hereto as Exhibit "4."

4.      We have on several occasions requested an accounting as to the PRT assets from the Defendants, but as of the date hereof we have not received an accounting.

5.      On July 26, 2018, at 12:53 p.m., I received an e-mail correspondence from John Cannizzaro, counsel for Nationwide Life Insurance Company.  Attached to the e-mail was correspondence which is attached hereto as Exhibit "5."

6.      I believed that relief is warranted on an <u>emergency basis</u> to preserve assets for the Estate's creditors. Upon learning of the cash out of the Nationwide Contract, I sought relief as quickly as was possible – one day later. I was in a meeting at the time the email arrived and could not respond to it immediately.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626

1

2         7.     Nationwide's counsel advised me that they did not have any notice of the

3    bankruptcy case at the time it cashed out the Nationwide Contract.

4         **8.**     **Notice:**  On Friday, after receiving the Emergency hearing time and date, I called

5    and spoke to counsel for Nationwide, John Cannizzaro and gave him notice of the hearing

6    substance date and time.

7         I declare under penalty of perjury under the laws of the United States of America that the

8    foregoing is true and correct.  Executed on July 30, 2018, at Seattle, Washington,

9    California.

10

11                                        /s/ FAYE C. RASCH

12                                            Faye C. Rasch

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weiland Golden Goodrich LLP**
**650 Town Center Drive, Suite 600**
**Costa Mesa, California 92626**

## DECLARATION OF HOWARD GROBSTEIN

I, Howard B. Grobstein, declare as follows:

1.      I am a certified public accountant and a partner of Grobstein Teeple, LLP.

2.      I have been retained to provide accounting services and litigation consulting for the Chapter 7 Trustee, Weneta M. Kosmala.

3.      This declaration is based on my personal knowledge. If asked to do so, I could and would testify to the statements which appear below.

### Assignment

4.      My objective was to analyze financial records provided and obtained from research, and to determine whether the Personal Retirement Trust ("PRT"), a private retirement plan established for the benefit of Mr. Denny R. Steelman ("Mr. Steelman") on December 9, 2015, was valid pursuant the requirements of California Code of Civil Procedure § 704.115 and therefore exempt from creditors.

5.      In performing this analysis, I reviewed the following information:

      •      PRT plan documents (including trust documents, operating agreement of Retirement Wealth Management LLC, promissory note between Denny Steelman and the PRT, schedule listing contributions to PRT, and consolidated financial statement of PRT as of September 30, 2016).

      •      Bank statements of the PRT (Union Bank account ending in 2555) for the period January 2016 through May 2016.

      •      The Debtor's bankruptcy petition and schedules dated October 10, 2016.

      •      Economic data regarding mortgage rates as of around the date of the loan from PRT to Mr. Steelman.

6.      Although requested, financial records of Mr. Steelman's estate (including bank statements and financial statements as of the date of transfers to the PRT) were not available. Consequently, the following opinions are preliminary and subject to revision upon receipt of additional relevant information.

Weiland Golden Goodrich LLP
P.O. Box 2470
Costa Mesa, California 92628-2470
Tel (714) 445-1013   Fax (714) 966-1002

**Weiland Golden Goodrich LLP**
P.O. Box 2470
Costa Mesa, California 92628-2470
Tel (714) 445-1013   Fax (714) 966-1002

**Relevant Facts**

7.    In April 2015, the Trustees of the Southern California IBEW-NECA Pension Plan sued Mr. Steelman to collect unpaid pension contributions (withdrawal liability) when his wholly-owned company, Action Electric, withdrew from the Plan in June 2013 (Action Electric subsequently filed for Chapter 7 bankruptcy in October 2013).

8.    On December 9, 2015, the PRT was created. At the same time, the plan sponsor, an entity wholly owned by Mr. Steelman, was established.

9.    On December 28, 2015 and January 4, 2016, respective deposits of $500 and $875,000 were made to the PRT.

10.    On March 16, 2016, a payment of $815,000 was made from the PRT to fund a promissory note secured, in part, by Mr. Steelman's primary residence at 26422 Lombardy Road, Mission Viejo. The terms of this note called for interest at 2.33% over 15 years and a monthly payment (interest and principal) of $2,000.00, with a balloon payment for unpaid principal paid at the end of the term.

11.    On March 21, 2016, deposits of $195,000 and $287,586 were made to the PRT.

12.    On March 28, 2016, a payment of $500,000 was made from the PRT to purchase an annuity from Nationwide Life Insurance Company (Variable Annuity Contract #01-6824567), with Mr. Steelman the annuitant and the PRT the sole beneficiary.

13.    On October 10, 2016, Mr. Steelman filed for bankruptcy protection under Chapter 7.

14.    On July 5, 2017, the United States District Court (Central District of California) ordered that the Plaintiff, Trustees of the Southern California IBEW-NECA Pension Plan, recover from Defendant Mr. Steelman the principal amount of $1,884,906.57, attorneys' fees and costs in amounts to be determined at a later date, plus post-judgment interest as provided by law.

**Summary of Conclusions**

15.    As created and executed, the PRT failed to satisfy the requirements set forth in CCP 704.115, and therefore was not was not valid and not exempt from creditors. Specifically, a review of relevant transactions and related documents indicates that the PRT was not established for retirement purposes.

0.0

EMERGENCY MOTION

1.  The PRT was not established by a third party, instead being sponsored by an "employer" which was 100% owned by the beneficiary and that was set up on the date of PRT formation with no real other discernable purpose than the transfer of non-exempt assets.

2.  The PRT was established with an unreasonably short target retirement date.

3.  The PRT was funded in a very short period of time, inconsistent with accepted retirement plan objectives.

4.  The PRT invested a significant portion of its assets to finance the PRT Loan.

5.  The PRT Loan was at below-market rates inconsistent with the purpose of the retirement plan.

16.  As the PRT was not a valid vehicle, the assets contributed are not exempt from creditors.

17.  Each of the above conclusions is discussed further below.

**Basis for Conclusions**

The PRT was not established by a third party.

18.  The PRT's plan sponsor, Retirement Wealth Management, LLC ("RWM"), appears to have been formed solely to facilitate the transfer of assets to the PRT. RWM was formed on December 9, 2015 – the same date as the effective date of the PRT. The sole member of RWM, classified as a disregarded entity, was Mr. Steelman (as trustee of the 2010 Steelman Inter Vivos Trust). At the date of formation, the co-managers of RWM were Mr. Steelman and Mark Ziebold, Esq., Mr. Steelman's estate planning attorney.

19.  According to the Operating Agreement of RWM dated December 9, 2015, the purpose of RWM was to "…own, manage, develop, operate, buy, sell, exchange, finance, refinance, and otherwise deal with real, personal, tangible, and intangible property, and any type of business…" It is understood that Mr. Steelman owned an electrical contracting operation and was never employed in the investment management profession.

20.  Based on the above, RWM cannot reasonably be considered a third party, and appears to have been created for the sole purpose of funding the PRT. This is inconsistent with intent of CCP 704.115. In the case _In Re James and Carol Barnes_ (No. 01-20765-A-13J, United

Weiland Golden Goodrich LLP
P.O. Box 2470
Costa Mesa, California 92628-2470
Tel (714) 445-1013  Fax (714)-966-1002

States Bankruptcy Court, E.D. California, Sacramento Division, April 12, 2002) the United States

District court stated:

> "The legislative history…indicates that 704.115(a) (1) was intended
> to exempt retirement plans established or maintained by private
> employers or employee organizations, not arrangements by
> individuals to use specified assets for retirement purposes."

<u>The PRT was designed with an unreasonably short target retirement date.</u>

21.    At the date of the formation of the PRT, Mr. Steelman was 70 years, 3 months of

age. The "Target Retirement Age" for PRT participants was 71 – less than a year from the

establishment of the retirement plan. The PRT called for immediate 100% vesting for the

participant. An investment horizon of less than a year for a participant over 70 years of age is not

reasonably intended for retirement planning purposes.

<u>The PRT was funded in a very short period, inconsistent with accepted retirement plan
objectives.</u>

22.    Contrary to a typical retirement plan, where moneys are contributed at regular

intervals over time, the subject PRT was overfunded with several large lump sums over a very

short time frame. Specifically, within approximately three months of the PRT's formation, over

$1.3 million dollars was funded into the PRT, with no subsequent contributions made. Such a

funding pattern resembles an effort to move assets.

23.    In the case *In Re James and Carol Barnes* (No. 01-20765-A-13J, United States

Bankruptcy Court, E.D. California, Sacramento Division, April 12, 2002) the United States District

court stated:

> [T]he court must consider the use of the word "plan" in section
> 704.115(a)(1). A plan requires more than the instantaneous
> transmutation of a lump sum of previously nonexempt money or
> other assets into an exempt retirement plan. It contemplates the
> gradual accumulation of money to fund a future retirement." Cal.
> Civ. Proc. Code § 704.115(a)(1). Union retirement plans provide for
> a retirement income funded by employee and employer annual
> contributions made over a long period of time.

<u>The Debtor Almost Immediately Borrowed from the PRT.</u>

Weiland Golden Goodrich LLP
P.O. Box 2470
Costa Mesa, California 92628-2470
Tel (714) 445-1013  Fax (714) 966-1002

**Weiland Golden Goodrich LLP**
P.O. Box 2470
Costa Mesa, California 92628-2470
Tel (714) 445-1013   Fax (714) 966-1002

24.     On February 16, 2016, the PRT made a loan to Mr. Steelman as trustee of the 2010 Steelman Inter-Vivos Trust in the amount of $815,000 (over 50% of the entire PRT asset value) secured only in part by 26422 Lombardy Road, Mission Viejo, CA 92692.

25.     This loan, made within months of the formation of the PRT, cannot reasonably be viewed as for retirement purposes. *In Re Daniel* (Daniel v Security Pacific National Bank, No. 84-2412, argued and submitted July 12, 1985, decided Sept. 20, 1985), the debtor borrowed $75,000 from his "private retirement plan" and used it to buy a residence.  The Court reasoned:

> If debtor's real concern had been retirement, rather than buying a
> residence with pre-tax dollars, then he would surely have invested the
> funds in assets which would yield a competitive money market
> return, would provide adequate security, and would preserve and
> enhance the capital of the plan.

The PRT's financing of the PRT Loan was at below-market rates inconsistent with the purpose of the retirement plan.

26.     The above loan from PRT had a term of 15 years, with an interest rate of 2.33% per annum, $2,000.00 payable per month (with the amount above the interest payment applied to principal), and any outstanding principal balance payable at the maturity date.

27.     At 2.33%, the above loan had an interest rate below the average 15-year mortgage rate as of February 2016 of 2.96% (source: Freddie Mac). Furthermore, even if one were to assume a rate of 2.33% was reasonable, a monthly payment was far below the fully amortizing payment associated with this interest rate and a loan amount of $815,000. Using Excel's PMT function, the monthly payment that would fully amortize this loan in 15 years would be $5,369, over double the stated amount. Thus, the subject loan had a significant balloon payment (of over $700,000) due at maturity. Other things equal, this would increase the risk of the loan, warranting an even higher interest rate.

29.     In light of the above, the loan by PRT was not arms-length, not reasonably made for retirement purposes, and incorporated below-market terms not made in the best interests of the PRT.

30.    Based on the above analysis, it is my opinion that the PRT as created and used was not valid, and therefore not exempt from creditors.

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed this 30th day of July, 2018 at Woodland Hills, California.

Howard B. Grobstein, CPA/CFF, CFE

Weiland Golden Goodrich LLP
P.O. Box 2470
Costa Mesa, California 92628-2470
Tel (714) 966-1000    Fax (714) 966-1002

0.0

# EXHIBIT 1

**Fill In this Information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | Denny Roy Steelman | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

| | | |
|---|---|---|
| **1.1** | | |
| 26422 Lombardy Rd | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | ☐ Single-family home | |
| | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | |
| Mission Viejo    CA    92692-0000 | ☐ Land | Current value of the entire property?    Current value of the portion you own? |
| City    State    ZIP Code | ☐ Investment property | $888,250.00               $888,250.00 |
| | ☐ Timeshare | |
| | ☐ Other | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known: |
| | **Who has an interest in the property?** Check one | |
| Orange | ☐ Debtor 1 only | |
| County | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | |
| | ☑ At least one of the debtors and another | ☐ Check if this is community property (see instructions) |
| | **Other information you wish to add about this item, such as local property identification number:** | |

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here............................................=>     | **$888,250.00** |

**Part 2:   Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Debtor 1    Denny Roy Steelman

Case number *(if known)*

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| | | | |
|---|---|---|---|
| 3.1 | Make: **Mercedes** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | Model: **S550** | ■ Debtor 1 only | |
| | Year: **2008** | ☐ Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Approximate mileage: **41,906** | ☐ Debtor 1 and Debtor 2 only | |
| | Other information: | ☐ At least one of the debtors and another | |
| | | ☐ Check if this is community property (see instructions) | **$24,000.00** / **$24,000.00** |

| | | | |
|---|---|---|---|
| 3.2 | Make: **Ford** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | Model: **F150** | ■ Debtor 1 only | |
| | Year: **2011** | ☐ Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Approximate mileage: **55,030** | ☐ Debtor 1 and Debtor 2 only | |
| | Other information: | ☐ At least one of the debtors and another | |
| | | ■ Check if this is community property (see instructions) | **$22,000.00** / **$22,000.00** |

| | | | |
|---|---|---|---|
| 3.3 | Make: | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | Model: **Trailer** | ■ Debtor 1 only | |
| | Year: | ☐ Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Approximate mileage: | ☐ Debtor 1 and Debtor 2 only | |
| | Other information: **to transport jet ski's** | ☐ At least one of the debtors and another | |
| | | ☐ Check if this is community property (see instructions) | **$800.00** / **$800.00** |

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples: Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories*

☐ No
■ Yes

| | | | |
|---|---|---|---|
| 4.1 | Make: **Kawaski** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | Model: **Jet Ski's** | ■ Debtor 1 only | |
| | Year: **2007** | ☐ Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Other information: | ☐ Debtor 1 and Debtor 2 only | |
| | | ☐ At least one of the debtors and another | |
| | | ☐ Check if this is community property (see instructions) | **$3,500.00** / **$3,500.00** |

| | | | |
|---|---|---|---|
| 4.2 | Make: **Formula Offshore** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | Model: | ■ Debtor 1 only | |
| | Year: **1993** | ☐ Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Other information: **Boat 33 1/2 ft. - located in Mexico** | ☐ Debtor 1 and Debtor 2 only | |
| | | ☐ At least one of the debtors and another | |
| | | ☐ Check if this is community property (see instructions) | **$30,000.00** / **$30,000.00** |

Debtor 1     Denny Roy Steelman                                          Case number (if known) _____

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
    pages you have attached for Part 2. Write that number here.................................................➡        | $80,300.00 |

**Part 3:**  Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?                    Current value of the
                                                                                                     portion you own?
                                                                                                     Do not deduct secured
                                                                                                     claims or exemptions.

6.  Household goods and furnishings
    *Examples:* Major appliances, furniture, linens, china, kitchenware
    ☐ No
    ■ Yes.  Describe.....

    | Household goods | $600.00 |

    | Wheel chair, oxygen tanks and health aids | $5,000.00 |

7.  Electronics
    *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
             including cell phones, cameras, media players, games
    ■ No
    ☐ Yes.  Describe.....

8.  Collectibles of value
    *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
             other collections, memorabilia, collectibles
    ■ No
    ☐ Yes.  Describe.....

9.  Equipment for sports and hobbies
    *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes, and kayaks; carpentry tools;
             musical instruments
    ■ No
    ☐ Yes.  Describe.....

10. Firearms
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☐ No
    ■ Yes.  Describe.....

    | Gun collection inherited as heirlooms (see attachment) | $200,000.00 |

11. Clothes
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes.  Describe..... .

    | Clothing | $200.00 |

12. Jewelry
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes.  Describe.....

    | Wedding ring and watches | $2,000.00 |

13. Non-farm animals
    *Examples:* Dogs, cats, birds, horses
    ■ No

Official Form 106A/B                          Schedule A/B: Property                                    page 3

Case 8:16-bk-14227-ES    Doc 1    Filed 10/13/16    Entered 10/13/16 11:40:46    Desc
Main Document    Page 15 of 54

Debtor 1    Denny Roy Steelman _____    Case number (if known) _____

☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...........................................................................

| | $207,800.00 |

---

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
■ No
☐ Yes.........................................................................

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes.........................

| | | Institution name: | |
|---|---|---|---|
| 17.1. | | Union Bank<br>Checking account ending 4122 | $1,000.00 |
| 17.2. | | Union Bank<br>Checking account | $697.61 |
| 17.3. | | Bank of America<br>Checking account ending 0861 | $1,000.00 |
| 17.4. | Checking | Merrill Lynch | Unknown |
| 17.5. | Checking | Merrill Lynch | Unknown |
| 17.6. | Savings | Union Bank account ending 4130 | Unknown |
| 17.7. | Checking | Union Bank account ending 4148 | $100.00 |
| 17.8. | Savings | Union Bank account ending 4155 | $400.00 |
| 17.9. | Private Advantage<br>Checking | Union Bank account ending 7946 | $1,403.13 |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
■ No
☐ Yes..................    Institution or issuer name:

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

| Debtor 1 | Denny Roy Steelman | Case number *(if known)* | |

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
☑ Yes. Give specific information about them...............

| Name of entity: | % of ownership: | |
| --- | --- | --- |
| The Survivor's Trust has 100% in the Retirement Wealth Management LLC (management entity) | % | Unknown |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific information about them
　　Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No
☑ Yes. List each account separately.

| Type of account: | Institution name: | |
| --- | --- | --- |
| | Private Retirement Trust (PRT) Adminsitrator: Raymond F. Olmo, CEP, RFC Managing Director Trust - CFO 3721 Douglas Blvd., Ste 350 Roseville, CA 95661 | $1,385,805.00 |

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No
☐ Yes. .....................　　Institution name or individual:

**23. Annuities (A contract for a periodic payment of money to you, either for life or for a number of years)**

☐ No
☑ Yes............　　Issuer name and description.

| | |
| --- | --- |
| Annuity Union Bank | $1,007.00 |

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
☐ Yes............　　Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c);

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☐ No
☑ Yes. Give specific information about them...

| | |
| --- | --- |
| Beneficiary 2010 Steelman Intervivos Trust dated 8/10/10 (Survivor's Trust) | Unknown |

| | |
| --- | --- |
| Income Beneficiary The Survivor's Trust Under the 2010 Steelman Intervivos Trust dated 2010 (Bypass Trust) | Unknown |

| Debtor 1 | Donny Roy Steelman | Case number *(if known)* | |
|---|---|---|---|

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples: Internet domain names, websites, proceeds from royalties and licensing agreements*
■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples: Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses*
■ No
☐ Yes. Give specific information about them...

**Money or property owed to you?**

*Current value of the portion you own? Do not deduct secured claims or exemptions.*

**28. Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples: Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement*
■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples: Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else*
■ No
☐ Yes. Give specific information.

**31. Interests in insurance policies**
*Examples: Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance*
■ No
☐ Yes. Name the insurance company of each policy and list its value.
Company name:                    Beneficiary:                    Surrender or refund value:

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes. Give specific information.

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples: Accidents, employment disputes, insurance claims, or rights to sue*
■ No
☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**
■ No
☐ Yes. Give specific information..

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**.................................................................................... | **$1,391,412.74** |

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

Debtor 1    Denny Roy Steelman                                                      Case number *(if known)*  _____

**37. Do you own or have any legal or equitable interest in any business-related property?**
☐ No. Go to Part 6.
☑ Yes. Go to line 38.

Current value of the
portion you own?
Do not deduct secured
claims or exemptions.

**38. Accounts receivable or commissions you already earned**
☑ No
☐ Yes. Describe......

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
☑ No
☐ Yes. Describe.....

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
☐ No
☑ Yes. Describe.....

| Hand tools, power drills, saws | $8,000.00 |

**41. Inventory**
☑ No
☐ Yes. Describe.....

**42. Interests in partnerships or joint ventures**
☑ No
☐ Yes. Give specific information about them...................
          Name of entity:                                    % of ownership:

**43. Customer lists, mailing lists, or other compilations**
☑ No.
☐ Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

          ☑ No
          ☐ Yes. Describe.....

**44. Any business-related property you did not already list**
☑ No
☐ Yes. Give specific information.........

**45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here............................................................................................**

| | $8,000.00 |

**Part 6.**  Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
          If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☑ No. Go to Part 7.
☐ Yes. Go to line 47.

Debtor 1    Denny Roy Steelman                                        Case number *(if known)* _____

---

| **Part 7:** | Describe All Property You Own or Have an Interest in That You Did Not List Above |

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership
   ☐ No
   ■ Yes. Give specific information.........

| Proceeds of Promissory Note from Bypass Trust to Survivor's Trust | $125,000.00 |

54. Add the dollar value of all of your entries from Part 7. Write that number here ................................. | $125,000.00 |

---

| **Part 8:** | List the Totals of Each Part of this Form |

55. Part 1: Total real estate, line 2 ............................................................................... | | $888,250.00 |

56. Part 2: Total vehicles, line 5                               $80,300.00

57. Part 3: Total personal and household items, line 15          $207,800.00

58. Part 4: Total financial assets, line 36                      $1,391,412.74

59. Part 5: Total business-related property, line 45             $8,000.00

60. Part 6: Total farm- and fishing-related property, line 52    $0.00

61. Part 7: Total other property not listed, line 54        +    $125,000.00

62. Total personal property. Add lines 56 through 61...          $1,812,512.74    Copy personal property total    $1,812,512.74

63. Total of all property on Schedule A/B. Add line 55 + line 62 | | $2,700,762.74 |

| | Manufacturer | Serial Number | Caliber | Model |
|---|---|---|---|---|
| 1 | S&W | VBA3722 | 40 | 4013 |
| 2 | H&K | 26013111 | 40 | USP COMPACT |
| 3 | GLOCK | BPS296US | 9 | G26 |
| 4 | COLT DOUBLE EAGLE | DC01215 | 45 | MK2 SERIES 90 |
| 5 | RUGER | 570-08099 | 38 | SP101 |
| 6 | SPHINX | M03464 | 380 | AT380-M |
| 7 | ERMA/EXCAM | J05408 | 22 | RX22 |
| 8 | TAURUS | ANA23562 | 22 | PT22 |
| 9 | INTRATEC | 830 | 9MM | CAT-9 |
| 10 | PHOENIX ARMS | 4031983 | 22 | HP22 |
| 11 | BERSA | 67411 | 380 | 383 |
| 12 | STAR INTERARMS | 2125715 | 9MM | ULTRA STAR |
| 13 | WALTHER AMERICAN | T034431 | 22 | TPH |
| 14 | WALTHER | L004590 | 22 | P22 |
| 15 | S&W | VAS5032 | 45 | 4516 |
| 16 | PARA-ORDNACE | QH5125 | 45 | P14.45 |
| 17 | S&W | VCR9611 | 9MM | 6906 |
| 18 | S&W | TFM6748 | 9MM | 6906 |
| 19 | CESKA ZBROJOVKA | 8029U | 9MM | CZ75B |
| 20 | PHOENIX ARMS | 4196681 | 22 | DRM22NB |
| 21 | S&W | VMM6417 | 40 | 410 |
| 22 | GLOCK | CPC664 | 357 | 32 |
| 23 | GLOCK | DYV280 | 40 | 22C |
| 24 | COLT | GP10785 | .380 | PLUS ii LITE |
| 25 | S&W | TEV2572 | 10MM | 1006 |
| 26 | SPRINGFIELD ARMORY | N325782 | 45 | COMPACT |
| 27 | COLT | SCOPE IN WAY | 44 MAGNUM | SCOPE IN WAY |
| 28 | S&W | 35646 | 9MM | 39 |
| 29 | HECKLER & KOCH | 90889 | 9MM | P7-M8 |
| 30 | RUGER | 170-51401 | 357 MAGNUM | GP100 |
| 31 | RUGER | 57055750 | 22 | SP101 |

| # | Manufacturer | Serial | Caliber | Model |
|---|---|---|---|---|
| 32 | S&W | CCC8992 | 357 MAGNUM | 640 |
| 33 | HECKLER & KOCH | 25-008419 | 45 AUTO | USP |
| 34 | S&W | VKP2180 | 45 | 457 |
| 35 | S&W | TVP9371 | 22 | 2213 |
| 36 | S&W SIGMA SERIES | PAV6007 | 40 | SW40V |
| 37 | RUGER | 340-74998 | 40 | P944T (03436) |
| 38 | BROWNING | 945NTS4082 | 9MM LUGER | BDM 9MM |
| 39 | WALTHER | N00281 | 22 | P22 |
| 40 | KIMBER | KC06921 | 45 | COMPACT |
| 41 | KIMBER | K075048 | 45 | FULL SIZE |
| 42 | ISRAEL MILITARY INDUSTRIES | 31303660 | 9MM | DESERT EAGLE |
| 43 | ISRAEL MILITARY INDUSTRIES | 31306465 | 45 | BABY EAGLE |
| 44 | HECKLER & KOCH | 27-007084 | 9MM | USP COMPACT |
| 45 | BERETTA | BER214134 | 40 | 96-CAL |
| 46 | SPRINGFIELD ARMORY | US8297 | 9MM | XD-9 |
| 47 | COLT | A0446 | 40 | Z40 |
| 48 | INTERARMS | AD001680 | 357 MAGNUM | ROSSI CYCLOPS |
| 49 | RUGER | 70423 | 22 | BEAR,CAT |
| 50 | STERLING | A58198 | 22 | AUTO |
| 51 | STERLING | E12552 | 22 | STAINLESS |
| 52 | S&W | VJA3372 | 9MM | 3913 |
| 53 | S&W | BMB1501 | 38 | 38 SPECIAL |
| 54 | S&W | A326495 | 9MM | 39-2 |
| 55 | S&W | TYU4712 | 22 | 2213 |
| 56 | RUGER | | 22 | MATCH W/AIMPOINT 3K |
| 57 | S&W | TBI5084 | 22 | 422 |
| 58 | ARCADIA MACHINE &TOOL (A | M07028 | 22 RIMFIRE MAG | AUTOMAG II |
| 59 | BROWNING ARMS CO. | 8690ZU7 | 22 | 22 LONG RIFLE |
| 60 | BROWNING | 655PP01693 | 22 | BUCK MARK 22 |
| 61 | SIGARMS | S049670 | 9MM | SIG SAUER P230SL |
| 62 | BERETTA | E52138 | 9 SHORT | 84F |
| 63 | S&W | UBD0033 | .22 LONG RIFLE W/SCOPE | 2206TGT |
| 64 | GLOCK | CHA391US | 10MM AUTO | 29 |
| 65 | COLT | DE01847E | 10MM AUTO | MKIV/SERIES 80 DELTA ELITE |

| # | Manufacturer | Serial | Caliber | Model |
|---|---|---|---|---|
| 66 | TAURUS | KNC 60141 | 380 ACP | PT-58-SS |
| 67 | DURANGO | 2203426 | 22 | W-105 |
| 68 | S&W | EKY8042 | 40 | CS40 CHIEF SPECIAL |
| 69 | STOEGER | 34898 | 22 LONG RIFLE | LUGER |
| 70 | FRANTELLI TANFOGLIO SPA | H34343 | 9MM | TZ75 SERIES 88 |
| 71 | RUGER | 300-61369 | 9MM | P-85 |
| 72 | RUGER | 311-23933 | 9MM | P-95DC |
| 73 | COLT | RK00786 | 9MM | All American 1st edition - blue |
| 74 | COLT | RK00785 | 9MM | All American 1st edition - blue |
| 75 | TAURUS | DNE01562 | 25 AUTO | P-25 |
| 76 | BERETTA | 009736MC | 9MM | 8000F |
| 77 | RUGER | 22282401 | 22 | MARK II |
| 78 | RUGER | 302653336 | 9MM | P89DC |
| 79 | SPHINX | A04043S | 9MM | AT-2000 POLICE SPECIAL |
| 80 | BERETTA | L74493Z | 9MM | 92FS |
| 81 | COLT | 70SC3363 | 45 | COMBAT COMMANDER |
| 82 | TAURUS | TNE80179 | 9MM | PT908 |
| 83 | LLAMA | 10215-95 | 45 | 1X-C |
| 84 | BERETTA | BER241321Z | 9MM | 92FS |
| 85 | RUGER | 661-99918 | 45 | P90 SPECIAL EDITION |
| 86 | S&W | PAD1786 | 9MM | SW9F |
| 87 | BROWNING | 245NM15956 | 9MM LUGER | High power single action mark III |
| 88 | GLOCK | EU814 | 9MM | 17 |
| 89 | GLOCK | BPY638 | 40 | 27 |
| 90 | WALTHER | 302159 | 9MM | P38 |
| 91 | DESERT EAGLE | 145802 | 357 | BABY EAGLE |
| 92 | RUGER | 30812203 | 9MM | P94 |
| 93 | SIGARMS | AD39273 | 357 | P229 |
| 94 | LLAMA | 05379-95 | 40 | MAX-1 |
| 95 | LLAMA | 767611 | 45 | 2232 BLUE ENGRAVED |
| 96 | S&W | RAA3568 | 380 | SW380 |
| 97 | WALTHER | 102, P08 | 9MM | GERMAN LUGER – MILITARY |
| 98 | AMT | A06015 | 45 | HARD BALLER |
| 99 | TAURUS | N0A35052 | 45 AUTO | PT945 |

| # | Make | Serial | Caliber | Model |
|---|------|--------|---------|-------|
| 100 | S&W | YAK3332 | 45 | 6345 |
| 101 | S&W | TFR9799 | 40 | 4046 |
| 102 | GLOCK | BBX663 | 40 | 23 |
| 103 | RUGER | 66001832 | 45 | P90 |
| 104 | S&W | PAE5269 | 40 | SW40F |
| 105 | GLOCK | BEM763US | 45 | 21 |
| 106 | COLT | SG04660 | SUPER 38 AUTO | MKIV/SERIES 80 |
| 107 | COLT | S5S3738 | 40 | GOVERNMENT MODEL 01040 |
| 108 | DESERT EAGLE | 106267 | 40 | BABY EAGLE |
| 109 | S&W | BCU5189 | 9MM | 910 |
| 110 | BERETTA | A97677U | 22 | 76 |
| 111 | TAURUS | SNF86473 | 40 | PT100AF |
| 112 | FIRE STORM | 71-04-09697-01 | 45 | FIRESTORM 45 GOVT |
| 113 | DESERT EAGLE | 108085 | 9MM | BABY EAGLE |
| 114 | S. AFRICAN | T002126 | 9MM | TZ99 |
| 115 | RUGER | 218-52490 | 22 | MARK II TARGET WITH SCOPE |
| 116 | RUGER |  | SN COVERED BY SCOPE | MATCHED IN CASE WITH GUN #119 |
| 117 | BROWNING | 14623 | 380 | BDA380 |
| 118 | S&W | BSU7862 | 44 MAGNUM | 629 |
| 119 | S&W | BSR4054 | 357 | 66 |
| 120 | TAURUS | MD766680 | 357 MAGNUM | 2-689069-689 |
| 121 | TARGA | 53037 | 25 | GT-27 |
| 122 | RUGER | 57019910 | 38 SPECIAL | SP101 |
| 123 | AUSTRIA | P10549 | 9MM | GB |
| 124 | SIG SAUER | M577535 | 9MM | P225 |
| 125 | RUGER | 502-59693 | 41 MAGNUM | REDHAWK KRH-41 |
| 126 | RUGER | 502-25477 | 41 MAGNUM | REHAWK KRH-415 |
| 127 | RUGER | 21801029 | 22 | MARK II TARGET WITH SCOPE |
| 128 | RUGER |  | 22 | COVERED BY SCOPE |
| 129 | WALTHER | S11S213 | 380 | PPK-S |
| 130 | BERETTA | DAA059786 | 32 AUTO | 3032 TOMCAT |
| 131 | RUGER | 76443 | 357 REVOLVER | BLACKHAWK |
| 132 | THOMPSON CENTER ARMS | 72830 | 22 LONG RIFLE |  |
| 133 | RUGER | 170-91128 | 357 MAGNUM | GP100 WITH SCOPE |

| | | | | |
|---|---|---|---|---|
| 134 | RUGER | 550-14228 | 44 MAGNUM | SUPER REDHAWK WITH SCOPE |
| 135 | S&W | BNV1839 | 22 LONG RIFLE | 617 WITH SCOPE |
| 136 | S&W | BRL6131 | 357 MAGNUM | 686-4 WITH SCOPE |
| 137 | TAURUS | SKK0375S/AFD | 40 | PT101 |
| 138 | MAGNUM RESEARCH INC. | 62485 | 44 MAGNUM | DESERT EAGLE W/ SCOPE |

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | Denny Roy Steelman | |
| | First Name    Middle Name    Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number | | |
| (if known) | | |

☐ Check if this is an amended filing

## Official Form 106C
## Schedule C: The Property You Claim as Exempt                    4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:    Identify the Property You Claim as Exempt

1.  Which set of exemptions are you claiming? *Check one only, even if your spouse is filing with you.*

    ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

    ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2.  For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| 26422 Lombardy Rd Mission Viejo, CA 92692  Orange County<br>Line from *Schedule A/B*: 1.1 | $888,250.00 | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.730 |
| 2011 Ford F150 55,030 miles<br>Line from *Schedule A/B*: 3.2 | $22,000.00 | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.010 |
| Household goods<br>Line from *Schedule A/B*: 6.1 | $600.00 | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| Wheel chair, oxygen tanks and health aids<br>Line from *Schedule A/B*: 6.2 | $5,000.00 | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.050 |
| Gun collection inherited as heirlooms (see attachment)<br>Line from *Schedule A/B*: 10.1 | $200,000.00 | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.040 |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Debtor 1   Denny Roy Steelman                                    Case number (if known)

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own<br>Copy the value from Schedule A/B | Amount of the exemption you claim<br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| Private Retirement Trust (PRT) Adminsitrator: Raymond F. Olmo, CEP, RFC Managing Director Trust - CFO 3721 Douglas Blvd., Ste 350 Roseville, CA 95661<br>Line from Schedule A/B: 21.1 | $1,385,805.00 | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.115(a)(1) & (2), (b) |
| Hand tools, power drills, saws<br>Line from Schedule A/B: 40.1 | $8,000.00 | ☐ _____<br>■ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.060 |

3.  Are you claiming a homestead exemption of more than $160,375?
    (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

    ■ No

    ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

        ☐   No

        ☐   Yes

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Denny Roy Steelman** | |
| | First Name    Middle Name    Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number (if known) | | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| | | Amount of claim | Value of collateral that supports this claim | Unsecured portion if any |
| | | Do not deduct the value of collateral. | | |

| 2.1 | **Private Retirement Trust** | | $708,500.00 | $888,250.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**#STEDEN1007**
**Attn: Raymond F. Olmo,**
**CEP, RFC**
**3721 Douglas Blvd., Ste**
**350**
**Roseville, CA 95661**

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

26422 Lombardy Rd. Mission Viejo, CA 92692  Orange County

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien. Check all that apply.**

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    Promissory Note/Dead of Trust

Date debt was incurred  3/2016       Last 4 digits of account number

Add the dollar value of your entries in Column A on this page. Write that number here:        $708,500.00

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:        $708,500.00

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Denny Roy Steelman** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

**Part 1:    List All of Your PRIORITY Unsecured Claims**

1.   Do any creditors have priority unsecured claims against you?

☑ No. Go to Part 2.

☐ Yes.

**Part 2:    List All of Your NONPRIORITY Unsecured Claims**

3.   Do any creditors have nonpriority unsecured claims against you?

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

☑ Yes.

4.   List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim. If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  | | | Total claim |
|---|---|---|---|

**4.1** | **American First Credit** | Last 4 digits of account number    0112 | **$596,166.00**
Nonpriority Creditor's Name
700 N Harbor Blvd          When was the debt incurred?    1/27/12
La Habra, CA 90631
Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.
☑ Debtor 1 only                ☐ Contingent
☐ Debtor 2 only                ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only   ☐ Disputed
☐ At least one of the debtors and another   Type of NONPRIORITY unsecured claim:
☐ Check if this claim is for a community debt   ☐ Student loans
Is the claim subject to offset?   ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☑ No                           ☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes    ☑ Other. Specify   **Personal Liability on Real Estate Mortgage for property located in Big Bear which is part of The 2010 Steelman Intervivos Trust (Bypass Trust)**

Debtor 1   **Denny Roy Steelman**                                        Case number (if know)

---

| 4.2 | **Bankamerica** | Last 4 digits of account number | **8106** | $4,060.00 |

Nonpriority Creditor's Name

**Po Box 982238
El Paso, TX 79998**
Number Street City State Zip Code

When was the debt incurred?   **Opened 08/95  Last Active 9/13/16**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another
□ Check if this claim is for a community debt

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:
□ Student loans

Is the claim subject to offset?
■ No
□ Yes

□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit Card**

---

| 4.3 | **Bankamerica** | Last 4 digits of account number | **4544** | $162.00 |

Nonpriority Creditor's Name

**Po Box 982238
El Paso, TX 79998**
Number Street City State Zip Code

When was the debt incurred?   **Opened 04/77  Last Active 9/17/15**

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another
□ Check if this claim is for a community debt

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:
□ Student loans

Is the claim subject to offset?
■ No
□ Yes

□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit Card**

---

| 4.4 | **Choi Bo Sung, Inc. & Ms. Lana Choi** | Last 4 digits of account number | | $150,000.00 |

Nonpriority Creditor's Name

**c/o Luan Phan
PB Law Group, LLP
444 S. Flower St., Ste 1850
Los Angeles, CA 90071**
Number Street City State Zip Code

When was the debt incurred?

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another
□ Check if this claim is for a community debt

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:
□ Student loans

Is the claim subject to offset?
■ No
□ Yes

□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Claim for cost of sign on KOA property purchased from Bypass Trust**

---

Debtor 1   **Denny Roy Steelman** _____    Case number _(if know)_ _____

| 4.5 | Citi | Last 4 digits of account number   2684 | $1,055.00 |

Nonpriority Creditor's Name

Po Box 6241
Sioux Falls, SD 57117
Number Street City State Zip Code

**When was the debt incurred?**   Opened 12/97 Last Active 9/13/16

**Who incurred the debt? Check one.**

**As of the date you file, the claim is: Check all that apply**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit Card**

**Is the claim subject to offset?**

■ No
☐ Yes

---

| 4.6 | Ryan Renne and Angela Rix | Last 4 digits of account number | $44,000.00 |

Nonpriority Creditor's Name

26881 Windsor Drive
San Juan Capistrano, CA 92675
Number Street City State Zip Code

**When was the debt incurred?** _____

**Who incurred the debt? Check one.**

**As of the date you file, the claim is: Check all that apply**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Claims for undisclosed defects in property purchased from Bypass Trust**

**Is the claim subject to offset?**

■ No
☐ Yes

---

| 4.7 | The Survivor's Trust under the | Last 4 digits of account number | $125,000.00 |

Nonpriority Creditor's Name

2010 Steelman Intervivos Trust
dated 2010 (Bypass)
Number Street City State Zip Code

**When was the debt incurred?** _____

**Who incurred the debt? Check one.**

**As of the date you file, the claim is: Check all that apply**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Promissory Note from Bypass Trust to Survivor's Trust**

**Is the claim subject to offset?**

■ No
☐ Yes

---

Debtor 1   **Denny Roy Steelman** _____   Case number (if known) _____

| 4.8 | Trustees of the Southern California | Last 4 digits of account number | SJCG | | $1,600,000.00 |
|---|---|---|---|---|---|

Nonpriority Creditor's Name
**IBEW-NECA Pension Plan**
c/o Laquer, Urban, Clifford & Hodge
225 South Lake Avenue, Ste 200
Pasadena, CA 91101-3030
Number Street City State Zip Code

When was the debt incurred?   **2015**

Who incurred the debt? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?

☑ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☑ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify   **Lawsuit in US District Court for pension contributions**

---

## Part 3:   List Others to Be Notified About a Debt That You Already Listed

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address
**CA Agent for Service of Process for Choi Bo Sung, Inc.**
Kyoung L. Choi
3170 W. Olympic Blvd., #G
Los Angeles, CA 90006

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.4** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Laquer, Urban, Clifford & Hodge LLP**
J. Paul Moorhead, Esq.
225 South Lake Avenue
Suite 200
Pasadena, CA 91101-3030

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.8** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Luan Phan**
PB Law Group, LLP
444 S. Flower St., Ste 1850
Los Angeles, CA 90071

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.4** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Michael B. Cooper, Esq.**
Toffe & Cooper, LLP
3713 Highland Avenue
Suite 2
Manhattan Beach, CA 90266

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.6** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

## Part 4:   Add the Amounts for Each Type of Unsecured Claim

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

| | | | | | Total Claim | |
|---|---|---|---|---|---|---|
| Total claims from Part 1 | 6a. | Domestic support obligations | 6a. | $ | 0.00 | |
| | 6b. | Taxes and certain other debts you owe the government | 6b. | $ | | |

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                            Best Case Bankruptcy

Debtor 1    Denny Roy Steelman                                          Case number (if known) _____

|  |  |  |  |  | |
|---|---|---|---|---|---|
| | 6c. | Claims for death or personal injury while you were intoxicated | 6c. | $ | 0.00 |
| | 6d. | Other. Add all other priority unsecured claims. Write that amount here. | 6d. | $ | 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ | 0.00 |

|  |  |  |  |  | Total Claim |
|---|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | Student loans | 6f. | $ | 0.00 |
| | 6g. | Obligations arising out of a separation agreement or divorce that you did not report as priority claims | 6g. | $ | 0.00 |
| | 6h. | Debts to pension or profit-sharing plans, and other similar debts | 6h. | $ | 0.00 |
| | 6i. | Other. Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ | 2,520,443.00 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ | 2,520,443.00 |

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | Denny Roy Steelman | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1.  Do you have any executory contracts or unexpired leases?
    ☐ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.
    ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2.  List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone). See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| | Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|---|
| 2.1 | Denny R. Steelman, Trustee of the Survivor's Trust under the 2010 Steelman Inter-Vivos Trust dated 8/10/10 | Promissory Note on Debtor's primary residenced secured by PRT; matures 2/19/31 |
| 2.2 | Promissory Note to Bypass Trust | 10/2016 |

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Denny Roy Steelman | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number (if known) | _____ | | |

☐ Check if this is an amended filing

## Official Form 106H
## Schedule H: Your Codebtors                                              12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (Community property states and territories include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☐ No. Go to line 3.
■ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

    ☐ No
    ■ Yes.

    In which community state or territory did you live?    -NONE-    . Fill in the name and current address of that person.

    _____
    Name of your spouse, former spouse, or legal equivalent
    Number, Street, City, State & Zip Code

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| Column 1: Your codebtor<br>Name, Number, Street, City, State and ZIP Code | Column 2: The creditor to whom you owe the debt<br>Check all schedules that apply: |
|---|---|
| **3.1** _____<br>Name<br><br>_____<br>Number        Street<br>City            State        ZIP Code | ☐ Schedule D, line  _____<br>☐ Schedule E/F, line  _____<br>☐ Schedule G, line  _____ |
| **3.2** _____<br>Name<br><br>_____<br>Number        Street<br>City            State        ZIP Code | ☐ Schedule D, line  _____<br>☐ Schedule E/F, line  _____<br>☐ Schedule G, line  _____ |

<table>
<tr><td colspan="2"><strong>Fill in this information to identify your case:</strong></td></tr>
</table>

Fill in this information to identify your case:

Debtor 1        Denny Roy Steelman

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number
(if known)

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:

MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Employment

1.    Fill in your employment information.

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

|  | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| Employment status | ■ Employed<br>☐ Not employed | ■ Employed<br>☐ Not employed |
| Occupation | Retired | Unemployed |
| Employer's name |  |  |
| Employer's address |  |  |
| How long employed there? |  |  |

### Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ 0.00 | $ 0.00 |
| 3. | Estimate and list monthly overtime pay. | 3. +$ 0.00 | +$ 0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. $ 0.00 | $ 0.00 |

Debtor 1    Denny Roy Steelman                                    Case number (if known) _____

|  |  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| Copy line 4 here | | 4. | $ 0.00 | $ 0.00 |

**5.** List all payroll deductions:

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ 0.00 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ 0.00 |
| 5e. | Insurance | 5e. | $ 0.00 | $ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| 5g. | Union dues | 5g. | $ 0.00 | $ 0.00 |
| 5h. | Other deductions. Specify: _____ | 5h.+ | $ 0.00 + | $ 0.00 |

**6.** Add the payroll deductions. Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $ 0.00    $ 0.00

**7.** Calculate total monthly take-home pay. Subtract line 6 from line 4.    7.    $ 0.00    $ 0.00

**8.** List all other income regularly received:

| 8a. | Net income from rental property and from operating a business, profession, or farm. Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ 0.00 |
|---|---|---|---|---|
| 8b. | Interest and dividends | 8b. | $ 0.00 | $ 0.00 |
| 8c. | Family support payments that you, a non-filing spouse, or a dependent regularly receive. Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | $ 0.00 |
| 8e. | Social Security | 8e. | $ 2,584.70 | $ 1,476.30 |
| 8f. | Other government assistance that you regularly receive. Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ 0.00 | $ 0.00 |
| 8g. | Pension or retirement income | 8g. | $ 3,203.08 | $ 0.00 |
| 8h. | Other monthly income. Specify: Pension | 8h.+ | $ 614.00 + | $ 0.00 |
| | Pension | | $ 202.00 | $ 0.00 |

**9.** Add all other income. Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $ 6,603.78    $ 1,476.30

**10.** Calculate monthly income. Add line 7 + line 9.    10.    $ 6,603.78 + $ 1,476.30 = $ 8,080.08
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

**11.** State all other regular contributions to the expenses that you list in *Schedule J*.
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify: _____    11. +$ 0.00

**12.** Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.
Write that amount on the *Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data*, if it applies    12. $ 8,080.08

Combined monthly income

**13.** Do you expect an increase or decrease within the year after you file this form?
■ No.
☐ Yes. Explain: _____

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Denny Roy Steelman** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

Check if this is:
- ☐ An amended filing
- ☐ A supplement showing postpetition chapter 13 expenses as of the following date:

  MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Your Household

1. Is this a joint case?

   ☒ No. Go to line 2.
   ☐ Yes. Does Debtor 2 live in a separate household?

      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household of Debtor 2.*

2. Do you have dependents?    ☒ No

   Do not list Debtor 1 and Debtor 2.    ☐ Yes.   Fill out this information for each dependent...........

   Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |

3. Do your expenses include expenses of people other than yourself and your dependents?

   ☒ No
   ☐ Yes

## Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 2,000.00 |
| If not included in line 4: | | |
| 4a.  Real estate taxes | 4a. $ | 569.67 |
| 4b.  Property, homeowner's, or renter's insurance | 4b. $ | 185.75 |
| 4c.  Home maintenance, repair, and upkeep expenses | 4c. $ | 726.00 |
| 4d.  Homeowner's association or condominium dues | 4d. $ | 111.49 |
| 5. Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

Debtor 1    Denny Roy Steelman _____    Case number (if known) _____

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a.  Electricity, heat, natural gas | 6a. | $ | 500.00 |
| | 6b.  Water, sewer, garbage collection | 6b. | $ | 68.89 |
| | 6c.  Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 270.48 |
| | 6d.  Other. Specify: | 6d. | $ | 0.00 |
| 7. | Food and housekeeping supplies | 7. | $ | 630.00 |
| 8. | Childcare and children's education costs | 8. | $ | 0.00 |
| 9. | Clothing, laundry, and dry cleaning | 9. | $ | 178.00 |
| 10. | Personal care products and services | 10. | $ | 0.00 |
| 11. | Medical and dental expenses | 11. | $ | 1,546.50 |
| 12. | Transportation. Include gas, maintenance, bus or train fare. | | | |
| | Do not include car payments. | 12. | $ | 400.00 |
| 13. | Entertainment, clubs, recreation, newspapers, magazines, and books | 13. | $ | 0.00 |
| 14. | Charitable contributions and religious donations | 14. | $ | 0.00 |
| 15. | Insurance. | | | |
| | Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a.  Life insurance | 15a. | $ | 0.00 |
| | 15b.  Health insurance | 15b. | $ | 673.30 |
| | 15c.  Vehicle insurance | 15c. | $ | 288.67 |
| | 15d.  Other insurance. Specify: Humana | 15d. | $ | 73.20 |
| 16. | Taxes. Do not include taxes deducted from your pay or included in lines 4 or 20. | | | |
| | Specify: | 16. | $ | 0.00 |
| 17. | Installment or lease payments: | | | |
| | 17a.  Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| | 17b.  Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c.  Other. Specify: | 17c. | $ | 0.00 |
| | 17d.  Other. Specify: | 17d. | $ | 0.00 |
| 18. | Your payments of alimony, maintenance, and support that you did not report as | | | |
| | deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I). | 18. | $ | 0.00 |
| 19. | Other payments you make to support others who do not live with you. | | | |
| | Specify: | 19. | $ | 0.00 |
| 20. | Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.* | | | |
| | 20a.  Mortgages on other property | 20a. | $ | 0.00 |
| | 20b.  Real estate taxes | 20b. | $ | 0.00 |
| | 20c.  Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d.  Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e.  Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | Other: Specify: NRA | 21. | +$ | 101.00 |

| | | | |
|---|---|---|---|
| 22. | Calculate your monthly expenses | | |
| | 22a. Add lines 4 through 21. | $ | 8,322.95 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | 8,322.95 |
| 23. | Calculate your monthly net income. | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 8,080.08 |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 8,322.95 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. $ | -242.87 |

24. Do you expect an increase or decrease in your expenses within the year after you file this form?
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a
modification to the terms of your mortgage?

☐ No.

☑ Yes.    Explain here: I expect my medical expenses to increase.

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Denny Roy Steelman** |
| | First Name       Middle Name       Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name       Middle Name       Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | |
| (if known) | |

☐ Check if this is an
  amended filing

## Official Form 106Dec
# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Sign Below

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

■ No

☐ Yes. Name of person _____    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X _____    X _____

Denny Roy Steelman                Signature of Debtor 2
Signature of Debtor 1

Date  October 10, 2016            Date _____


Official Form 106Dec          Declaration About an Individual Debtor's Schedules

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

# EXHIBIT 2

JS - 5

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV15-00553 JVS (JCGx)                          Date   May 12, 2017

Title   Trustees of the Southern California IBEW-NCECA Pension Plan v. Denny R. Steelman, et al.

Present: The Honorable    James V. Selna

| Karla J. Tunis | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Plaintiff's Motion for Order for (A) Lift Stay  Pursuant to Order from Bankruptcy Court; GRANTING (B) Substitute Proper Parties as Defendants; and GRANTING (C) Setting a Hearing Date on Plaintiff's Motion for Summary Judgment

On October 14, 2016, this case was stayed per an automatic bankruptcy stay. Docket No. 55. Before the stay, Plaintiff Trustees of the Southern California IBEW-NECA Pension Plan ("the Plan") had moved for summary judgement. Docket No. 46. Defendant Denny R. Steelman ("Steelman") opposed. Docket No. 52. The Plan replied. Docket No. 53. But, before the summary judgment hearing, the Court stayed the case. Docket No. 55. Mr. Steelman died on January 5, 2017. Docket No. 60. On October 26, 2016, the Pension Plan filed a motion for relief from the automatic stay in Mr. Steelman's bankruptcy proceeding. Moorhead Decl. ¶ 4.  On January 18, 2017, the honorable Bankruptcy Court Judge Erithe A. Smith issued an order granting, in part, the Pension Plan's motion so that it could proceed with the motion for summary judgment. Id. Ex. A.

The Plan has now moved for an order (1) lifting the stay pursuant to an order from the bankruptcy court, (2) substituting the proper parties as defendants, and (3) setting a hearing date on Plaintiff's motion for summary judgment. Mot., Docket No. 59. Executor Kevin Liebeck ("Liebeck"), the executor of the Steelman estate filed an opposition to these requests, but requested an opportunity to submit supplemental briefing on the Plan's pending motion for summary judgment. Opp'n, Docket No. 65. The Plan replied. Docket No. 66.

First, the Plan seeks an order lifting the stay so that it may proceed with its previously briefed summary judgment order. Liebeck does not oppose this request. Opp'n

JS - 5

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV15-00553 JVS (JCGx) | Date | May 12, 2017 |

| | |
|---|---|
| Title | Trustees of the Southern California IBEW-NCECA Pension Plan v. Denny R. Steelman, et al. |

at 1. Therefore, the Court lifts the stay so that the parties may proceed with the summary judgment order.

Second, the Plan requests an order substituting as the defendants in this matter Kevin Liebeck, as the executor of the estate of Denny R. Steelman, and/or Weneta M.A. Kosmala ("Kosmala"), as the duly appointed trustee of the Chapter 7 bankruptcy petition. Under Federal Rule of Civil Procedure 25(a), "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." Liebeck does not oppose. Opp'n at 2.

Although the Plan served Kosmala, Kosmala has not responded. Docket No. 64. The Plan contends that Kosmala is a proper defendant because a Chapter 7 Trustee may defend against claims brought against the estate and also has capacity to sue or be sued. 11 U.S.C. § 704(a)(5); 11 USC § 323(b). The Plan further argues that Kosmala is a proper defendant because death does not conclude a bankruptcy proceeding. Fed. R. Bankr. P. 1016. The Court agrees and substitutes Kosmala as an additional defendant.

Third, the Plan requests that the Court schedule a hearing on the pending summary judgment motion. Mot. at 4. Liebeck requests an opportunity for supplemental briefing, but does not oppose the Court setting the hearing date. Given Steelman's death and the substitution of parties, the Court finds that supplemental briefing is appropriate. Liebeck shall file a supplemental opposition with 14 days. The Plan may file a supplemental reply 7 days later. The Court sets the hearing on the motion for summary judgment for **June 12, 2017, at 1:30 p.m.**

The Court **grants** the motion as set forth above. The Court finds that oral argument would not be helpful in this matter and therefore vacates the May 22, 2017 hearing. See Fed. R. Civ. P. 78; L.R. 7-15.

| | | | |
|---|---|---|---|
| | | : | 00 |
| Initials of Preparer: | | kjt | |

# EXHIBIT 3



# PRT<sup>SM</sup> SCHEDULE A

EXHIBIT A

PRT<sup>SM</sup> Name:   PRT STEDEN1007

PRT<sup>SM</sup> Dated:   December 28, 2015

PRT<sup>SM</sup> EIN:   81-6193324

| ASSET Contribution | Description | VALUE | Reference | Funding Date | EXHIBIT |
|---|---|---|---|---|---|
| Cash Deposit | Union Bank   Checking Account | $ 500.00 | 76613827 | 12/28/15 | B |
| Cash Deposit | Union Bank   Checking Account | $ 875,000.00 | 76874884 | 01/04/16 | B |
| Cash Deposit | Union Bank   Checking Account | $ 195,000.00 | 76551239 | 03/21/16 | B |
| Cash Deposit | Union Bank   Checking Account | $ 287,586.15 | 76551201 | 03/21/16 | B |

TOTAL PRT<sup>SM</sup> ASSET VALUE    $   1,358,086.15

Approved & Accepted by Trustee:

X _____

Trustee Name

12-28-15

Date

## Beneficiary Designations

**PRIMARY (SPOUSAL) BENEFICIARY:**

Upon my death, I want my property distributed as follows:

☐ My Spouse:

Legal Name _____

D/O/B _____SS# _____ US Citizen? _____

Home Address _____

City _____ State _____ Zip _____ County_____

Home Phone _____ Cell Phone _____ Other _____

---

☐ My Living Trust for the benefit of my spouse:

Trust Name and Date: _____

☐ My Spouse's Private Retirement Trust℠:

Trust Name and Date: _____

☐ Other Trust for the benefit of my spouse:

Legal Name or Name and Date of Trust: _____

_____

☑ Other: If more than one beneficiary please fill in percentages and beneficiaries on the following lines. The total percentages must equal 100% to be effective:
SURVIVOR'S TRUST as under the 2010 STEELMAN INTER VIVOS TRUST
dated August 10, 2010, AS AMENDED

_____

**If the Private Retirement Trust℠ is funded with anything other than the separate property of the Beneficiary, then the spouse of the Beneficiary must consent to any beneficiary designation other than the spouse individually.**

Spousal Consent Signature:

x _~~Zellie Steelman~~_ _____    Date: _12/9/15_

1|Page

000013

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR QUALIFIED UNDER ANY STATE BLUE SKY LAW. NO PORTION OF THIS NOTE MAY BE OFFERED OR SOLD UNLESS REGISTERED AND QUALIFIED IN ACCORDANCE WITH THESE REQUIREMENTS OR AN EXEMPTION FROM THIS REGISTRATION AND QUALIFICATION IS AVAILABLE.

Dated: March 16, 2016                                    $815,000.00

## PROMISSORY NOTE

DENNY R. STEELMAN, TRUSTEE OF THE SURVIVOR'S TRUST UNDER THE 2010 STEELMAN INTER-VIVOS TRUST DATED AUGUST 10, 2010 dated March 16, 2016 ("Maker"), for value received, promises to pay to PRIVATE RETIREMENT TRUST$^{SM}$# STEDEN1007 ("Payee"), or to order on or before the March 16, 2031 ("Maturity Date") the principal amount of $815,000.00, which equals the fair market value of the property contributed in exchange for this Note, together with 2.33 percent interest per year.

This interest rate is intended to equal the applicable federal long-term rate prescribed by Internal Revenue Code Section 1274 on the date of this Note. If the interest charged is less than this applicable rate, the amount will be adjusted *ab initio* to equal the applicable federal long-term rate.

Maker shall pay $0.00 as down payment toward the principal amount, and Maker shall pay monthly payments of $2,000.00 over fifteen (15) years. Any amounts exceeding $1,583.00 shall be applied towards the principal. Upon Maturity Date, any outstanding principal amount is due and payable.

Maker shall make payments of interest to Payee's address or where the holder otherwise directs by written notice delivered to Maker.

Maker may prepay this Note at any time without premium or penalty, but with accrued interest on the prepaid principal.

If Maker defaults under this Note, Payee may, with fifteen (15) days' written notice to Maker, demand immediate payment of the entire principal and interest due.

If Payee does not receive any payment due within ten (10) days of its due date, Maker shall pay a five percent (5%) late charge on the delinquent payment.

Maker specifically waives any right of presentment for payment, notice of dishonor, demand, protest, notice of protest, and notice of nonpayment.

If this Note is placed in the hands of an attorney for collection or in any proceeding instituted to collect these amounts or for any litigation or controversy arising from or connected with this Note, the amounts are payable together with holder's reasonable attorney's fees and all related costs and expenses.

With Maker's consent, the registered holder of this Note is authorized to transfer this Note in

Page (1 of 2)

000155

person or by an attorney duly authorized in writing. As a condition to this consent, the Maker may require the transferor to furnish notice and evidence of the transfer to Maker, along with satisfactory evidence that the transfer complies with all applicable securities laws.

This Note may be transferred without this consent to a revocable trust established by Payee upon requesting the transfer be recorded on the register kept for this purpose at the holder's office.

For receiving payment and for all other purposes, Maker and any agent of Maker may treat the person in whose name this Note is registered as its owner, whether or not this Note is overdue; neither Maker nor Maker's agent will be affected by notice to the contrary.

This Note is governed by the laws of the State of California, and the rights and liabilities of Maker and Payee are governed by California law.

This Note binds Maker's heirs, beneficiaries, legal representatives, successors, and assigns.

Signed: *March 16, 2016*

THE SURVIVOR'S TRUST UNDER
THE 2010 STEELMAN INTER-VIVOS
TRUST DATED AUGUST 10, 2010

By: _____
DENNY R. STEELMAN, Trustee

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )
County of <u>ORANGE</u>                )

On March __16__, 2016 before me, _M. Gilbert, Notary Public_,
Notary Public, personally appeared <u>DENNY R. STEELMAN</u>, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY of PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

Signature _____        (Seal)

M. GILBERT
COMM. #2081827
Notary Public - California
Orange County
My Comm. Expires Sep. 16, 2018

000156

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 24.00
* S R 0 0 0 8 2 2 9 1 7 9 S *
2016000113462 10:57 am 03/18/16
90 404 D11 F13    6
0.00 0.00 0.00 0.00 15.00 0.00 0.00 0.00

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL THIS DEED TO
MARK A. ZIEBOLD, ESQ.
9870 Research Dr., Ste. 209
Irvine, CA 92618
Parcel Number(s): 782-351-25

## Deed of Trust

THIS DEED OF TRUST, made on March 16 , 2016, between DENNY R. STEELMAN, TRUSTEE OF THE
SURVIVOR'S TRUST UNDER THE 2010 STEELMAN INTER-VIVOS TRUST DATED AUGUST 10, 2010, an
irrevocable trust ("TRUSTOR"), whose address is, 26422 Lombardy Road, Mission Viejo, California 92692,
LIFETIME ADVISERS, LLC, a Delaware limited liability company ("TRUSTEE"), whose address is 4120 Douglas
Boulevard, #306-350, Granite Bay, California 95746, and MARK A. ZIEBOLD, ESQ., TRUSTEE OF THE PRIVATE
RETIREMENT TRUST℠# STEDEN1007 DATED DECEMBER 28, 2015 ("BENEFICIARY"), whose address is
9870 Research Drive, Suite 205, Irvine, California 92618, WITNESSETH: That Trustor grants to Trustee in trust, with
Power of Sale, that property in the unincorporated area, County of ORANGE, State of California, described as follows:

REAL PROPERTY IN THE UNINCORPORATED AREA, COUNTY OF ORANGE, STATE OF
CALIFORNIA, DESCRIBED AS FOLLOWS:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY THIS
REFERENCE

ALSO KNOWN AS: 26422 Lombardy Road, Mission Viejo, California 92692
APN# 782-351-25

for the purpose of securing (1) payment of the sum of $2,000.00, with interest thereon according to the terms of a
promissory note dated March 16 , 2016, made by Trustor, payable to order of Beneficiary, and extensions or renewals
thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3)
payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns,
when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

A.    To protect the security of this Deed of Trust, Trustor agrees:

1) To keep said property in good condition and repair; to complete or restore promptly and in good and
workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when
due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said
property or requiring any alterations or improvements to be made thereon, not to commit or permit waste
thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate,
fertilize, fumigate, prune and do all other acts which from the character or use of said property may be
reasonably necessary, the specific enumerations herein not excluding the general.

2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to
Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon
indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the
entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not
cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or
powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and

Page 1 of 4

000157

attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

4) To pay, at least ten (10) days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust

Should Trustor fail to make any payment or to do any act herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may; make or do the same is such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B.  It is mutually agreed:

1) That any award in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require payment when due of all other sums so secured or to declare default for failure so to pay.

3) That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easements thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof.

4) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

5) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee or written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of said having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and

Page 2 of 4

000158

in such order as it may determine, at public auction to the highest bidder for case in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any maters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of trustee and of this Trust, including costs of evidence of title in connection with sale, Trustee shall apply to proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

6) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

7) That this Deed applies to, inures to the benefit of, and binds to all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

8) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

9) Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address as shown above.

Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the California Civil Code.

If the Trustor/Grantor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Beneficiary being first had and obtained, Beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligation secured hereby, irrespective of the maturity date specified in any Note evidencing the same, immediately due and payable.

THE SURVIVOR'S TRUST UNDER THE 2010 STEELMAN
INTER-VIVOS TRUST DATED AUGUST 10, 2010, Trustor

By: _____
    DENNY R. STEELMAN, Trustee

Dated: March 16, 2016

000159

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of ORANGE                         )

On March __16__, 2016 before me, ___M Gilbert, Notary Public___

Notary Public, personally appeared DENNY R. STEELMAN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___M Gilbert___                              (Seal)

M. GILBERT
COMM. #2081827
Notary Public - California
Orange County
My Comm. Expires Sep. 16, 2016

Page 4 of 4

EXHIBIT "A"

REAL PROPERTY LEGAL DESCRIPTION

THE LAND DESCRIBED AS A.P.N.: 782-351-25 IS SITUATED IN THE STATE OF
CALIFORNIA, COUNTY OF ORANGE, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 80 OF TRACT NO. 11952, AS SHOWN ON A MAP RECORDED IN
BOOK 613, PAGES 33 THROUGH 39 INCLUSIVE OF MISCELLANEOUS
MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM ALL MINERALS, OIL, GAS, PETROLEUM,
OTHER HYDROCARBON SUBSTANCES AND ALL UNDERGROUND
WATER WHICH UNDERLIES A PLANE PARALLEL TO AND 500 FEET
BELOW THE PRESENT SURFACE, IT BEING UNDERSTOOD THAT THE
OWNER OF SUCH MINERALS, OIL, GAS, PETROLEUM, OTHER
HYDROCARBON SUBSTANCES AND WATER, AS SET FORTH ABOVE,
SHALL HAVE NO RIGHT TO ENTER UPON SAID LAND OR ANY
PORTION THEREOF ABOVE SAID PLANE PARALLEL TO AND 500 FEET
BELOW THE PRESENT SURFACE FOR ANY PURPOSE WHATSOEVER,
AS RESERVED BY MISSION VIEJO COMPANY IN THE DEED
RECORDED FEBRUARY 2, 1988 AS INSTRUMENT NO. 88-48195 OF
OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

ALSO EXCEPTING THEREFROM ALL WATER RIGHTS, CLAIMS OR
TITLE TO WATER, WHETHER OR NOT SHOWN BY THE PUBLIC
RECORDS.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS,
DRAINAGE, MAINTENANCE, REPAIRS AND FOR OTHER PURPOSES,
ALL AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICTIONS AND RESERVATION OF
EASEMENTS FOR CALIFIA ("DECLARATION"), RECORDED APRIL 26,
1989 AS INSTRUMENT NO. 89-219798 OF OFFICIAL RECRODS OF
ORANGE COUNTY, CALIFORNIA, THE SUPPLEMENTAL DECLARATION
OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR PORTION OF
CALIFIA ("SUPPLEMENTAL"), RECORDED JUNE 7, 1989 AS
INSTRUMENT NO. 89-300447 OF SAID OFFICIAL RECORDS, AND IN THE
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
FOR LAKE MISSION VIEJO ASSOCIATION ("LAKE DECLARATION"),

RECORDED NOVEMBER 16, 1976 IN BOOK 11963, PAGE 889 OF SAID
OFFICIAL RECORDS, AS IMPOSED BY THAT CERTAIN NOTICE OF
ANNEXATION TO LAKE MISSION VIEJO ASSOCIATION ("NOTICE"),
RECORDED FEBRUARY 2, 1988 AS INSTRUMENT NO. 88-48194 OF SAID
OFFICIAL RECORDS.

⬡ PRT™

**PRT STEDEN1007**

**Consolidated Financial Statement**
Quarter Ending: 09/30/2016

**2016**

*Mark Ziebold, Esq. Trustee*

### BALANCE SHEET

**ASSETS:**

| | | |
|---|---|---|
| Cash | Union Bank Account | $ 50,466.15 |
| Nationwide Annuity | Contract #01-6824567 | $ 523,714.18 |
| Steelman Survivors Trust | Trust Loan | $ 815,000.00 |

**TOTAL ASSETS:** $ 1,389,180

**LIABILITIES:**

| | | |
|---|---|---|
| Accounts Payable: | Taxes Payable | $ 3,375.00 |

**TOTAL LIABILITIES:** $ 3,375

**NET TRUST VALUE** $ 1,385,805

### INCOME STATEMENT

**INCOME:**

| | |
|---|---|
| Interest | $ - |
| Change in Value | $ 21,214.18 |
| Contract Credits | $ 2,500.00 |
| Income | $ 12,000 |

**TOTAL GAIN:** $ 12,000

**EXPENSES:**

| | |
|---|---|
| Loan Interest Expense: | |
| Professional Fees: | |
| Trustee | $ - |
| Admin Support | $ 4,500 |
| Legal | $ - |
| Tax & Accounting | $ - |

**TAXABLE GAIN:** $ 7,500

Assumed Tax Rate: 45%

**Estimated Taxes Due:** $ 3,375

©Trust-CFO 2015

PRT FinStmt

000169

# RETIREMENT WEALTH MANAGEMENT, LLC
## a California Limited Liability Company

## Article One
## Company Formation

### Section 1.01        The Limited Liability Company

This Agreement, dated December  9  , 2015, forms and establishes a limited liability company. under the laws of the State of California, and specifically under the California Limited Liability Company Act. The Company becomes effective upon filing Articles of Organization as required by the State of California.

### Section 1.02        The Company's Name

The Company's name is RETIREMENT WEALTH MANAGEMENT, LLC.    The Manager may change the name of the Company or operate the Company under different names.

### Section 1.03        Tax Classification as a Disregarded Entity

As long as the Company has only one Member, the Company will be classified as a disregarded entity for income tax purposes unless the Member has elected to classify the Company as an association taxable as a corporation. All of the Company's income, losses, and other tax items will be treated as those of the Member.

### Section 1.04        Company's Purpose and Scope

The Company is organized to provide centralized management of investments and business activities.

In order to accomplish these purposes, the Company may:

> own, acquire, manage, develop, operate, buy, sell, exchange, finance, refinance, and otherwise deal with real, personal, tangible, and intangible property, and any type of business, as the Manager determines from time to time to be in the best interests of the Company; and

> conduct any lawful business and investment activity permitted under the laws of California and in any other jurisdiction in which the Company may have a business or investment interest in order to accomplish these objectives.

The Company may engage in any other activities that are related or incidental to these purposes, as the Manager may determine with sole and absolute discretion.

000108

Section 1.05    Purpose of Company Restrictions

This Company is formed by those who know and trust one another and who, in forming this Limited Liability Company, have surrendered certain management rights.

Capital is material to the business and investment objectives of the Company and its federal tax status. An unauthorized transfer of a Member's Interest could create a substantial hardship to the Company, jeopardize its capital base, and adversely affect its tax structure. As a result, certain restrictions expressed in this Agreement attach to and affect the ownership and transfer of Membership Interests. These restrictions are not intended to penalize, but are intended to protect and preserve the existing trust-based relationships, the Company's capital, and the Company's financial ability to continue to operate.

Section 1.06    The Company's Principal Office and Location of Records

The street address of the principal office in the United States where the Company maintains its records is:

> 1001 E. WASHINGTON AVENUE
> SANTA ANA, CALIFORNIA 92701

or where the Manager otherwise determines. The records maintained by the Company must include all records that the law requires the Company to maintain. The Company must maintain a records office in any jurisdiction that requires a records office and the Company must maintain all records required by applicable law at each records office.

Section 1.07    Registered Agent and Registered Office

The Company's initial registered agent is DUSTIN I. NICHOLS, ESQ., and the Company's initial registered office is located at:

> 9881 IRVINE CENTER DRIVE
> 1ST FLOOR
> IRVINE, CALIFORNIA 92618

Section 1.08    The Company's Term

This Company is a term-of-years Limited Liability Company under the California Limited Liability Company Act. The Company begins on the date the Articles of Organization are filed with the Secretary of State of California and terminates on December ____, 2090, unless terminated or extended by this Agreement.

The Members, by unanimous vote, may continue the Company beyond its scheduled termination date. But at any time after the scheduled termination date, any Member may withdraw the Member's Capital Account by written request to the Manager. The Company must distribute any Capital Account demanded under this provision within 180 calendar days of receiving the Member's written request.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC
2
THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000109

### Section 1.09    Venue

Venue for any dispute arising under this Operating Agreement or any disputes among any Members or the Company will be in the county of the Company's Registered Office.

## Article Two
## Tax Matters

If the Company has only one Member, the Company will be classified as a disregarded entity for income tax purposes unless the Member has elected to classify the Company as an association taxable as a corporation.

## Article Three
## Membership Interests

### Section 3.01    Percentage Membership Interest Represented by Shares

Each Member's Initial Membership Interest is the percentage interest set forth in the attached Exhibit A.

The Company shall maintain a correct record of all Members and their Membership Interests, together with amended and revised schedules of ownership caused by changes in the Members and changes in Membership Interests.

### Section 3.02    Valuing Membership Interests in the Company

For all purposes, the value of the Company as an entity and of Membership Interests will be their respective fair market values. Any dispute, contest, or issue of fair market value will be resolved by a written Qualified Appraisal by a Qualified Appraiser selected by the Manager.

## Article Four
## Capital Contributions

### Section 4.01    Initial Capital Contributions

As their Initial Capital Contributions to the Company, the Members shall contribute all of their right, title, and interest in and to the property described in Exhibit A. The Members agree that the property described in Exhibit "A" has the fair market value (net of liabilities assumed or taken subject to or by the Company) listed opposite the scheduled property.

Each Member's Interest will be credited with an initial contribution equal to the fair market value as specified in Exhibit "A".

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

3

000110

Section 4.02    Mandatory Additional Capital Contributions

The Company may require Additional Capital Contributions upon the vote of a majority in interest of the Members if an Additional Capital Contribution is reasonably needed to pay:

> existing or anticipated operation and administration expenses;
>
> debt service for any amounts borrowed by the Company;
>
> insurance and tax payments; or
>
> the cost of acquiring, maintaining, and selling Company property.

Required Additional Capital Contributions may not be discriminatory. If there is a call for an Additional Capital Contribution, all Members and any Assignees must contribute capital *pro rata,* based upon their respective Interests. A required Additional Capital Contribution must be satisfied within 60 days from the date the call is issued.

If a required Additional Capital Contribution is not satisfied in full, other Members may satisfy the deficiency. The Membership Interests will be reallocated under Section 3.01. Or, except if another loss or restriction of rights is otherwise specifically provided in this Agreement, the Manager may withhold the distributions otherwise allocated under Article Five or Article Twelve from any Member who fails to satisfy the required Additional Capital Contribution and apply those withheld distributions towards the Member's obligation.

In addition, the Manager may charge interest at the highest lawful rate to the Member or Assignee involved on part or all of any required Additional Capital Contribution that remains unsatisfied after the 60-day period expires. The Manager may institute legal action against a delinquent Member or Assignee and the delinquent Member or Assignee will be responsible for paying all costs and legal fees reasonably incurred by the Company for the action.

# Article Five
# Allocations and Distributions

Section 5.01    Allocating Profit and Loss

The Company shall allocate all net profits and losses for each calendar year of the Company to each Member *pro rata* in accordance with the Member's respective Membership Interest during the period the profits and losses accrue. For purposes of this Section, *profits and losses* include every item of income, deduction, depreciation, gain, loss, and credit for the calendar year.

Section 5.02    Distributions to Members

The Company's primary intent is to retain Company funds in amounts determined in the Manager's sole and absolute discretion to meet the reasonable needs of the business or

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

4

000111

investments of the Company and other needs as provided in this Agreement. No Member may demand distributions of any Company funds or assets.

Each year, the Manager shall distribute enough cash to each Member to cover the amount of income tax that each Member is required to pay on the distribution.

When making any distributions of funds or other Company assets, the Manager shall satisfy those distributions as follows.

(a)   **Cash Distributions**

The Manager may make distributions of Company cash to the Members on a *pro rata* or *non pro rata* basis as the Manager, in its discretion, determines. Distributions may only be made from the cash reserves that exceed the reasonable working reserves of the Company as determined in the Manager's sole discretion.

Subject to this Agreement and applicable law, cash distributions will first come from operations cash as permitted under this Agreement, then from cash from the liquidation of the Company under this Agreement.

(b)   **In-Kind Distributions**

The Manager, in its sole and absolute discretion, may make in-kind distributions of Company property to the Members. Before any in-kind distribution is made, the difference between the established fair market value and the book value of the property to be distributed must be adjusted by a credit or charge, as appropriate, to the Members' Interests. Upon the distribution of this property, the adjusted value will be charged to the Interests of the Members receiving these distributions.

(c)   **No Interest**

If a Member does not withdraw all or any portion of the Member's share of any cash distribution made under Subsection (a), the Member may not receive any interest on the unwithdrawn amount nor on any additional Membership Interest unless all Members agree.

# Article Six
# Company Management

Section 6.01    Manager's General Authority

Subject to the specific rights given the Members in this Agreement, the Manager may make all decisions concerning any matter affecting or arising out of the Company's business conduct. The Manager has the exclusive right and full authority to manage, conduct, and operate the Company business.

The Manager shall manage and administer the Company according to this Agreement and as provided by the laws of the State of California.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC
5
THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000112

**Section 6.02        A Majority in Interest of Managers Required to Control**

When more than one Manager is acting, the concurrence of a majority in interest of the Managers controls in all matters pertaining to the Company's administration. When only two Managers are acting, the concurrence and joinder of both is required.

**Section 6.03        Limitations on the Manager's Authority**

This Section limits the authority of the Manager.

(a)    **Acts Requiring 85% Approval of Membership Interests**

The consent of 85% of all the Membership Interests is required to confess a judgment against the Company or to file or consent to filing a petition for or against the Company under any federal or state bankruptcy, insolvency, or reorganization act.

(b)    **Acts Requiring Unanimous Approval of the Members**

The Manager may not do any of the following without the unanimous written consent of all Members:

sell substantially all of the property in liquidation or cease the Company's business before the Company's actual termination;

admit any substitute or additional Members into the Company except as otherwise permitted by this Agreement;

amend this Agreement, except under Section 7.03;

change or reorganize the Company into any other legal form;

expel a Member;

dissolve and liquidate the Company;

distribute more than 25% of the fair market value of the Company's assets in any tax year;

redeem, liquidate, purchase, or otherwise acquire the Membership Interest of any Member;

return the Capital Contribution of any Member;

contribute Company property to a charity; or

register any interest in this Company for an offering under any federal or state securities law.

(c)    **Members Who Are under Court Orders**

The vote, consent, or participation of any Member under any kind of court order charging, restraining, prohibiting, or in any way preventing any

**OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC**

6

THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

Member from participating in Company matters is not required in order to obtain the necessary percentage vote or consent or participation for the Company to act upon any proposed action.

### Section 6.04    Delegation among the Managers

When more than one Manager is serving, a Manager may delegate to any other Manager the power to exercise any or all powers this Agreement grants the Manager, including discretionary powers, if allowed by law. The delegating Manager may revoke this delegation at will. Any delegation of power, modification of delegation of power, or revocation of delegation of power must be in a writing and signed by the delegating Manager.

As long as any delegation of power is in effect, the Manager to whom the power is delegated may unilaterally exercise the delegated powers with the same force and effect as if the delegating Manager had personally joined in the exercise of the power.

### Section 6.05    Delegation to Agents and Others

The Manager may employ agents, employees, accountants, attorneys, consultants, and other persons necessary or appropriate to carry out the business and affairs of the Company, whether or not the person or persons are Affiliated Persons, or are employed by an Affiliated Person.

The Manager may direct the Company to pay reasonable fees, costs, expenses, salaries, wages, and other compensation as the Manager determines to be appropriate as an expense of the Company. Those expenses may include payment or reimbursement for all fees, costs, and expenses incurred in the formation and organization of the Company.

The Manager may delegate management functions to any corporation, partnership, limited liability company, or other entity qualified to manage the property and to conduct the business activities of the Company. Delegation of management powers will not relieve the Manager from personal liability for management decisions and operations of the Company. Any delegation of authority is to be considered in compensating the Manager for services to the Company.

### Section 6.06    Powers

In pursuing its lawful purposes, the Company may do all things that limited liability companies are permitted to do under the Act.

### Section 6.07    Authorization to Sign Certain Instruments

Regarding all obligations, powers, and responsibilities under this Agreement, the Manager may sign and deliver any notes and other evidence of indebtedness, contracts, agreements, assignments, deeds, leases, loan agreements, mortgages, and other security instruments and agreements in any form on behalf of the Company as the Manager determines to be proper.

**OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC**
7
THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000114

**Section 6.08        Affidavit of Manager's Authority**

Any third party dealing with the Company may rely on a notarized writing signed by the Manager stating the Manager's authority to act for the Company. The Manager may use the following as an example of a valid writing:

---

**Sample Written Statement of Authority of the Manager**
**of**
**RETIREMENT WEALTH MANAGEMENT, LLC**

On my oath and under penalty of perjury, I swear that I am the duly appointed Manager of RETIREMENT WEALTH MANAGEMENT, LLC, a California Limited Liability Company. I certify that I have not been removed as Manager and have the authority to act for and bind RETIREMENT WEALTH MANAGEMENT, LLC in business transactions for which this affidavit is given as affirmation of my authority.

_____
MARK A. ZIEBOLD, ESQ., Co-Manager

_____
DENNY R. STEELMAN, Co-Manager

Sworn and subscribed before me the undersigned authority, by MARK A. ZIEBOLD, ESQ. on _____, 20____.

_____
Notary Public

---

This example may be modified to reflect the Manager's fiduciary duty.

**Section 6.09        Creating an Advisory Committee**

The Manager may establish a Company advisory committee (*Advisory Committee*) consisting of two or more Members; beneficiaries of trusts that are Members; or legal, financial, or other advisors to the Manager or any Member.

    (a)    **Annual Meetings**

    If the Advisory Committee is established, the Manager shall call a meeting of the Advisory Committee at least once per calendar year. The purpose of the meeting is to generally inform the Advisory Committee of the business and operations of the Company since the last Advisory

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000115

Committee meeting.  The Advisory Committee may make a report of the meeting to the Members.

(b)    **Committee Is Advisory Only**

The Advisory Committee may make recommendations to or otherwise advise and consult with the Manager regarding the business and operation of the Company, but the Advisory Committee may not take any action on behalf of the Company or compel the Manager or any Member to take any action.

(c)    **Payment of Expenses Authorized**

Advisory Committee members are entitled to payment from the Company for their reasonable expenses of attending Advisory Committee meetings.

# Article Seven
# The Manager

### Section 7.01    Manager

DENNY R. STEELMAN and MARK A. ZIEBOLD, ESQ. are appointed as Co-Managers of the Company.  The Managers shall manage and administer the Company's property and perform all other duties prescribed for a Manager by California law.  The Company must have at least one Manager at all times.  No other person may act for or bind the Company except as permitted in this Agreement or as required by law.  No Manager will be personally liable for the obligations of the Company.

### Section 7.02    Extent and Scope of Services

The Managers shall adequately promote the interest of the Company and the mutual interest of the Members, and shall commit the necessary time and effort to do so.  The Manager is not required to devote full-time hours to Company business.

(a)    **Other Ventures**

The Managesr may engage in and possess interests in other business ventures independently or with others, and neither the Company nor any Member will acquire any interest in the Manager's independent ventures because of the Manager's service to the Company.  The Manager may compete with the Company through any independent venture without liability to the Company for so doing.

Despite the fiduciary duty owed by the Managers to the Company or the Members of the Company, the Managers are under no obligation to present any investment opportunity to the Company.

000116

(b)    **Manager's Fiduciary Duty**

In carrying out the duties of Manager under this Agreement, the Managers shall act as a fiduciary for the Members. In fulfilling this fiduciary duty, the Managers shall act in good faith and loyalty in a manner the Managers reasonably believes to be in the best interests of the Company and its Members, and with such care as an ordinary prudent person in a similar position would use under similar circumstances.

Accordingly, the Managers may not:

> act in any manner contrary to this Agreement;

> receive extra compensation not provided in this Agreement;

> commingle Company funds;

> fail to disclose material facts involving transfers to or from the Company; or

> derive any personal profit from dealing with the Company.

The Managers must account to the Company for any benefit received by the Managers without the consent of the Member from any transaction connected with the formation, conduct, or liquidation of the Company, or from any use by the Managers of Company property. The Managers shall hold any benefits he or she receives under this provision as trustee for the benefit of the Company.

(c)    **Employing Professionals**

The Managers may employ any brokers, agents, accountants, attorneys, or other advisors as the Manager determines appropriate for managing the Company business.

**Section 7.03    Manager's Power to Amend**

The Managers may, without the consent of the Members, amend any provision of this Agreement or the Articles of Organization, and prepare and deliver any documents necessary to reflect:

> a change in the Company's name or its principal office location;

> the admission, substitution, or termination of Members according to this Agreement;

> a change that the Managers, with sole discretion, determines to be necessary or advantageous to qualify or to maintain qualification as a limited liability company or a company in which the Members have limited liability under the laws of any jurisdiction, or to ensure that the tax treatment of the Company does not change, other than under Article Two;

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC
10
THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000117

a change that does not adversely affect the Members in any material respect or that is required or contemplated by this Agreement; or

any other similar amendments.

Any other amendments require the written consent of 85% of the Membership Interests unless other provisions of this Agreement require a higher percentage of the Members (such as liquidating the Company before its term expires).

Section 7.04        Indemnification and Hold-Harmless Provision

To the extent possible, this provision is intended to supersede any provision of California law to the contrary.

The Managers are not liable to any Member for any loss or damage incurred on behalf of the Company because of any act, omission, or forbearance if the Managers acted in good faith, in a manner that the Manager reasonably believed to be for the best interests of the Company, and within the scope of the authority granted to the Managers by this Agreement.

(a)        Gross Negligence or Willful Misconduct

A Manager is personally liable if the Manager is guilty of fraud, intentional breach of this Agreement, gross negligence, or willful misconduct regarding an act, omission, or forbearance.

(b)        Good-Faith Acts, Omissions, and Forbearances

Any act, omission, or forbearance by a Manager on advice of counsel to the Company must be conclusively presumed to have been in good faith.

(c)        No Personal Liability for Capital Contributions

The Managers are not personally liable for the return of any portion of any Member's Capital Contribution. Any return of capital will only be made from Company assets.

(d)        Indemnity Provisions

The Company shall indemnify and hold the Managers harmless from any loss, expense, or damage resulting from any act, omission, or forbearance of the Managers relating to the Company. The Company is not required to indemnify the Managers for any loss, claim, expense, or damage incurred because of the Manager's willful misconduct, gross negligence, or fraud.

Section 7.05        Manager's Voluntary Resignation

Subject to any contract between the Company and the Managers, any Manager may resign at any time, without prejudice to any Company rights under any contract to which the Managers are a party, by giving written notice to the Members. Any resignation will take effect on the date the notice is received or later if specified in the resignation notice.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

11

THE LAW OFFICE OF DUSTIN I. NICHOLS, A P.C.

9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

Unless otherwise specified, acceptance of the resignation notice is not required to make the Manager's resignation effective.

A Manager's resignation will not prejudice the Company's rights under any contract to which the Manager is a party on behalf of the Company.

### Section 7.06    Manager Removal

A Manager may be removed as Manager for cause by the affirmative vote of at least 85% of the Membership Interests, excluding the Manager at issue if the Manager is also a Member of the Company.  For purposes of this provision, the term *for cause* includes:

> any material act of self-dealing by a Manager;
>
> any material act constituting gross negligence, willful misconduct, or fraud;
>
> any act constituting the willful and intentional disregard of a directive of the Members by a vote on a matter in which the Members have a vote under this Agreement or under the laws of the State of California.

The term *material* means a significant monetary damage to the Company as the result of the act, omission, or forbearance by a Manager constituting self-dealing, gross negligence, or fraud.  The term *material* does not include:

> incidental or insignificant monetary damage to the Company;
>
> monetary damage incurred by someone who is not a Member and for which the Company is not liable; nor
>
> an intangible loss or damage that cannot be valued under the fair market valuation standards of federal tax law as reflected in pronouncements such as Revenue Ruling 59-60.

If a court of competent jurisdiction or an arbitrator in binding arbitration conducted under the terms of this Agreement or by agreement of the Manager conclusively resolves the issues of self-dealing, willful misconduct, gross negligence, fraud, and material damage to the Company against the Manager, any voting attributes of a Manager who is also a Member will be disregarded in the vote to remove the Manager.

### Section 7.07    Events Not Considered Withdrawal of Manager

Despite any provision in the Act, neither of the following events automatically causes a withdrawal:

> a Manager becoming the subject of an order for relief or being declared insolvent in any federal or state bankruptcy or insolvency proceeding, nor
>
> an entity Manager's charter revocation and the expiration of the 90-day reinstatement period or revocation without a reinstatement of its charter.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

12

THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000119

### Section 7.08    Additional Managers

Upon the unanimous consent of the Members and any then-serving Manager or Managers, any person (including a Member) may be designated a Manager at any time.

### Section 7.09    Vacancy in the Office of Manager

If all of the Managers withdraw, are removed, or otherwise cannot serve as Managers for any reason, a majority of the Membership Interests of the Members shall, within 90 days after the date the last remaining Manager stops serving, designate one or more new Managers. The appointed Manager or Managers will automatically have the rights, authorities, duties, and obligations of a Manager under this Agreement.

### Section 7.10    Compensation and Expenses of Manager

The Managers are entitled to receive a reasonable salary or other compensation for services provided. The Managers are entitled to reimbursement for reasonable costs and expenses the Manager incurs in conducting Company business.

### Section 7.11    No Bond Required

Except to the extent required by law, no Manager is required to furnish bond or other security in order to serve as Manager.

### Section 7.12    Manager's Responsibility to File Necessary Forms and Make or Terminate Elections

The Managers shall take all action necessary to assure prompt and timely filing of:

the Articles of Organization and any amendments thereto according to this Agreement;

all required state and federal tax returns, reports, and forms; and

all state and federal tax elections or election terminations as determined by the Manager to be in the best interest of the Company.

# Article Eight
# The Members

### Section 8.01    Members' Names and Addresses

The Manager shall maintain an updated list of all past and present Members of the Company, and their last known mailing addresses. The list must be kept as part of the Company records.

### Section 8.02    Limited Liability of Members

Except under Article Four, no Member will be required to contribute capital to the Company for the payment of any losses or for any other purposes, and no Member will

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

13

000120

be responsible or obligated to any third party for any debts or liabilities of the Company in excess of the amount of:

> that Member's unpaid required contributions to the Company's capital;

> unrecovered contributions to the Company's capital; and

> that Member's share of any undistributed Company profits.

### Section 8.03    No Right to Participate in Management

No Member may participate in the management and operation of the Company's business and its investment activities or bind the Company to any obligation or liability whatsoever. But a Member may exercise any power authorized by the Act that a Member may exercise without being considered to be taking part in the control of the business of the Company.

#### (a)    Title Transfer to Company Assets

A Member may not transfer legal or beneficial title to property of the Company unless the Member acts according to the limited authority prescribed by the laws of the State of California relating to the winding up of the Company in the absence of a qualified Manager. Any Member who acts in that capacity may do so only after first submitting an affidavit of fact stating the conditions under which the Member serves. Any affidavit prepared according to this provision must be kept with the Company records.

#### (b)    Members Must Not Bind the Company

A Member must not perform any act that would bind the Company or any other Member.

#### (c)    Members Must Not Incur Expenditures

A Member must not incur any expenditure on the Company's behalf.

### Section 8.04    Restrictions on Members' Withdrawal Rights

No Member may withdraw from the Company or receive a return of any contributions to the Company until the Company is terminated and its affairs wound up according to the Securities Act and this Agreement. Any Member who does any of the following has breached this Agreement:

> attempt to withdraw from the Company;

> interfere in the management of the Company affairs;

> engage in conduct that results in the Company losing its tax status as a Company;

> engage in conduct that discredits the Company;

**OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC**
14
THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

own a Membership Interest that becomes subject to a charging order, attachment, garnishment, or similar legal proceedings;

breach any confidentiality provisions of this Agreement;

bring any legal action against the Company to force the dissolution of the Company, to force any distribution of Company assets, or to appoint a receiver; or

fail to discharge a legal duty to the Company.

Any Member who breaches this Agreement is liable to the Company for damages caused by the breach, including attorney's fees and expenses of litigation. The Company may offset damages against any distributions or return of capital to the Member who has breached this Agreement.

### Section 8.05      Restrictions on Assignees' Withdrawal Rights

No Assignee has the right to receive a return of any contributions (whether the contributions were made by the Assignee or by an Assignor) until the Company is terminated and its affairs wound up according to the Act and this Agreement. Any Assignee who does any of the following will be considered to have breached this Agreement:

interfere in the management of the Company affairs;

engage in conduct that results in the Company losing its tax status as a Company;

engage in conduct that discredits the Company;

breach any confidentiality provisions of this Agreement;

bring any legal action against the Company to force the dissolution of the Company, to force any distribution of Company assets, or to appoint a receiver; or

fail to discharge a legal duty to the Company.

Any Assignee who breaches this Agreement is liable to the Company for damages caused by the breach. The Company may offset damages against any distributions or return of capital to the Assignee who has breached this Agreement.

### Section 8.06      No Right to Cause Dissolution

No Member may cause the dissolution and winding up of the Company by court decree or otherwise.

### Section 8.07      Partition Waiver

Each Member, individually and on behalf of the Member's successors and assigns, expressly waives any right to have any Company property partitioned.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

15

THE LAW OFFICE OF DUSTIN L. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

Section 8.08      Member Expulsion

The Company may only expel a Member for violating this Agreement or for failing to make the Capital Contributions as required in Article Four. A Member may only be expelled on the unanimous consent of all Members, excluding the Member to be expelled, under Section 6.03(b). If a Member to be expelled is a Managing Member, the Managing Member will first be removed as a Manager under Section 7.06.

An expelled Member loses all rights as a Member of the Company, and the expelled Member's Interests are converted to that of an Assignee.

Section 8.09      Voting

Members may only vote on the following matters:

removing a Manager, subject to the provisions of Section 7.06;

electing a successor Manager, subject to the provisions of Section 7.08;

terminating and dissolving the Company;

amending this Agreement;

extending the Company's term; and

any matter requiring the vote of the Members as set out elsewhere in this Agreement or in the Act.

Members may vote by written consent, with or without a formal meeting. Assignees may not vote.

Section 8.10      Access to Information

Subject to the provisions of this Section, each Member is entitled to all information regarding the Company under the circumstances and subject to the conditions stated in this Agreement and the Act. Assignees have no right to information regarding the Company.

All Members and any Assignees who obtain any information are subject to the confidentiality provisions of this Section.

(a)      Confidential Information

The Members acknowledge that they may receive confidential information regarding the Company, the release of which may be damaging to the Company or to persons with whom it does business. Each Member shall hold in strict confidence any information regarding the Company that is confidential, and may not disclose it to any person other than another Member, except for disclosures:

compelled by law (but the Member must notify the Manager promptly of any request for that information before disclosing it, if practicable);

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

16

THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

to a Member's advisors or representatives, but only if they have agreed to be bound by the provisions of this Section; or

that the Member also has received from a source independent of the Company that the Member reasonably believes was obtained without breach of any obligation of confidentiality.

(b)    **Enforcement through Specific Performance**

The Members acknowledge that disclosure of confidential information may cause irreparable injury to the Company for which monetary damages are inadequate, difficult to compute, or both. Accordingly, the provisions of this Section may be enforced by specific performance.

# Article Nine
# Books, Records, and Bank Accounts

**Section 9.01      Books and Records**

The Manager shall keep books of account regarding the operation of the Company at the principal office of the Company, or at any other place the Manager determines. All Members and their duly authorized representatives will have access to the books at all reasonable times. The Manager shall keep the following records:

a current list of the full name and last known address of each Manager and Member;

a copy of the Articles of Organization (together with any amendments) and copies of any powers of attorney under which any certificate has been signed;

copies of the Company's federal, state, and local income tax returns and any reports for the three most recent years;

copies of this Agreement (together with any amendments);

copies of any financial statements of the Company for the three most recent years; and

any other documents required by law.

**Section 9.02      Accounting and Taxable Year**

The Manager shall keep books of account consistent with any method authorized or required by the Internal Revenue Code and as determined by the Manager. The Manager shall close and balance the books at the end of each Company year. The Company's Taxable Year is the period authorized or required by the Internal Revenue Code, and as determined by the Manager.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

17

### Section 9.03      Reports

Within a reasonable time after the end of each Taxable Year, the Manager shall provide all Members with the information necessary to prepare and file their respective tax returns. The Manager shall prepare all financial statements at the Company's expense.

### Section 9.04      Bank Accounts and Company Funds

The Manager shall deposit all cash receipts in the Company's depository accounts. All accounts used by or on behalf of the Company are property of the Company, and will be received, held, and disbursed by the Manager for the purposes specified in this Agreement. The Manager must not commingle Company funds with any other funds.

## Article Ten
## Admitting Additional Members

### Section 10.01      Admission by Unanimous Consent of Members; Prerequisites

Additional Members may only be added after the unanimous consent of the Members. Before being admitted as a Member, a prospective Member must first:

> provide evidence satisfactory to the Manager that admission of the prospective Member will not violate any applicable securities law, cause a termination of the Company under applicable provisions of the Code, or alter the status of any tax election made by the Company;

> pay all reasonable expenses connected with admission as a Member, including professional fees incurred in obtaining opinions or valuations; and

> agree to be bound by all of the terms of this Agreement by signing the Agreement.

### Section 10.02      Capital Contributions and Fair Market Value

Other than contributions of cash or publicly traded securities, the fair market value of any property to be contributed by an additional Member as the initial Capital Contribution will be determined as agreed upon by the additional Member and the holders of a majority of the Membership Interests before the contribution is made. In the alternative, the Manager will appoint a disinterested appraiser to determine the value of the property to be contributed.

The Manager may adopt and revise rules, conventions, and procedures as the Manager determines to be appropriate regarding the admission of Members to reflect the Membership Interest at the end of the year in accordance with the intentions of the Members.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

18

THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.

9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

**Section 10.03     Admissions Must Not Violate This Article**

Any attempt to admit an additional Member that violates this Article will be null and void.

# Article Eleven
## Transfer of Membership Interests by a Member

**Section 11.01     Additional Transfer Restrictions**

If any proposed transfer of Membership Interests or addition of a Substitute Member will terminate the Company under either Internal Revenue Code Section 708(b) or the Act, then the transfer is prohibited unless the Manager specifically approves the transfer. If not approved by the Manager, the attempted transfer will be disregarded and void *ab initio.*

But the Manager may not approve any transfer or addition of a Substitute Member that violates any applicable federal or state securities law.

**Section 11.02     Transferee Treated as an Assignee until Admitted as a Substitute Member**

The transferee of a Membership Interest will hold the interest only as an Assignee until the transferee satisfies all the requirements of Section 11.03 to become a Substitute Member. As an Assignee, the transferee will have only those rights in Section 11.04.

**Section 11.03     Conditions Required to Become a Substitute Member**

An Assignee will not become a Substitute Member and will not have any rights as a Member until all of the conditions, consents, and procedures in this Section have been fully satisfied.

   (a)     **Members' and Manager's Consent**

   All Members, other than the assigning Member, and the Manager must consent in writing to the admission of the Assignee as a Substitute Member.

   (b)     **Executing All Other Agreements**

   The assigning Member and the Assignee shall sign, acknowledge, and deliver instruments of transfer and assignments to the Company, in the form and substance satisfactory to the Company. These instruments include the written acceptance and adoption by the Assignee of this Agreement, together with the Assignee's signing, acknowledgment, and delivery of a power of attorney to the Manager in the form and with the content specified in Section 13.02.

(c)    Reasonable Transfer Fee

An Assignee shall pay a reasonable transfer fee to the Company. The Manager may, with sole discretion, establish the transfer fee amount on a case-by-case basis.

(d)    Effective Date of Admission as Substitute Member

The effective date of an admission as a Substitute Member is the date on which all the remaining Members and Manager vote to accept the Assignee as a Substitute Member under this Agreement.

## Section 11.04    Assignee's Rights and Limitations

An Assignee is entitled to receive distributions from the Company to the same extent that the transferring Member would receive distributions under this Agreement. Until the effective date that an Assignee is admitted as a Substitute Member, both the Company and the Members will treat the Assignor of the transferred Membership Interest as the absolute owner of the transferred Membership Interest except regarding any Member distributions made that are attributable to the transferred Membership Interest.

An Assignee has substantially fewer rights than a Member. Assignees only hold a right to receive economic benefits when distributed from the Company in respect to the assigned Membership Interest. Other limitations on Assignees' rights include:

access only to those Company records and information specifically authorized for the Assignees under the Act;

no right to vote in any Company matters; and

no other legal or economic rights.

## Section 11.05    Amending Operating Agreement and Articles of Organization

If required by law, upon the admission of a new Member, the Manager shall amend the Operating Agreement or the Articles of Organization to reflect any substitution of Members.

(a)    Substitute Member Acceptance upon Amendment

Until the Operating Agreement or Articles of Organization are amended under this Section, an Assignee will not become a Substitute Member.

(b)    Assessing Fees

If a Substitute Member's entry into the Company requires an amendment, the Manager may assess any fees, costs, or other expenses of any required amendment against that Substitute Member.

## Section 11.06    Member Disability

The agent of a disabled Member acting under a durable power of attorney or the Legal Representative of a disabled Member may exercise all of the Member's rights and voting

authority, and is entitled to receive distributions of cash or other property from the Company on behalf of the Member. If more than one agent or Legal Representative is entitled to act for a disabled Member, the Manager will designate in writing which agent or Legal Representative may act on behalf of the disabled Member.

## Section 11.07    Death of a Member

Any Membership Interest that is transferred because of a Member's death will be an Assignee interest.

A transferee of any transfer under this Section will be bound by all of the terms of this Agreement.

## Section 11.08    Voting Rights of Transferred Interests

A Member who transfers a Membership Interest to an Assignee will continue to hold all voting rights associated with the assigned Interest until the Assignee of the transferred Interest satisfies all of the requirements to become a Substitute Member under Section 11.03.

In the case of an Assignee who holds an Interest received because of the death of a Member, the voting rights associated with the transferred Interest will be suspended and disregarded for purposes of calculating votes until the Assignee of the transferred Interest satisfies all of the requirements to become a Substitute Member under Section 11.03.

## Section 11.09    Non-Recognition of an Unauthorized Transfer or Assignment; Accumulation of Amounts to Be Distributed

The Company is not required to recognize the purported Interest of any transferee or Assignee who alleges to have received any Interest other than by an authorized transfer or Assignment under this Agreement. If the ownership of a Membership Interest is in doubt, or if there is reasonable doubt as to who is entitled to a distribution attributable to an Interest, the Manager may accumulate the amounts to be distributed until this issue is finally determined and resolved.

## Section 11.10    Creditor Rights; Charging Order Sole Exclusive Remedy

If a creditor obtains a judgment by a court of competent jurisdiction against any Member or Assignee, the court may charge the Member or Assignee's Interest with payment of the unsatisfied amount of the judgment from distributions attributable to the affected Interest, but only to the extent permitted by the Securities Act. To the extent any interest is charged with satisfaction of a judgment, the judgment creditor will receive no more than the rights of an Assignee; the creditor will not be admitted as a Member of the Company.

The charging order is the exclusive remedy by which a judgment creditor of a Member or an Assignee of a Membership Interest may obtain any satisfaction from the Company toward any judgment against the Member or Assignee. This Section does not deprive

any Member or Assignee of rights under any exemption laws available to the Member or Assignee.

**Section 11.11    Company's Unilateral Purchase Option for Interest Acquired without Consent**

The Company will have the unilateral option to purchase any Interest acquired by any transferee under this Section. For purposes of establishing the value of the Interest under this provision, the Interest will be considered the Interest of an Assignee.

(a)    Circumstances Triggering Purchase Option

Any of the following circumstances will trigger the Company's unilateral right to purchase a transferee's Interest. Collectively these events are referred to as *triggering events*.

The Membership Interest of a deceased Member passes to an individual or entity other than as permitted under Section 11.07.

Any individual, entity, organization, or agency obtains a Member's Interest, whether inclusive or exclusive of voting rights, because of:

any valid court order that the Company is required by law to recognize;

being subject to a lawful charging order by a court of competent jurisdiction;

a levy, voluntary or involuntary bankruptcy proceeding, or other transfer of a Membership Interest, with voting rights, that the Company has not approved but that the Company is required by law to recognize; or

any decree of divorce or equitable division of property that transfers a Membership Interest in the Company.

If the Company's unilateral purchase option is exercised, the Company will purchase the affected Interest of the transferee for the fair market value of the Interest, valued as the Interest of an Assignee.

If the Interest is transferred subject to a divorce decree or equitable division of property, the Company's unilateral option as to the transferred Interest will be suspended for a period of 90 days, and the divorcing Member will have all of the rights of the Company in this Section. If the divorcing Member fails to initiate exercise of the option within the 90-day period, the Company's unilateral option right will be restored.

000129

(b)    Terms and Conditions of Exercisable Purchase Option

If the Company elects to exercise its unilateral purchase option, the following terms and conditions will apply to the transaction.

(1)    Written Notice of Intent to Purchase

The Company will provide written notice to the Assignee or transferee within 90 days of the triggering event that the Company intends to purchase the Interest. If the Company does not provide written notice within 90 days of the triggering event, the Company's unilateral purchase option will lapse.

(2)    Exercise of Option and Date of Valuation

If the Company provides written notice of its intent to exercise its purchase option, then the Company may exercise the option within 180 days from the first day of the month following the month in which the Company provided the notice.

The valuation date for the Interest to be purchased will be the first day of the month following the month in which notice is delivered.

(3)    Written Appraisal Requirement

Unless the Company and the transferee or Assignee agree otherwise, the fair market value of any Interest subject to the Company's purchase option will be determined by Qualified Appraisal performed by a Qualified Appraiser selected by the Company. The Qualified Appraiser must be qualified to perform business appraisals and to value limited liability company or partnership interests.

(4)    Acceptance or Rejection of Valuation

If the transferee objects to the appraiser's valuation report, the transferee must deliver written notice of the objection to the Manager within 30 days from the date the transferee is provided with written notice of the valuation report. If the transferee does not object in writing within the required period, the report will be considered accepted as written.

If the transferee objects to the valuation report, closing of the sale will be postponed for a reasonable time until the valuation of the Interest is resolved.

000130

(5)    No Voting Rights during Purchase-Option
Period

Until the closing, the transferee will not be allowed to
exercise any vote attributable to the Interest that is subject
to the purchase option. The transferee will be entitled to all
items of income, deduction, gain, or loss from the Interest.
The transferee of the Interest will be an Assignee unless all
conditions have been satisfied for the transferee to become
a Substitute Member as described in Section 11.03.

(6)    Location and Date of Closing

Closing of any sale under this Section will occur at the
principal office of the Company within 45 days of the date
on which the valuation report is accepted by the transferee
or the date on which the valuation of the Interest is
otherwise resolved.

(7)    Payment of Terms upon Exercise of Option

In order to prevent unduly burdening the Company's
resources, the Company may unilaterally elect to pay any
purchase-money obligation in 30 equal annual installments.
If the remaining term of the Company is less than 30 years,
the Company may make equal annual installments over the
remaining term of the Company. Interest on any unpaid
principal amount will be determined at market rates
determined as of the closing date and, at the option of the
Company, may be adjusted annually as of the first day of
each Taxable Year.

In determining whether the remaining term of the Company
is less than 30 years, the Company may assume that any
option to extend the Company term will be exercised by the
Members. If the option to continue is not exercised, then
the balance will become due immediately upon dissolution
of the Company.

The first installment of principal and interest will be due on
the first day of the Taxable Year following the closing date.
Subsequent annual installments will be due on the first day
of each subsequent Taxable Year until the entire obligation
is fully paid. The Company may prepay any part of any
purchase-money obligation at any time without premium or
penalty.

**Section 11.12    Assignee or Charging Order Holder Assumes Tax Liability**

The Assignee of a Membership Interest and any person who acquires a charging order against a Membership Interest shall report income, gains, losses, deductions, and credits regarding the interest for the period in which the Assignee Interest is held or for the period the charging order is outstanding.

# Article Twelve
# Dissolution and Termination

**Section 12.01    Dissolving the Company**

The Company will be dissolved only if an event described in this Section occurs.

**(a)    Date Designated by the Manager**

The Company will be dissolved on a date designated by the Manager with the unanimous written consent of the Members.

**(b)    Judicial Dissolution**

The Company will be dissolved upon the entry of a decree of judicial dissolution by a court of competent jurisdiction.

**(c)    End of Company Term**

In any event, the Company will be dissolved on December _____, 2090.

After dissolution, the Company shall conduct only activities necessary to wind up its affairs.

**Section 12.02    Liquidating the Company Property**

After dissolving the Company, the Manager, or a liquidator appointed by a majority of the Members, shall liquidate the Company property; apply and distribute the proceeds from the liquidation of the property under this Agreement; and cause the cancellation of the Company's Articles of Organization.

**(a)    Creditor Payment and Provision for Reserves**

First, the proceeds from the liquidated property will be applied toward or paid to any non-Member creditor of the Company in the order of payment required by applicable law. After paying liabilities owed to non-Member creditors, the Manager, or liquidator shall set up a reserve of assets as the Manager, or liquidator determines is reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company.

**(1)    Creating an Escrow Account**

The Manager, or liquidator may, but need not, pay over any reserves for contingent liabilities to a bank to hold in escrow for later payment.

**OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC**
25
THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

    (2)    Distributing Reserves

The Manager, or liquidator shall distribute any remaining reserves after the Manager, or liquidator is reasonably satisfied that any liabilities have been adequately resolved. The remaining reserves will be distributed to the Members or their assigns in the order of priority for Member distributions set forth in this Agreement.

    (b)    Distributing Property after Paying Liabilities and Establishing Reserves

After paying liabilities and establishing reserves, the Manager, or liquidator shall satisfy any debts owed to Members with any remaining net assets of the Company, and then distribute any remaining assets to the Members in proportion to their Membership Interests.

    (c)    Non-Cash Assets

If any part of the net assets distributable to the Members consists of notes, accounts receivable, or other non-cash assets, the Manager, or liquidator may take whatever steps it considers to be appropriate to convert the assets into cash or any other form to facilitate distribution. If any in-kind assets of the Company are to be distributed, those assets will be distributed using their fair market value at the distribution date, as determined by the Manager, or liquidator.

### Section 12.03    Company Property Sole Source

Company property is the sole source for the payment of any debts or liabilities owed by the Company. Any return of Capital Contributions or liquidation amounts to the Members or Assignees (or both if the Company has Members and Assignees) will be satisfied only to the extent that the Company has adequate assets. If the Company does not have adequate assets to return the Capital Contributions, neither the Members nor Assignees will have any recourse against the Company or any other Members or Assignees, except to the extent that other Members may have outstanding debts or obligations owing to the Company.

### Section 12.04    Company Asset Sales during Term of the Company

The sale of Company assets during the term of the Company does not constitute liquidation, dissolution, or termination of the Company as defined under this Article. The Manager may reinvest the sale proceeds in other assets consistent with the business purposes for the Company. Further, the Manager may participate in any real property exchange as defined in Code Section 1031 if the exchange fulfills the business purposes of the Company.

# Article Thirteen
## General Matters

**Section 13.01    Successors and Assigns**

Subject to the restrictions on transfer in this Agreement, this Agreement binds and inures to the benefit of the Members, and to their respective successors, personal representatives, heirs, and assigns.

**Section 13.02    Irrevocable Durable Power of Attorney**

By signing this Agreement, each Member (including any Substitute Member) irrevocably appoints the Manager as the Member's agent and attorney in fact, with all necessary powers to prepare and deliver any documents required to carry out this Agreement, including:

> the Company's Articles of Organization and any necessary amendments;
>
> the Company's dissolution if the Company is terminated;
>
> any amendment to this Agreement to be signed by the Members;
>
> any documents required by law to conduct Company business; and
>
> any documents concerning the acquisition, management, sale, or encumbrance of Company property that the Manager determines is necessary to conduct Company business.

The Members acknowledge that this power of attorney is coupled with an interest and is irrevocable and will continue in effect if any Member becomes incapacitated. This power of attorney also survives the assignment of any Membership Interest and empowers the Manager to act to the same extent for any Substitute Members or Assignees.

Any Manager may exercise the power by a facsimile signature or by listing all of the Members signing the instrument with a signature of the Manager as the attorney in fact for all of them.

The Manager may not exercise this power of attorney in any way that would increase the liability of any Member beyond the Member's liability as set forth in this Agreement.

**Section 13.03    Definitions**

For purposes of this Agreement, the following terms have the following meanings.

> (a)    **Act**
>
> *Act* means the California Limited Liability Company Act, as amended from time to time.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

27

000134

(b)    **Additional Member**

*Additional Member* means a Member who is admitted to the Company after this Agreement is signed, but who is not a Substitute Member.

(c)    **Additional Capital Contribution**

See *Capital Contribution.*

(d)    **Affiliated Person**

*Affiliated Person* means a Member, a member of an individual Member's Immediate Family, a Legal Representative, successor, Assignee, or trust for the benefit of a Member and members of the Immediate Families of the individual Member, and any corporation or other legal entity of which a majority of the voting interest is owned by any one or more Affiliated Persons.

(e)    **Agreement**

*Agreement* means this Operating Agreement, as amended from time to time.

(f)    **Articles of Organization**

*Articles of Organization* means the Articles of Organization filed with the Secretary of State of California as required by the Act, or any other similar instrument required to be filed by the laws of any other state in which the Company intends to conduct business.

(g)    **Assignee**

*Assignee* means the recipient of a Membership Interest by *Assignment.*

(h)    **Assignment**

*Assignment* means any method—direct or indirect, voluntary or involuntary—by which the legal or beneficial ownership of any interest in the Company is transferred or changed, including:

any sale, exchange, gift, or any other form of conveyance, assignment, or transfer;

a change in the beneficial interests of any trust or estate that holds any interest in the Company and a distribution from any trust or estate;

a change in the ownership of any Member or Assignee that is a corporation, partnership, limited liability company, or other legal entity, including the dissolution of the entity;

a change in legal or beneficial ownership or other form of transfer resulting from the death or divorce of any Member

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC
28

THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000135

or Assignee, or the death of the spouse of any Member or Assignee;

any transfer or charge under a charging order issued by any court; and

any levy, foreclosure, or similar seizure associated with the exercise of a creditor's rights in connection with a mortgage, pledge, encumbrance, or security interest.

*Assignment* does not include any mortgage, pledge, or similar voluntary encumbrance or grant of a security interest in any Interest in the Company.

### (i)    Bankrupt

*Bankrupt* means filing a petition in voluntary bankruptcy, an assignment taken voluntarily or involuntarily by a Member for the benefit of creditors, or other action under any federal or state law for the benefit of an insolvent party. *Bankrupt* does not include filing a petition of involuntary bankruptcy against a Member if the petition is dismissed within 45 days from the filing date, nor does it include the issuance of a charging order against a Member's Interest if the charging order is removed within 10 days of being served.

### (j)    Capital Contribution

*Capital Contribution* means the total cash and other consideration contributed and agreed to be contributed to the Company by each Member. Each *Initial Capital Contribution* is shown in Exhibit A, attached and incorporated into this Agreement. *Additional Capital Contribution* means the total cash and other consideration contributed to the Company by each Member other than the Initial Capital Contribution. Any reference in this Agreement to the Capital Contribution of a current Member includes any Capital Contribution previously made by any prior Member regarding that Member's Interest. The value of a Member's Capital Contribution is the amount of cash plus the fair market value of other property contributed to the Company.

### (k)    Cash-Flow Earnings

*Cash-Flow Earnings* means the net income, including capital gains income, realized by the Company for the Taxable Year, reduced or increased according to the following guidelines.

#### (1)    Net Income Reductions

Net income will be reduced by the actual payment of items that are not deductible by the Company for federal income tax purposes, including nondeductible travel and entertainment expenses, charitable contributions, nondeductible interest payments, the payment of debt

**OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC**

29

THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

principal and interest, the acquisition of depreciable property during the Taxable Year to the extent that the cost is not fully deductible in the year of acquisition, and any other payment that represents an actual decrease in the cash available to the Company.

(2)    Net Income Increases

Net income will be increased by the amount expended for intangible expenses for federal income tax purposes. Intangible expenses include depreciation, depletion, and amortization costs reported as deductions for federal income tax purposes, but do not include depreciation reported as an expense that is deductible under Internal Revenue Code Section 179.

(3)    Treatment of Gain on Asset Sale

The gain from the sale of a Company asset will be included in determining the Company's net income for distribution purposes to the extent of payments of the gain amount actually received by the Company for the Taxable Year. Deferred payments of gain under an installment sale or other deferred payment arrangement will be considered income in the year a payment is actually received.

The computation of Cash-Flow Earnings does not include income from a partnership, trust, limited liability company, or other organization classified by federal tax law as a pass-through entity to the extent that distributions of income from the pass-through entity are not actually received during the Taxable Year or within 60 days after the close of the Taxable Year. Subsequent distributions to the Company from a pass-through entity that are attributable to income realized and reported for a prior year will increase the Cash-Flow Earnings for distribution purposes.

Cash-Flow Earnings determined for distribution purposes do not include reasonable reserves. Reserves are amounts needed for working capital, debt service, deferred maintenance, and for anticipated capital improvements.

Cash-Flow Earnings take into account the obligation of the Company to the payment obligations of interest to Members who have advanced funds to the Company as loans and the payment of any guaranteed payment obligations of the Company. The distribution of earnings may be deferred for a reasonable time to the extent that the Company does not have available cash to satisfy the distribution amount. The term *available cash* indicates the actual cash of the Company in checking accounts, money market funds, and 90-day Treasury Bills.

000137

(l)    **Charity**

*Charity* includes any organization of a type described in Internal Revenue Code Sections 170(c), 2055(a), and 2522(a).

(m)    **Charitable Trusts**

*Charitable Trust* includes any charitable remainder trust created under Internal Revenue Code Section 664 or any charitable income trust created under Treasury Regulations Section 1.170A-6(c); Treasury Regulations Section 25.2522(c); or Treasury Regulations Section 20.2055-2(e).

(n)    **Company**

*Company* means RETIREMENT WEALTH MANAGEMENT, LLC, a California Limited Liability Company.

(o)    **Delivery**

*Delivery* means:

> personal delivery to a party;

> mailing by certified United States mail to the last known address of the party to whom delivery is made, with return receipt requested to the party making delivery;

> facsimile transmission to a party when receipt is confirmed in writing or by electronic transmission back to the sending party; or

> electronic mail transmission to a party when receipt is confirmed in writing or by electronic mail transmission back to the sending party.

The effective date of delivery is the date of personal delivery or the date of the return receipt, if received by the sending party. If no return receipt is provided, then the effective date will be the date the transmission would have normally been received by certified mail if there is evidence of mailing.

(p)    **Disability**

*Disability* of a Member means that any one of the following has occurred:

> the Member has been declared incompetent, incapacitated, or otherwise legally unable to effectively manage his or her property or financial affairs by a court of competent jurisdiction;

> the Member's incapacity has been certified in writing by two licensed physicians, one of whom is the Member's personal physician, after examining the Member;

**OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC**

31

000138

the Member has disappeared or is absent for unexplained reasons, causing the Member to be unable to manage his or her property or financial affairs effectively; or

the Member is being detained under duress or under law, causing the Member to be unable to manage his or her property or financial affairs effectively.

A Member's disappearance, absence, or detention under duress may be established by an affidavit of any Manager; or, if the individual in question is the only Manager, by the affidavit of any other Member. The affidavit must describe the circumstances of the individual's disappearance, absence, or detention. Any third party dealing in good faith with the Company may rely upon the affidavit.

Upon regaining capacity, a formerly incapacitated Member will have all the rights, power, and authority originally granted to the Member by this Agreement.

### (q)    Immediate Family

*Immediate Family* means any Member's spouse (but not a spouse who is legally separated from the person under a decree of divorce or separate maintenance), parents, parents-in-law, descendants (including descendants by adoption), brothers, sisters, brothers-in-law, sisters-in-law, and grandchildren-in-law.

### (r)    Including and Includes

In this Agreement, the words *include, includes,* and *including* mean *include* without limitation, *includes* without limitation, and *including* without limitation, respectively. *Include, includes,* and *including* are words of illustration and enlargement, not words of limitation or exclusivity.

### (s)    Independent Person

*Independent Person* means an individual who is not related to or subordinate to a claimant or respondent of any controversy concerning the Company, is not a Member of the Company, and has no financial stake in the resolution of the controversy other than fair and reasonable compensation for services provided to resolve the controversy.

### (t)    Initial Capital Contribution

See *Capital Contribution.*

### (u)    Internal Revenue Code

References to the *Internal Revenue Code* or to its provisions are to the Internal Revenue Code of 1986, as amended from time to time, and any corresponding Treasury Regulations.    References to the *Treasury*

*Regulations* are to the Treasury Regulations under the Internal Revenue Code in effect. If a particular provision of the Internal Revenue Code is renumbered or a subsequent federal tax law supersedes the Internal Revenue Code, any reference is to the renumbered provision or to the corresponding provision of the subsequent law, unless the result would be clearly contrary to the Members' intent as expressed in this Agreement. The same rule applies to Treasury Regulations references.

(v)    **Legal Representative or Personal Representative**

The terms *Legal Representative* and *Personal Representative* mean a person's guardian, conservator, executor, administrator, Trustee, or any other person or entity personally representing a person or the person's estate.

(w)    **Majority in Interest; 85% in Interest of the Members**

*Majority in Interest* means that 51 or more votes out of 100 votes that may be cast will determine the matter subject to the vote.

*85% in interest of the Members* means that at least 85 votes out of the total 100 votes that may be cast will determine the matter subject to the vote.

(x)    **Manager**

*Manager* means any individual or legal entity designated in this Agreement as a Manager. A Manager conducts the business of the Company and is authorized to exercise the powers and duties of Manager detailed in this Agreement.

(y)    **Market Rate of Interest or Market Rate**

The terms *market rate of interest* and *market rate* mean the rate of interest identified as the *prime rate* by the *Wall Street Journal* in its "Money Rates" column; or, if two or more rates are reported as the prime rate, the average of the two or more. If Internal Revenue Code Sections 483 and 1274A apply to this transaction, the minimum rate of interest of the purchase money obligation will be fixed at the rate of interest then required by those Sections.

(z)    **Member**

*Member* means any person or legal entity designated in this Agreement as a Member or any person or legal entity who becomes a Member under this Agreement.

(aa)    **Members**

The term *Members* means all of the Members of the Company.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

33

(bb)   Membership Interest

*Membership Interest* means the ownership interest and rights of a Member in the Company, including the Member's right to a distributive share of the profits and losses, the distributions, and the property of the Company and the right to consent or approve Company actions. All Membership Interests are subject to the restrictions on transfer imposed by this Agreement. Each Member's Interest is personal property and no Member will acquire any interest in any of the assets of the Company.

Each holder of a Membership Interest will have the right to vote the holder's proportionate interest in the Company regarding all matters that Members have a right to vote on under this Agreement or by law.

> Example: A Member with a Membership Interest of 35.5% will have a 35.5% ownership interest in the Company, and will have 35.5 votes out of 100 votes that may be cast on matters that require the consent or affirmative action of the Members.

Membership Interests may be adjusted from time to time under Article Three.

(cc)   Person

*Person* has the same broad meaning as defined in Internal Revenue Code Section 7701(a)(1). The term specifically includes the Company; its successors and assigns; each Member or Assignee, and their successors, assigns, heirs, and personal representatives. The phrase *each other person* identifies any individual, corporation, partnership, limited liability company, trust, or other party whose interest may be affected, adversely or otherwise, by the resolution of any dispute, contest, or claim.

(dd)   Property

*Property* means all Company property and rights as described in Exhibit A and any property—real or personal, tangible or intangible—otherwise acquired by the Company.

(ee)   Qualified Appraiser and Qualified Appraisal

A *Qualified Appraiser* means an appraiser who is a Member of the American Society of Appraisers, Business Valuations Division and accredited to perform business appraisals or valuations by this organization; or, alternatively, a certified public accountant accredited in business valuation by the American Institute of Certified Public Accountants. A *Qualified Appraisal* means any appraisal performed by a Qualified Appraiser.

000141

(ff)    Securities Act

*Securities Act* refers to the Securities Act of 1933, as amended.

(gg)    Substitute Member

*Substitute Member* means any person not previously a Member who acquires a Membership Interest and is admitted as a Substitute Member according to the terms of Section 11.03 of this Agreement.

(hh)    Taxable Year

*Taxable Year* means the calendar year or any other accounting period selected by the Manager. Taxable Year is synonymous with fiscal year for all purposes of this Agreement.

## Section 13.04    Changing the Company's Situs

The Company's situs may be changed only by the unanimous written consent of all of the Members and the Manager.

## Section 13.05    No Duty to Mail Articles of Organization

The Manager does not have an obligation to deliver or mail copies of the Articles of Organization or any amendments to the Members unless required to do so by the Act.

## Section 13.06    General Matters

The following general provisions and rules of construction apply to this Agreement:

(a)    Multiple Originals; Validity of Copies

This Agreement may be signed in any number of counterparts, each of which will be deemed an original.

Any person may rely on a copy of this Agreement that the Manager certifies to be a true copy to the same effect as if it were an original.

(b)    Singular and Plural; Gender

Unless the context requires otherwise, words denoting the singular may be construed as plural and words of the plural may be construed as denoting the singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or,* when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires or permits.

(c)    Headings of Articles, Sections, and Subsections

The headings of Articles, Sections, and Subsections used within this Agreement are included solely for the reader's convenience and reference. They have no significance in the interpretation or construction of this Agreement.

OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC

35

THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.

9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

(d)    Governing Law

This Agreement is governed, construed, and administered according to the laws of California, as from time to time amended, except as to trust property required by law to be governed by the laws of another jurisdiction, and unless the situs of administration is changed under Section 13.04.

(e)    Notices

Unless otherwise stated, whenever this Agreement calls for notice, the notice must be in writing and must be personally delivered with proof of delivery, or mailed postage prepaid by certified mail, return receipt requested, to the last-known address of the party requiring notice. Notice is effective on the date personally delivered or on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received by certified mail. If notice is required to be given to a minor or incapacitated individual, notice must be given to the minor or incapacitated individual's parent or Legal Representative.

(f)    Severability

The invalidity or unenforceability of any provision of this Agreement does not affect the validity or enforceability of any other provision of this Agreement. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this Agreement are to be construed as if the invalid provision had never been included in this Agreement.

[Signature Page to Follow]

**OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC**
36
THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000143

Signed:

Co-MANAGERS:

_____
MARK A. ZIEBOLD, ESQ., Co-Manager


_____
DENNY R. STEELMAN, Co-Manager


MEMBER:

THE SURVIVOR'S TRUST UNDER THE 2010 STEELMAN
INTER VIVOS TRUST DATED AUGUST 10, 2010

By: _____
       DENNY R. STEELMAN, Trustee


OPERATING AGREEMENT OF RETIREMENT WEALTH MANAGEMENT, LLC
37
THE LAW OFFICE OF DUSTIN I. NICHOLS, A PC.
9881 IRVINE CENTER DRIVE, 1ST FLOOR, IRVINE, CALIFORNIA 92618

000144

## EXHIBIT "A"

CAPITAL CONTRIBUTION AND PERCENTAGE OF MEMBERS

AS OF

DECEMBER 9, 2015

RETIREMENT WEALTH MANAGEMENT, LLC

| MEMBER'S NAME | MEMBER'S CAPITAL CONTRIBUTION | VOTING OR NON-VOTING INTEREST | MEMBER'S PERCENTAGE INTEREST |
|---|---|---|---|
| THE SURVIVOR'S TRUST UNDER THE 2010 STEELMAN INTER VIVOS TRUST DATED AUGUST 10, 2010 | $ 1,000.00 | Voting | 100.00% |
| TOTALS: | $ 1,000.00 | | 100.00% |

PERCENTAGE INTERESTS IN NET PROFITS AND NET LOSSES

AS OF

DECEMBER _9_ , 2015

RETIREMENT WEALTH MANAGEMENT, LLC

| NAME OF MEMBER | NET PROFITS PERCENTAGE | NET LOSSES PERCENTAGE |
|---|---|---|
| THE SURVIVOR'S TRUST UNDER THE STEELMAN INTER VIVOS TRUST DATED AUGUST 10, 2010 | 100.00% | 100.00% |
| TOTALS: | 100.00% | 100.00% |

000146

# EXHIBIT 4

**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@lwgfllp.com
Faye C. Rasch, State Bar No. 253838
frasch@lwgfllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone 714-966-1000
Facsimile 714-966-1002

Attorneys for Weneta M.A. Kosmala,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:16-bk-14227-ES |
| DENNY ROY STEELMAN, | Chapter 7 Case |
| Debtor. | Adv. No. _____ |

| | |
|---|---|
| WENETA M.A. KOSMALA, Chapter 7 Trustee of the Estate of Denny Roy Steelman | **COMPLAINT:** |
| Plaintiff, | (1) FOR DECLARATORY RELIEF REGARDING PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 541; |
| v. | (2) FOR TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. §§ 542 AND 543; |
| KEVIN LIEBECK as executor of the Estate of DENNY ROY STEELMAN, KEVIN LIEBECK as successor Trustee of the SURVIVORS TRUST, as under the 2010 STEELMAN INTER VIVOS TRUST, MARK ZIEBOLD as trustee of the PRIVATE RETIREMENT TRUST, SHAUNAH LYNN STEELMAN, an individual, and JODI DENISE STEELMAN, an individual, NATIONWIDE LIFE INSURANCE COMPANY, NATIONWIDE LIFE AND ANNUITY COMPANY, | (3) TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544(b) AND 550, AND CALIFORNIA CIVIL CODE §§ 3439.04(a)(1), 3439.07 AND 3439.09; |
| | (4) TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544(b) AND 550, AND CALIFORNIA CIVIL CODE §§ 3439.04(a)(2), 3439.07 AND 3439.09; |
| Defendants. | (5) TO AVOID AND RECOVER FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548(a)(1)(A) AND 550; |
| | (6) TO AVOID AND RECOVER FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) AND 550; |

1154870.1                    1                    COMPLAINT

1

2

3

4

5

       (7)   **TO PRESERVE AVOIDED TRANSFERS PURSUANT TO 11 U.S.C. § 551; AND**
       (8)   **FOR INJUNCTION PURSUANT TO 11 U.S.C. § 105**

Weneta M.A. Kosmala, the chapter 7 trustee ("the Trustee" or "Plaintiff") of the estate ("the Bankruptcy Estate") of Denny Roy Steelman ("Debtor"), respectfully alleges as follows:

## STATEMENT OF JURISDICTION AND VENUE

1.     The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 323, 541, 542, 543, 548, 549, 550 and 551. The instant adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (E) and (O).

2.     Venue properly lies in this judicial district in that the civil proceeding arises under title 11 of the United States Code as provided in 28 U.S.C. § 1409.

3.     This adversary proceeding arises out of and is related to the case entitled *In re Denny Steelman*, a chapter 7 case current pending in the United States Bankruptcy Court, Central District of California, the Honorable Erithe Smith presiding ("the Bankruptcy Case").

## PARTIES TO THE ACTION

4.     Plaintiff is the duly-appointed chapter 7 trustee of the Bankruptcy Estate.

5.     Plaintiff is informed, believes, and alleges that the Debtor is deceased.

6.     Plaintiff is informed, believes and alleges that Kevin Liebeck ("Liebeck") is the executor of the Estate of Denny Roy Steelman ("Probate Estate").

7.     Plaintiff is informed, believes and alleges that Liebeck is the successor trustee of the Survivor's Trust (defined below) as under the 2010 Steeleman Inter Vivos Trust (defined below).

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8.    Plaintiff is informed, believes, and alleges that Mark Ziebold ("Ziebold") is the trustee of the Private Retirement Trust (defined below).

9.    Plaintiff is informed, believes, and alleges that Shaunah Lynn Steelman ("Shaunah") is an individual residing in the state of California and is the daughter of the Debtor.

10.    Plaintiff is informed, believes, and alleges that Jodi Denise Steelman ("Jodi") is an individual residing in the state of California and is the daughter of the Debtor.

11.    Plaintiff is informed, believes and alleges that Nationwide Life Insurance Company and Nationwide Life and Annuity Company are both Ohio corporations, licensed to do business in California.

## STATEMENT OF STANDING

12.    Plaintiff has standing to bring this action pursuant to 11 U.S.C. §§ 323, 541, 542, 543, 549, 550, and 551.

## GENERAL ALLEGATIONS

13.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 12, as though fully set forth herein.

14.    The Debtor filed his bankruptcy petition on October 13, 2016 ("the Petition Date").

15.    The Debtor's Schedule C lists as exempt the "Private Retirement Trust" having a value of $1,385,805. A true and correct copy of the Debtor's Schedule C is attached hereto as **Exhibit "1."**

16.    Plaintiff is informed, believes, and alleges that on or about December 9, 2015, the Debtor purported to establish a Private Retirement Trust in accordance with California Code of Civil Procedure Section 704.115. A true and correct copy of the Private Retirement Trust and documents in support thereof is attached hereto as **Exhibit "2."**

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

17.   Plaintiff is informed, believes, and alleges that a Private Retirement Trust in accordance with California Code of Civil Procedure Section 704.115 must be created for retirement purposes.

18.   Plaintiff is informed, believes, and alleges that the Debtor created the Private Retirement Trust to shield assets from his creditors rather than for retirement purposes.

19.   Plaintiff is informed, believes, and alleges that the name of the Private Retirement Trust is the Retirement Wealth Management, LLC Private Retirement Trust Plan ("PRT" or "Private Retirement Trust").

20.   Plaintiff is informed, believes, and alleges that the Debtor was the sole participant in the PRT.  Exhibit 2 at p. 000009.

21.   Plaintiff is informed, believes, and alleges that Zeibold is the trustee of the PRT.

22.   Plaintiff is informed, believes, and alleges that the Debtor created the PRT at age 70 and set his retirement age at 71.

23.   Plaintiff is informed, believes, and alleges that the listed employer/sponsor of the PRT is Retirement Wealth Management LLC ("RWM").

24.   Plaintiff is informed, believes, and alleges that according to the Operating Agreement of Retirement Wealth Management, LLC (the "Operating Agreement"), RWM began operating contemporaneously with the PRT on December 9, 2015.  A true and correct copy of the Operating Agreement of RWM is attached hereto as part of Exhibit 2 at 000108.

25.   Plaintiff is informed, believes, and alleges that RWM's purpose per its operating agreement is to provide "centralized management of investments and business activities."

26.   Plaintiff is informed, believes, and alleges the Debtor's entire career was as a contractor in the electrical field. In other words, the Debtor started a new company in a completely different field at age 70.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

27.    Plaintiff is informed, believes, and alleges the Debtor funded the PRT with four (4) cash deposits from his Union Bank Checking Account as follows: (i) December 28, 2015 $500.00, (ii) January 4, 2016 $875,000, (iii) March 21, 2016 $195,000 and (iv) March 21, 2016 $287,586.15 for a total of $**1,358,086.15** (collectively the "Transfers"). Exhibit 2 at 000094.

28.    Accordingly, Plaintiff is informed, believes, and alleges that in the year leading up to the Debtor's bankruptcy, the Debtor deposited and transferred almost $1.5 million into the newly formed PRT.

29.    Plaintiff is informed, believes, and alleges that the beneficiary of the PRT is the "Survivor's Trust as under the 2010 Steelman Inter Vivos Trust." Exhibit 2 at 000013.

30.    Plaintiff is informed, believes, and alleges that the 2010 Steelman Inter Vivos Trust is a self-settled trust ("2010" Trust). A true and correct copy of the 2010 Trust is attached hereto as **Exhibit "3."**

31.    Plaintiff is informed, believes, and alleges that the Survivor's Trust is embedded in the 2010 Trust. Exhibit 3 at 000191.

32.    Plaintiff is informed, believes, and alleges that the Debtor was the trustee and beneficiary of the Survivor's Trust until he died.

33.    Plaintiff is informed, believes, and alleges the Survivor's Trust is the 100% owner of RWM (the alleged employer under the PRT).

34.    Plaintiff is informed, believes, and alleges that shortly after its creation, on or about March 16, 2016 the PRT made a loan to "Denny R. Steelman, Trustee of the Survivor's Trust under the 2010 Steelman Inter Vivos Trust dated August 10, 2010 in the amount of $815,000 ("PRT Loan"). A true and correct copy of the Promissory Note and Deed of Trust are attached here as part of Exhibit 2 at 000155.

35.    Plaintiff is informed, believes, and alleges that the Debtor used the PRT Loan to purchase the property commonly known as 26422 Lombardy Road, Mission Viejo, California 92692 ("Lombardy Property").

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

36.    The Debtor's Schedule C lists the Lombardy Property as the Debtor's residence and claims an exemption therein. Thus, the Debtor used the assets of the PRT to fund the purchase of his home. See, Exhibit 1.

37.    Plaintiff is informed, believes, and alleges that the funds deposited into the PRT by the Debtor were used as follows: (i) PRT Loan ($815,000), (ii) Nationwide Annuity ($523,714.19).

38.    Plaintiff is informed, believes, and alleges that as of September 30, 2016, $50,466.15 of cash remained in the PRT. A true and correct copy of the PRT Consolidated Financial Statement is attached hereto as part of Exhibit 2 at 000169.

39.    Plaintiff is informed, believes, and alleges that the Nationwide Annuity was a product issued by either Nationwide Life Insurance Company or Nationwide Life and Annuity Company.

40.    Plaintiff is informed, believes, and alleges that the Debtor died shortly after the filing of his bankruptcy case.

41.    Plaintiff is informed, believes, and alleges that upon the Debtor's death, the assets of the Survivor's Trust were to be distributed in accordance with the Last Will of Denny Roy Steelman ("Debtor's Will"). A true and correct copy of the Debtor's will is attached hereto as **Exhibit "4."**

42.    Plaintiff is informed, believes, and alleges that Shaunah and Jodi are the beneficiaries of the Debtor's Will.

43.    In light of the foregoing facts, Plaintiff is informed, believes, and alleges that the Private Retirement Trust is property of the Estate as it was not validly created or used for retirement purposes.

**FIRST CLAIM FOR RELIEF**

(For Declaratory Relief Regarding Property of the Estate

Pursuant to 11 U.S.C. § 541 Against Zeibold and Liebeck)

44.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 43, inclusive, as though fully set forth herein.

45.    Plaintiff is informed, believes, and alleges that the Debtor had a legal and equitable interest in the Private Retirement Trust on the Petition Date.

46.    By reason of the foregoing, Plaintiff is entitled to a declaration by the Court that the Private Retirement Trust is property of the Estate pursuant to 11 U.S.C. § 541.

**SECOND CLAIM FOR RELIEF**

(For Turnover of Property of the Estate

Pursuant to 11 U.S.C. § 542 Against Zeibold, as Trustee and Liebeck, as Executor)

47.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

48.    Plaintiff is informed, believes, and alleges that the Private Retirement Trust is in the possession, custody, and/or control of the Debtor's Probate Estate, including the proceeds therein.

49.    Plaintiff is informed, believes, and alleges that Plaintiff may use or sell the Private Retirement Trust pursuant to 11 U.S.C. § 363.

50.    Plaintiff is informed, believes, and alleges that the Private Retirement Trust has value and benefit to the Estate.

51.    Pursuant to 11 U.S.C. § 542, Zeibold and/or Liebeck must turnover and deliver the Private Retirement Trust to Plaintiff and to account for the proceeds of the Private Retirement Trust to Plaintiff.

52.    By reason of the foregoing, Plaintiff is entitled to turnover and accounting of the Private Retirement Trust.

**THIRD CLAIM FOR RELIEF**

<div style="margin-left:auto; text-align:left; writing-mode:vertical-rl;">

**Lobel Weiland Golden Friedman LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

</div>

(To Avoid Transfers and Recover Intentionally Fraudulently

Transferred Property Under 11 U.S.C. §§ 544(b) and 550,

and Cal. Civ. Code §§ 3439.04(a)(1), 3439.07 and 3439.09)

53.    Trustee incorporates each and every allegation contained in paragraphs 1 through 52, inclusive, as though fully set forth herein.

54.    Upon information and belief, the Transfers occurred during the seven-year period immediately preceding the Petition Date.

55.    The Trustee is informed and believes, the Transfers were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

56.    The Trustee is informed and believes, creditors existed at the time of the Transfers that remained unpaid as of the Petition Date.

57.    The Trustee is informed and believes, the Debtor made the Transfers to or for the benefit of Defendants.

58.    The Trustee is informed and believes, the Debtor received no or inadequate consideration from the Defendants.

59.    The Trustee is informed and believes, and on that basis alleges, that at the time of the Transfers, there was no obligation due and owing to the Defendants.

60.    The Debtor was insolvent at the time of the Transfers and/or was rendered insolvent by virtue of the Transfers.

61.    The Trustee is informed and believes, and on that basis alleges, that Defendants are insiders of the Debtor.

62.    By reason of the foregoing, the Transfers are avoidable, and Trustee is entitled to set aside the Transfers pursuant to 11 U.S.C. § 544(b) and California Civil Code §§ 3439(a)(1), 3439.07 and 3439.09 and Trustee is entitled to recover the Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.ss

**FOURTH CLAIM FOR RELIEF**

(To Avoid Transfer and Recover Constructively Fraudulently

1154870.1                                8                                COMPLAINT

Transferred Property Under 11 U.S.C. §§ 544(b) and 550, and

Cal. Civ. Code §§ 3439.04(a)(2), 3439.07 and 3439.09)

63.    Trustee incorporates each and every allegation contained in paragraphs 1 through 62, inclusive, as though fully set forth herein.

64.    The Trustee is informed and believes, at the time of the Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor was unreasonably small in relation to the business or transaction.

65.    The Trustee is informed and believes, at the time of the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond her ability to pay as they became due.

66.    The Trustee is informed and believes, the Transfers were made to and for the benefit of Defendants.

67.    The Trustee is informed and believes, the Debtor did not receive reasonably equivalent value for making the Transfers and did not make the Transfers in good faith.

68.    By reason of the foregoing, the Transfers are avoidable, Trustee is entitled to set aside the Transfers pursuant to 11 U.S.C. § 544(b) and California Civil Code §§ 3439(a)(2), 3439.07 and 3439.09, and Trustee is entitled to recover the Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.

**FIFTH CLAIM FOR RELIEF**

(To Avoid Transfers and Recover Intentionally Fraudulently

Transferred Property Under 11 U.S.C. §§ 548(a)(1)(A) and 550)

69.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 68, inclusive, as though fully set forth herein.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

70.    The Trustee is informed, believes, and alleges that the Transfers occurred during the one-year period immediately preceding the Petition Date[1].

71.    The Trustee is informed, believes, and alleges that the Transfers were made with the actual intent to hinder, delay or defraud Debtor's creditors.

72.    The Trustee is informed, believes, and alleges that creditors existed at the time of the Transfers that remained unpaid as of the Petition Date.

73.    The Trustee is informed, believes, and alleges that Debtor made the Transfers to or for the benefit of the Defendants.

74.    The Trustee is informed, believes, and alleges that Debtor received no consideration or inadequate consideration from the Defendants for the Transfers.

75.    The Trustee is informed, believes, and alleges that Debtor was insolvent at the time of the Transfers and/or was rendered insolvent by virtue of the Transfers.

76.    The Trustee is informed, believes, and alleges that the Defendants are insiders of the Debtor.

77.    The Trustee is informed, believes, and alleges that the Defendant did not take the Transfers in good faith.

78.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set aside the Transfers pursuant to 11 U.S.C. § 548(a)(1)(A), and Plaintiff is entitled to recover the Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.

## SIXTH CLAIM FOR RELIEF

(To Avoid Transfers and Recover Constructively Fraudulently Transferred Property Under 11 U.S.C. §§ 548(a)(1)(B) and 550)

79.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 78, inclusive, as though fully set forth herein.

---

[1] With the exclusion of the initial $500 deposit on December 28, 2015 which shall not be included in this cause of action.

1154870.1                    10                    COMPLAINT

80.    The Trustee is informed, believes, and alleges that at the time of the Transfers, Debtor was engaged in or was about to engage in a business or a transaction for which Debtor's remaining assets were unreasonably small in relation to the business or transaction.

81.    The Trustee is informed, believes, and alleges that at the time of the Transfers, Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond his ability to pay as they became due.

82.    The Trustee is informed, believes, and alleges that the Transfers were made to and for the benefit of the Defendants.

83.    The Trustee is informed, believes, and alleges that Debtor did not receive reasonably equivalent value in exchange for the Transfers.

84.    The Trustee is informed, believes, and alleges that Debtor did not make the Transfers in good faith.

85.    The Trustee is informed, believes, and alleges that the Defendant did not take the Transfers for reasonably equivalent value.

86.    The Trustee is informed, believes, and alleges that the Defendants did not take the Transfers in good faith.

87.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set aside the Transfers pursuant to 11 U.S.C. § 548(a)(1)(B), and Plaintiff is entitled to recover the Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.

## SEVENTH CLAIM FOR RELIEF

(To Preserve Transfers for the Benefit of the Estate

Pursuant to 11 U.S.C. § 551)

88.    Trustee incorporates each and every allegation contained in paragraphs 1 through 87, inclusive, as though fully set forth herein.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    89.    Pursuant to 11 U.S.C. § 551, the Transfers are preserved for the benefit of

2  the Estate as the Transfers are avoidable under 11 U.S.C. §§ 544 and 550 as set forth

3  above.

4                          **EIGHTH CLAIM FOR RELIEF**

5              **(For Injunction Against Zeibold Pursuant to 11 U.S.C. §105)**

6    90.    Plaintiff incorporates each and every allegation contained in paragraphs 1

7  through 89, inclusive, as though fully set forth herein.

8    91.    Plaintiff is informed, believes, and alleges that the PRT, and the proceeds

9  therein, are property of the Estate.

10    92.    Plaintiff is informed, believes, and alleges that Plaintiff has standing to

11  administer the PRT and the proceeds therein, and that the Debtor's Probate Estate does

12  not have any legal or equitable right to control the PRT.

13    93.    In order to prevent further dissipation of assets of the Estate, the Plaintiff

14  seeks an injunction, including a temporary restraining order, preventing the transfer of the

15  PRT, or the proceeds therein, and ordering them to be turned over to the Trustee for

16  administration, and any other legal or equitable relief that the Court deems necessary or

17  appropriate to preserve the PRT for the benefit of the Estate's creditors.

18    **WHEREFORE**, Plaintiff requests that this Court enter a judgment in favor of

19        Plaintiff and against the Defendants as follows:

20                        **On the First Claim for Relief**

21    Declaring that the PRT, and the proceeds therein, are property of the Estate

22  pursuant to 11 U.S.C. § 541;

23                      **On the Second Claim for Relief**

24    Compelling Defendants to turn over and deliver to PRT the proceeds therein, or

25  any other proceeds and to provide an accounting for the PRT from its inception to date.

26

27

28

1154870.1                              12                              COMPLAINT

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

### On the Third Claim for Relief

Avoiding the Transfers and declaring that the Transfers be annulled and rendered void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the Estate.

Awarding the Trustee a money judgment against the Defendants in the amount of the Transfers.

### On the Fourth Claim for Relief

Avoiding the Transfers and declaring that the Transfers be annulled and rendered void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the Estate.

Awarding the Trustee a money judgment against the Defendants in the amount of the Transfers.

### On the Fifth Claim for Relief

Avoiding the Transfers and declaring that the Transfers be annulled and rendered void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the Estate.

Awarding the Trustee a money judgment against the Defendants in the amount of the Transfers.

### On the Sixth Claim for Relief

Avoiding the Transfers and declaring that the Transfers be annulled and rendered void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the Estate.

Awarding the Trustee a money judgment against the Defendants in the amount of the Transfers.

### On the Seventh Claim for Relief

For preservation of the Transfers for the benefit of the Estate.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

### On the Eighth Claim for Relief

Granting an injunction, including a temporary restraining order, preventing the transfer of the PRT, or the proceeds therein, and ordering it to be turned over to the Trustee for administration, and any other legal or equitable relief that the Court deems necessary or appropriate to preserve PRT for the benefit of the Estate's creditors;

### On All Claims for Relief

For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: February 21, 2018          LOBEL WEILAND GOLDEN FRIEDMAN LLP


By:  /s/ Faye C. Rasch
     FAYE C. RASCH
     Attorneys for Chapter 7 Trustee,
     Weneta M.A. Kosmala

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1154870.1                      14                      COMPLAINT

# EXHIBIT 5


**Ice**Miller
LEGAL COUNSEL

Arena District ┆ 250 West Street ┆ Suite 700 ┆ Columbus, OH 43215-7509

Chicago    Columbus    DuPage County, Ill.
Indianapolis  New York   Philadelphia  Washington, D.C.

July 26, 2018

WRITER'S DIRECT NUMBER: (614) 462-1070
DIRECT FAX: (614) 232-6923
EMAIL: John.Cannizzaro@icemiller.com

**Via Electronic Mail to (frasch@lwgfllp.com)**

Ms. Faye C. Rasch
Weiland Golden Goodrich LLP
650 Town Center Dr.
Suite 950
Costa Mesa, CA 92626

   *RE: Nationwide Life Insurance Company Variable Annuity Contract 01-6824567*
     *Kosmala v. Liebeck (In re Steelman) - CACB Case No. 18-ap-01042-ES*

Dear Ms. Rasch:

   Per your request, our clients have examined their records related to Variable Annuity Contract #01-6824567. Our investigation has uncovered the following facts:

1. On March 28, 2016, Nationwide Life Insurance Company issued Variable Annuity Contract #01-6824567 (the "Contract"). Denny Steelman was the annuitant under the Contract. Private Retirement Trust #STDEN1007 (the "PRT") was the only beneficiary. The initial purchase price for the Contract was $500,000.00.

2. On March 5, 2017, our client received documentation evidencing Mr. Steelman's death. At that time, the surrender value of the Contract prior to any tax withholding was $552,344.71. The net value, after tax withholding, totaled $534,390.30.

3. On March 6, 2017, Nationwide Life Insurance Company transferred $534,390.30 via direct deposit to an account ending in 2555 in the PRT's name at Union Bank.

4. Nothing in Nationwide Life Insurance Company or Nationwide Life and Annuity Company's records suggests that either had any knowledge of the fact that Mr. Steelman and/or the PRT transferred any funds with the intent to defraud creditors.

5. Neither Nationwide Life Insurance Company nor Nationwide Life and Annuity Company had any knowledge of fact that Mr. Steelman had filed for bankruptcy at the time the funds were transferred to the PRT's account at Union Bank.

   Based upon the information above, we believe our clients can assert a complete defense to all of the causes of action alleged in the adversary complaint under 11 U.S.C. § 548(c) and

Faye Rasch
July 26, 2018
Page 2


Cal. Civ. Code § 3439.08.  Any transfers to our client were for value – in exchange for the funds received, the PRT became a beneficiary under the Contract.  Further, our clients paid the funds back to the PRT upon Mr. Steelman's death.  Our clients had absolutely no knowledge that any funds received from the PRT might be avoidable as fraudulent transfers under state or federal law.  And at all times, our clients acted in good faith and at arm's length with respect to Mr. Rodgers, Mr. Ziebold, Mr. Steelman, and the PRT.

Accordingly, we ask that you dismiss Nationwide Life Insurance Company and Nationwide Life and Annuity Company from this adversary proceeding as soon as is practicable.  Please let me know if you have any other questions.


Thank you,

ICE MILLER LLP

John C. Cannizzaro

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 950, Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*):  **CHAPTER 7 TRUSTEE'S EMERGENCY MOTION FOR: (1) TEMPORARY RESTRAINING ORDER AND: (2) ISSUANCE OF ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF FAYE C. RASCH, WENETA M.A. KOSMALA, CLAUDIA YOSHONIS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **July 30, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

[X] Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) **July 30, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[ ] Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July 30, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Erithe Smith, 411 W. 4th Street, 5th Floor, Santa Ana, CA  92701

[X] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 30, 2018 | Kelly Adele | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
0.0

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

**VIA EMAIL**
J. Scott Williams
The Williams Firm PLC
15615 Alton Pkwy, Ste 175
Irvine, CA 92618
Email: jwilliams@williamsbkfirm.com
**Attorneys for Mark Ziebold, as trustee
Of the Private Retirement Trust**

Chris Blank, Esq.
Law Offices of Chris Blank
4675 MacArthur Court, #550
Newport Beach, CA 92660
Email: clblank@pacbell.net
**Attorneys for Kevin Liebeck
as Executor of the Estate of
Denny Roy Steelman and Kevin Liebeck,
as Successor Trustee of the Survivors
Trust, as under the 2010 Steelman
Inter Vivos Trust, Shaunah Lynn Steelman
Jodi Denise Steelman**

Daniel Anderson, Esq.
Ice Miller LLP
250 West Street, Ste 700
Columbus, OH 43215
Email: Daniel.anderson@icemiller.com
**Attorneys for Nationwide Life Insurance Company,
Nationwide Life and Annuity Company**

**Electronic Mail Notice List**

Daniel M Anderson    daniel.anderson@icemiller.com, sandy.heaberlin@icemiller.com
Reem J Bello    rbello@wgllp.com,
kadele@wgllp.com;vrosales@wgllp.com;cyoshonis@wgllp.com;cbmeeker@gmail.com
Weneta M Kosmala (TR)    ecf.alert+Kosmala@titlexi.com,
wkosmala@txitrustee.com;dmf@txitrustee.com;kgeorge@kosmalalaw.com
Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
J Scott Williams    jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com