THE WILLIAMS FIRM
J. SCOTT WILLIAMS (Bar No. 110173)
15615 Alton Pkwy
Suite 175
Irvine, CA 92618
Telephone: (949) 660-8680
Facsimile: (866) 284-8670
Email: jwilliams@williamsbkfirm.com

Attorneys for Defendant, MARK ZIEBOLD,
as trustee of the PRIVATE RETIREMENT TRUST
#STEDEN1007 dated December 28, 2015

CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
Christopher L. Blank (SBN 115450)
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 250-4600
Email: chris@chrisblanklaw.com

Attorney for Defendants, KEVIN LIEBECK, as executor of the Estate of DENNY ROY
STEEMAN, KEVIN LIEBECK as successor Trustee of the SURVIVORS TRUST, as under the
2010 STEELMAN INTER VIVOS TRUST, MARK ZIEBOLD as trustee of the PRIVATE
RETIREMENT TRUST, SHAUNAH LYNN STEELMAN, an individual, JODI DENISE
STEELMAN, an individual

# UNITED STATES BANKRUPTCY COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA -SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>DENNY ROY STEELMAN,<br><br>Debtor. | Case No. 8:16-bk-14227-ES<br><br>Chapter 7<br><br>Adv. No. 8:18-ap-01042-ES |
| WENETA M.A. KOSMALA, Chapter 7<br>Trustee of the Estate of Denny Roy Steelman<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN LIEBECK, as executor of the Estate<br>of DENNY ROY STEEMAN, KEVIN<br>LIEBECK as successor Trustee of the<br>SURVIVORS TRUST, as under the<br>2010 STEELMAN INTER VIVOS TRUST,<br>MARK ZIEBOLD as trustee of the<br>PRIVATE RETIREMENT TRUST, | **DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION; DECLARATIONS OF DUSTIN I. NICHOLS AND MARK ZIEBOLD IN SUPPORT THEREOF**<br><br>DATE: September 6, 2018<br>TIME: 9:30 a.m.<br>CTRM: 5A |

1

1    SHAUNAH LYNN STEELMAN, an
     individual, JODI DENISE STEELMAN, an
2    individual, NATIONWIDE LIFE
     INSURANCE COMPANY, NATIONWIDE
3    LIFE AND ANNUITY COMPANY

4                     Defendants.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants, KEVIN LIEBECK, as executor of the Estate of DENNY ROY STEEMAN, KEVIN LIEBECK as successor Trustee of the SURVIVORS TRUST, as under the 2010 STEELMAN INTER VIVOS TRUST, MARK ZIEBOLD as trustee of the PRIVATE RETIREMENT TRUST (the "PRT"), SHAUNAH LYNN STEELMAN, an individual, JODI DENISE STEELMAN, an individual, (collectively, "Defendants") hereby this opposition to issuance of a preliminary injunction in response to the Chapter 7 Trustee's Emergency Motion For: (1) Temporary Restraining Order And; (2) Issuance Of Order To Show Cause Why A Preliminary Injunction Should Not Issue and in accordance with the Court's ORDER ON STIPULATION RE: CHAPTER 7 TRUSTEE'S EMERGENCY MOTION FOR: (1) TEMPORARY RESTRAINING ORDER AND; (2)  ISSUANCE OF ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 2016, the Denny Steelman (the "Debtor"), filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.  Weneta M.A. Kosmala is the duly appointed Chapter 7 Trustee (the "Trustee").  Several months after the petition date the Debtor Died.  Defendant, Kevin Liebeck became the executor of the Debtor's probate estate.

In or about September 2015, the Debtor engaged attorney Dustin Nichols to assist the Debtor in transitioning from his former profession as an electrical contractor into the property management field, and to assist the Debtor in creating a retirement plan.  At the commencement of Mr. Nichols' engagement the Debtor advised Mr. Nichols that he was no longer able to work as a contractor, due to both financial problems and health.  The Debtor had decided to set up a new business that would primarily focus on managing his own commercial real estate and eventually that of others, a business which he would be able to operate notwithstanding his failing health, and which he could continue to operate after his retirement.  He also asked Mr. Nichols to set up an appropriate retirement plan that would provide for his eventual retirement in the near future.

During the course of his engagement Mr. Nichols assisted the Debtor in creating Retirement Wealth Management LLC ("RWM"), whose articles of incorporation were filed on November 10, 2015. Concurrently, Mr. Nichols explored several options for potential retirement

vehicles, including 401ks, profit sharing plans and ERISA qualified plans. Given the Debtor's circumstances, Mr. Nichols recommended that the Debtor consider a private retirement plan. The Debtor agreed and in his capacity as co-manager of RWM, engaged Mr. Nichols and Trust-CFO to design and set up a private retirement plan.

At the Debtor's and RWM's direction, Mr. Nichols engaged Raymond F. Olmo of Trust-CFO to prepare the plan adoption agreement **(Exhibit 2, pp 2-12)** and the plan document **(Exhibit 2, pp 15-41)**, and to create the required analytics, necessary to determine the proper amounts to be contributed to the Plan in order to adequately and properly fund the Debtor's retirement **(Exhibit 2, pp. 42-44)**. Following receipt of the adoption agreement, plan document and analytics from Mr. Olmo, Mr. Nichols prepared the trust agreement. As set forth on the Certification of Trust, dated December 28, 2015 **(Exhibit 2, pp 89-93)**, the trust was named Private Retirement Trust #Steden1007 Dated December 28, 2015 (the "PRT"), the trust was settled by RWM, and Mark Ziebold was identified as the PRT Trustee.

In accordance with the Plan Analytics, the Debtor made a total of four contributions between December 28, 2015 and March 21, 2016 totaling $1,358,086.15. The contributions were approved by me in accordance with the plan document and re-characterized as PRT assets. As such, the re-characterized assets became assets of the PRT under my exclusive possession and control. In accordance with the plan document, all investment decisions regarding the PRT assets were made exclusively by me pursuant to my business judgment and my fiduciary obligations as Trustee of the PRT. Approximately $500,000.00 of PRT assets were invested in the purchase an annuity from Nationwide Life (the "Annuity"). Attached hereto as **Exhibit 1** is a true and correct copy of the Annuity Contract purchased by the PRT from Nationwide Insurance Company for a lump sum premium of $502,500.00. The sum of $815,000.00 was loaned to the Denny R. Steelman, Trustee of the Survivor's Trust under the 2010 Steelman Inter Vivos Trust dated August 10, 2010 (the "Secured Loan"). The Secured Loan was evidenced by a promissory note in the amount of $815,000 and secured by a security agreement and first deed of trust against real property commonly known as 26422 Lombardy Road, Mission Viejo, CA 92692 **(Exhibit 2, pp 154-168)**. The promissory note provided for a maturity date of March 16, 2031, with an annual interest rate of 2.33% and fixed monthly payments of $2,000.00 per month. All of the required monthly payments on the note were made by the obligor until approximately August 2017. Following the note default I considered commencing foreclosure proceedings under the deed of trust, but was advised that the automatic stay in bankruptcy prevented me from

1    doing so.[1]

2     On or about February 21, 2018, the Trustee filed her lawsuit against the Defendants,

3    including the PRT. The PRT answered the complaint on or about March 26, 2018. The other

4    defendants answered the complaint on or about July 30, 2018.

5     The Trustee filed her Emergency Motion For: (1) Temporary Restraining Order and; (2)

6    Issuance of Order to Show Cause Why a Preliminary Injunction Should Not Issue on July 30,

7    2018.    The court subsequently entered its Order on Stipulation re: Chapter 7 Trustee's

8    Emergency Motion For: (1) Temporary Restraining Order and; (2) Issuance of Order to Show

9    Cause Why a Preliminary Injunction Should Not Issue on August __, 2018, and set a hearing on

    issuance of a preliminary injunction for September 6, 2018 at 9:30 a.m.

10

11    <center>II.</center>

12    <center>**ARGUMENT**</center>

13    A.    **The Trustee's Motion for a Temporary Restraining Order Should be Denied**

14     "A preliminary injunction is an extraordinary remedy." *Cobell v. Norton*, 391 F.3d 251,

15    258 (D.C. Cir. 2004). A party seeking one must "by a clear showin[g] carr[y] the burden of

16    persuasion" on four separate elements. Id. It must, in particular, "demonstrate (1) a substantial

17    likelihood of success on the merits, (2) that it would suffer irreparable harm without injunctive

18    relief, (3) that an injunction would not substantially harm other interested parties, and (4) that

19    issuance of the injunction is in the public interest." Id. (citing *Serono Labs., Inc. v. Shalala*, 158

20    F.3d 1313, 1317-18 (D.C. Cir. 1998); *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d

21    738, 746 (D.C.Cir.1995); and Fed. R. Civ. P. 65(a)). In her extreme and vaguely defined reach,

22    the Trustee's requested preliminary injunction fails all four of these necessary factors. Indeed,

23    with respect to the final three, the Trustee's "showing" amounts—in total—to less than two

    pages of conclusory assertions. Emergency Mot. at 11-12. That falls far short of a "clear

24    showin[g] carrying the burden of persuasion" on these three necessary elements.

25

26    _____

    [1] Trustee attempts to make an issue out of a typographical error in the deed of trust which she interprets as securing
27    on $2,000.00 of the indebtedness. Such a notion is absurd in that the Deed of Specifically referenced the Promissory
    Note, AND the Security Agreement states that its "secures the payment of the principal of and interest on, and all
28    other amounts payable under, the promissory note of even date…"

1.    **The Trustee Cannot Demonstrate That She is Substantially Likely to**
**Succeed on the Merits**

### (a) The Trustee Cannot Prove the Existence of a Fraudulent Transfer

The Trustee's arguments in support of her likelihood of success on the merits are characterized by conclusory statements with no supporting authority. The Trustee argues first that the Debtor's pre-petition contribution of assets to the PRT constituted a fraudulent conveyance. In support of her position the Trustee does nothing other than state the facts concerning the creation of the PRT and conclude without any supporting authority that the PRT was being used by the Debtor as a shield to hide assets from creditors.

To support her thesis the Trustee relies heavily upon the inference of fraud because at the time of the creation of the PRT, the Debtor was engaged in litigation with a disputed creditor which eventually led to a judgment. The Trustee fails to cite any case law indicating that such a common fact scenario must lead to a finding of fraud. Perhaps because applicable case law says the opposite. In the case of *In re Stern*, (9th cir. 2003) the debtor filed a chapter 7 case following the issuance of an arbitration award. On the eve of filing, the Debtor transferred funds from his IRA to his Profit Sharing Plan. Creditors sued Stern to set aside the transfer as a fraudulent conveyance. The 9th circuit ruled in favor of the debtor, holding that the mere conversion of non-exempt assets to exempt assets is not fraud, even on the eve of bankruptcy and following entry of a multi-million dollar arbitration award.

In our case, the PRT was created and funded, not on the eve of bankruptcy, but almost a year before the bankruptcy, and there was no outstanding award or judgment but merely a hotly contested lawsuit. Given the Trustee's burden to prove that she is substantially likely to prevail on the merit, the mere recitation of facts which are contrary to applicable case law, does not support the granting of a preliminary injunction in favor of the Trustee.

### (b) The PRT Assets the Trustee Seeks to Enjoin are Not Property of the Bankruptcy Estate

For the sake of argument, let us assume that the PRT is a non-exempt asset of the bankruptcy estate. Still the Bankruptcy Trustee is not entitled to enjoin the use and distribution of the Nationwide Proceeds because the Nationwide Proceeds are not property of the bankruptcy estate. They are not property of the bankruptcy estate because they are properly to be treated as

post-petition property of the Debtor.

"Under [11 U.S.C.] section 541(a), and with a few enumerated exceptions, the bankruptcy estate consists of all of the debtor's legal and equitable property interests that existed as of the commencement of the case, that is, as of the time that the bankruptcy petition, voluntary or involuntary, is filed."

*5 Collier on Bankruptcy P 541.02* (16th 2018)

"The status of property acquired by an individual following the filing of the bankruptcy case is not always clear. Under section 541(a)(6), proceeds, product, etc., of property of the estate are part of the estate, while "earnings from services performed by an individual debtor" are not. On the other hand, "[a]ny interest in property that the estate acquires after the commencement of the case" is included in "property of the estate" by section 541(a)(7). By obvious implication, property acquired postpetition by an individual debtor is usually not property of the estate."

*Id.*

"Insurance policies and debtors' rights under insurance policies have been generally held to be property of the estate. However, for purposes of determining if a debtor's interest in the policy is estate property, ownership of an insurance policy does not necessarily entail entitlement to receive proceeds of that policy."

*5 Collier on Bankruptcy P 541.10* (16th 2018)

The cash value of a whole life insurance policy held by the Debtor at the time a bankruptcy case is filed is considered property of the estate. Term policies have no cash value, but In Gladstone v. U.S. Bancorp, 811 F.3d 1133, 1135 (9th Cir. 2016) the 9th Circuit held that the Debtor's right to obtain value from a term life insurance policy by entering into a viatical settlement should also be considered property of the estate. Gladstone does not go so far as to suggest that the death benefit under a life insurance policy should be considered property of the estate, nor does any other case that the undersigned could fine.

The Nationwide Annuity Contract ("NAC") **[Exhibit 1]** at issue in this case was acquired by the PRT on or about March 28, 2016.  The PRT paid a premium of approximately $500,000.00 for the policy.  Denny Steelman is designated as the Annuitant.  The PRT is listed as the Death Beneficiary.  The Annuitization Date is August 30, 2035.  Prior to the Annuitization Date or the death of the Annuitant, whichever comes first, the owner of the policy has the right to surrender benefits under the policy in return for cash.   That is, the policy has cash value.

However, under the terms of the policy, once the Annuitization Date has passed, the Death Benefit is no longer payable. Similarly, if the Annuitant dies prior to the Annuitization Date, the owner of the policy no longer has any right to surrender it for cash. Rather, if the Annuitant dies prior to the Annuitization Date, the Death Benefit is generally immediately payable to the Beneficiary. Accordingly, the proceeds of the annuity death benefit are not property of the bankruptcy estate and are not subject to turnover or attachment by the Trustee.

### (c) **The Trustee Carries the Burden to Prove that the PRT is Not Exempt**

In *Grogan, 498 us 111 s. Ct. 654 (1991),* the Supreme Court established that the burden lies with the creditors to prove that certain assets are non-exempt. In this case, the Trustee stands in the shoes of the creditors. The Trustee argues, again conclusively and with minimal authority, that the PRT is not exempt because it was not designed and used for retirement purposes. As demonstrated below, the Trustee has not and cannot meet the burden of proof in regard to the PRT's exempt status. Accordingly, the granting of a preliminary injunction is not appropriate.

As demonstrated in the declarations of Dustin Nichols and Mark Ziebold, and in the plan and trust documents attached hereto as **Exhibit 1**, the Private Retirement Plan and the PRT were carefully prepared by experienced professionals. The contributions made to the PRT were based upon analytics which determined the amount necessary to support the Debtor in retirement based upon his age and intended retirement date. The plan was sponsored by an LLC, which also settled the PRT. The PRT Trustee is an outside 3rd party professional, who acted at all times in accordance with the specific terms of the PRT. The investments made by the PRT were made by the PRT Trustee, not the Debtor, based on the PRT Trustee's business judgment and in accordance with the procedures required by the PRT. The Trustee has submitted no evidence whatsoever that the Trustee or any other party acted at any time contrary to the provisions of the private retirement plan and the PRT.

### (d) **Private Retirement Plans Are Exempt Under California Law**

As referenced in the Trustee's own brief, private retirement plans are fully exempt under California law (CCP Section 704.115(a). Private retirement plans are a type of non-qualified retirement plan that is private, employer-sponsored, and created under state law. Private Retirement Plans are available for employed persons who either do not have access to an ERISA qualified plan, or who wish to save more for retirement than is allowed under ERISA

qualified plans.    Private Retirement Plans are funded with employer and/or employee contributions.  They are flexible in design and are often used by small business owners because they are not required to cover other employees, are not subject to contribution limitations, and have no restrictions on types of investments.  Private retirement plans are defined benefit plans in that they are actuarially funded to provide minimum monthly or annual retirement benefits, and are designed to be taxable to the plan participants, thereby simplifying annual administration.  To maintain tax neutral status, private retirement plans are typically funded with after-tax employer contributions and/or after-tax voluntary employee contributions, and all income and earnings generated on plan assets are taxable to the participant and reported on the participant's personal 1040 tax returns.

The statute provides no description or explanation of the contours of a "private retirement plan." (See, Cf. *In re Lieberman* 245 F.3d 1090, 1093-1095; *In re Rogers*, 222 B.R. 348, 351 (Bankr.S.D.Cal. 1998); and *In re Phillips*, 206 B.R. 196, 200 (Bankr.N.D.Cal. 1997.)  But state and federal case law has been expansive in defining the contours of what constitutes a "private retirement plan."   The following examines what courts have deemed necessary for a Private Retirement Plan to be exempt under California CCP 704.115.

### i. *Designed and Used PRINCIPALLY for Retirement Purposes*

"The dispositive inquiry under the California statute is whether the plan was designed and used for retirement purposes." [*Yaesu Electronics Corp. v. Tamara*, 28 Cal.App.4 8, 14; 33 Cal.Rptr.2d 283 (1994); quoted with approval in *Schwartzman v. Wilshinsky*, 50 Cal.App.4 618, 628; 57 Cal.Rptr.2d 790, 796.]  Federal law has somewhat modified the California standard.  In *In re Daniel* the Ninth Circuit loosened the standard to require that the plan only be designed and used ***principally*** for retirement purposes.  [*In re Daniel*, supra, (9th Cir. 1985) 771 F.2d 1357-1358.]  "The definition tolerates dual purposes in a plan that is *principally* designed and used for retirement purposes; otherwise legitimate retirement plans would lose their protection due to secondary non-retirement purposes."  In *In re Jacoway* the court also held that "the Debtor's retirement account **need not be used solely for retirement purposes to be exempt** under California law, **but must be used *principally* for retirement purposes**." [*In re Jacoway*, 9th Cir.BAP (Cal.) 2000, 255 B.R. 234, affirmed 284 F.3d 1323.]

### ii. *Established and Maintained by a Corporation*

The US District Court subsequently expanded the requirements for exemption in the *Salameh vs. Tarsadia Hotel Case*, as follows: "To establish that an account is exempt as a private retirement plan under section *704.115(a)(1)* or a profit sharing plan under section *704.115(a)(2)*, the claimant must establish two elements: "**First**, the debtor must prove that the retirement plan is "established and maintained by a corporation." [*Cal.Civ.Proc.Code §§ 704.115(a)(1), (2); Century Sur. Co.,* 2008 WL 2630959 at 10; see also *In re Cheng*, 943 F.2d 1114, 1116–17 (9th Cir.1991) (holding that retirement benefit plans established by a corporation, which is solely owned by the debtor, constitute fully exempted "private retirement plans" within the meaning of California law.]; and "**Second**, the claimant must prove that the plan is "designed and used for retirement purposes." [*Cal. Civ. Proc. Code §§704.115(a)(1),(2); Century Sur. Co.*, 2008 WL 2630959 at 10.] [*Tamer Salameh*, an individual, et al., Plaintiffs, *v. Tarsadia Hotel*, a California Corporation, et. al., Defendants. No. 09cv2739–GPC (BLM). Oct. 14, 2015. Case2015 WL 6028927, US District Court, S.D. California.]

### iii. *Other Key Factors in the Totality of the Circumstances Test*

When applying the twin *Salameh* elements to the question of whether or not a particular private retirement plan is designed and used principally for retirement purposes, the Ninth Circuit has indicated that the court will use a totality of the circumstances test in which no one single factor is essential to whether a particular private retirement plan is designed and used principally for retirement purposes. The Ninth Circuit in the case of *In re Bloom* held that **"[a]ll factors are relevant, but no one is dispositive."** [*In re Bloom*, (9th Cir. 1988) 839 F.2d 1376,1379; *In re Rucker* (2009) 570 F.3d 1155.]

In making an analysis of factors, the California court in *Yaesu Electronics Corp* "emphasize[d] that [it was] not creating a uniform test or a comprehensive list of relevant factors. All factors are relevant; but no one is dispositive. Rather, all of them must be considered in the light of the fundamental inquiry – whether the plan was designed and used for a retirement purpose," keeping in mind that, **"The exemption statutes should be construed, so far as practicable, to the benefit of the judgment debtor"** [See, *Lampleyv. Alvares* (1975) 50 Cal.App.3d 124, 128 [123 Cal.Rptr. 181] and see *Schwartzman v. Wilshinsky*), distinguishing Federal ERISA protections from California Exemption and Protections.]

Below are some of the factors (in addition to the threshold issues of whether a Plan was designed and used principally as a retirement plan, and whether the Plan was established and

maintained by a corporation) that courts have applied as part of a totality of the circumstances test:

### iv. *Existence of a Formal Written Plan*

In *In re Philips* the United States District Court rejected an informal retirement plan involving funds set aside for retirement purpose, because: "[t]here is no concrete evidence of [retirement] intent. Their 'informal retirement plan' was *never reduced to writing and funds were used for a variety of purposes, none related directly to retirement*." [*In re Phillips*, 218 B.R. 523 (Bankr.N.D.Cal. 1997.]

"A formal retirement plan document governing the private retirement plan is a valuable starting point to demonstrating a genuine retirement purpose. The plan document itself could be a trust agreement written to allow a trustee to hold and control retirement funds for retirement purposes with nonretirement uses being very limited...." [*In re Phillips*, 218 B.R. 523 (Bankr.N.D.Cal. 1997.)]

### v. *Time Between Establishment of Plan and Bankruptcy Filing*

It is a well-established rule in bankruptcy that the bankruptcy petition filing date determines what assets qualify as exempt. [*In re Love* (1965) 341 F.2d 680, 682.]   And converting nonexempt assets into exempt assets is not fraudulent per se. [*In re Wudrick* (9th Cir.1971) 451 F.2d 988; See also *In re Jackson* (9th Cir. 1973) 472 F.2d 589, 590.]  A debtor may even convert nonexempt assets into exempt assets on the eve of bankruptcy. [*In re Daniel* (9th Cir. 1985) 771 F.2d 1352, 1358. cf. *In re Love*, supra, 341 F.2d 680, 682.]  A debtor in bankruptcy can, therefore, transfer assets from a trust into a private retirement plan or profit-sharing plan prior to filing bankruptcy and enjoy the absolute protections afforded private retirement plans.

The debtor in *In re Stern,* Steven H. Stern, transferred the proceeds of his IRA into his employer's profit-sharing plan immediately prior to filing his bankruptcy petition. This transfer occurred after the Los Angeles Superior Court issued Mr. Stern a writ of attachment to secure an arbitration award of over 4.5 million dollars. The Trustee sought to undo the transfer from the IRA as a fraudulent conveyance. [*In re Stern*, (2003) 345 F.3d 1036, cert denied (2004) 541 US 936, at pp.1041-1042.] The Ninth Circuit, however, agreed with Mr. Stern that he was entitled to protect his retirement assets by transferring them into the profit sharing plan, reasoning that: "[w]ith the exception of the arbitration loss and the speculative insolvency, the other articulated

badges of fraud are simply restatements of **the accusation that Stern converted nonexempt assets into exempt assets, [and is] an accusation that cannot support a finding of fraud.**" [See *In re Wudrick*, (9th Cir.1971) 451 F.2d 1045.]

### (e) **The PRT is an Exempt Private Retirement Plan Under California Law**

As demonstrated below, the PRT Plan easily meets and exceeds the totality of circumstances test as established by Federal and California Case law:

#### i.  *The Plan Was Designed And Used For Retirement Purposes*

The Plan Document clearly indicates that the Plan was primarily designed for, and was to be used primarily for retirement purposes (and secondarily for other statutorily allowed purposes: "death and disability.

The retirement purpose of the Plan was clearly specified in writing within the Plan documents and was designed and actuarially funded to provide a defined retirement benefit based upon the same sound actuarial principles that are used when funding a defined benefit pension plan. All subsequent acts, including the funding of the PRT and the investment of PRT assets were taken in accordance with the PRT and Plan rules and requirements and were not inconsistent with or contradictory to the Plan retirement purpose. Moreover, the Debtor did not control or direct the assets of the investment of the assets. The assets were solely under the control of an independent trustee, who made all of the investment decisions.

The Trustee argues that the PRT was not designed and used for retirement purposes because a substantial portion of the PRT assets were loaned to the Debtor. In support of this argument, the Trustee cites *In re Daniel*, 771 F.2d 1352 (9th Cir. 1985), a case in which the purported plan was controlled by the debtor, not by an independent trustee, and substantially all of the assets of the plan were "loaned" to the debtor. Moreover, the purported loan was not secured by a deed of trust or other assets, and no payments were made on the loan until the eve of bankruptcy. Contrary to the facts in *Daniel*, the loan in our case was made to the Debtor in accordance with the plan's rules, was made by an independent trustee, the amount loaned was not substantially all of the plan assets, the loan was evidenced by a promissory note requiring monthly payments and secured by a written security agreement and recorded first deed of trust. Additionally, monthly payments were made in accordance with the terms of the note from the date of the loan up to and after the Petition Date. In short, the PRT was established by the book and was operated in accordance with its own rules. It is a classic example of the plan that has

been designed AND used for retirement purposes.  See *Schwartzman v. Wilshinsky*, 50 Cal App. 4th 619.

### *ii.  The Plan Was Established And Maintained By A Corporation*

It is indisputable from the face of the documents that an LLC, RWM sponsored the Plan for the company's key employee, Mr. Steelman, fully and completely documented the Plan and the PRT as set forth in Exhibit "1" hereto, and acted as Settlor of the PRT.  Prior to Mr. Steelman's death, the Corporation continued to maintain the Plan in accordance with all of the rules and requirements of the Plan and PRT.  Since Mr. Steelman's death, the Corporation and the PRT Trustee have continued to comply with all of the rules and requirements of the Plan and PRT.

The Trustee argues, without any authority, that the PRT was not established by a third party because RWM is a closely held entity.  This is essentially an argument for piercing the corporate veil, but it is unsupported by any showing of any kind whatsoever.  Moreover, the argument is contrary to established Ninth Circuit case law.  In *In re Cheng* (9th Cir 1991) the Ninth Circuit ruled that the debtor's plan was not exempt under CCP 704.115 just because Cheng was the sole shareholder, director and CEO of his closely held medical corporation.  The Court opined that if the California legislature wanted to limit the exemption for plans established by a company where only one person controls the company and the plan it could have created a distinction between large corporations and closely held corporations, it could have done so.

### *iii.  Additional Factors Supporting The Totality Of Circumstances*

#### *1.      Third Party Control*

Courts have held that "whether or not the debtor exercises control over the plan is irrelevant to the exemption."  [*Witwer*, supra, 148 B.R. at 939; *Cheng*, 943 B.R. at 116; and see, *In re Vigghiany*, 74 B.R. 61 (Bankr. S.D. Cal. 1987) holding that the ability to withdraw funds from an IRA before retirement did not destroy the exemption.]

Despite the foregoing, Mr. Steelman chose the more conservative approach – to <u>not</u> exercise control over the Plan prior to retirement.  To that end, an unrelated third party, Mr. Ziebold, was appointed, and continues to serve as the Trustee of the PRT.

The existence of an independent Trustee is important in light of the Trustee's argument, supported by Mr. Grobstein's opinion but unsupported by any applicable law, that the PRT was not used for retirement purposes because the secured loan made by the PRT to the Debtor's trust

had a below market interest rate. Such an argument is belied by the fact that the investment decisions were made, not by the Debtor, but by an independent plan trustee utilizing his business judgment, interest rate being only one of many factors that go in to an investment decision. There is no evidence or law proffered by the Trustee to support an inquiry into the independent plan trustee's business judgment. Nor has the Trustee presented any evidence that Trustee or anyone else failed to follow the PRT's rules in making that investment.

### 2.    *Actuarial Analysis*

As set forth in the plan documents attached hereto as Exhibit "1" the PRT was funded pursuant to a strict actuarial analysis based upon Mr. Steelman's retirement needs and his intended retirement date. The Trustee argues that the PRT's short target retirement date is a factor is a reason to conclude that the PRT was not designed and used for retirement purposes. The Trustee cites no authority whatsoever in support of such an argument. Moreover, the analytics that the performed at the establishment of the PRT were based in part upon the target retirement date, which was an integral part of the calculation to determine the amount needed to fund the retirement.

### 3.    *Spendthrift Provisions*

The PRT has "spendthrift" provisions that are valid and enforceable in the state of California. These provisions exempt the PRT assets from the reach of both the Plan participant and his creditors. The spendthrift provisions are designed to provide protection under California Civil Code Section 704.115(a)(1), under the category *Private Retirement Plans*. Moreover, "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable [in bankruptcy proceedings.]" (Bankruptcy Code, 11 U.S.C. § 541(c)(2). See also B.R. 328, Bankr. C.C. of Calif., 2004; and California Probate Code § 15306.5(a).) Finally, California law provides that "[t]he exemption statutes should be construed, so far as practicable, to the benefit of the judgment debtor" [See, *Lampley v. Alvares* (1975) 50 Cal.App.3d 124, 128 [123 Cal.Rptr. 181].

/ / /

/ / /

/ / /

/ / /

/ / /

III.

## CONCLUSION

For all of the reasons stated above, Defendants respectfully request that the Trustee's motion for preliminary injunction be denied.

Dated: August 23, 2018                    THE WILLIAMS FIRM PLC


By: /s/ J. Scott Williams
       J. SCOTT WILLIAMS
Attorneys for Defendant, MARK ZIEBOLD,
as trustee of the PRIVATE RETIREMENT
TRUST #STEDEN1007 dated December 28, 2015


CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC


By: /s/ Christopher L. Blank
       CHRISTOPHER L. BLANK
Attorney for Defendants, KEVIN LIEBECK, as
executor of the Estate of DENNY ROY
STEEMAN, KEVIN LIEBECK as successor
Trustee of the SURVIVORS TRUST, as under the
2010 STEELMAN INTER VIVOS TRUST, MARK
ZIEBOLD as trustee of the PRIVATE
RETIREMENT TRUST, SHAUNAH LYNN
STEELMAN, an individual, JODI DENISE
STEELMAN, an individual

## DECLARATION OF DUSTIN I. NICHOLS

I, DUSTIN I. NICHOLS, declare as follows:

1.      I am an attorney at law, duly licensed to practice law in the State of California. I am the principal member of Law Office of Dustin I. Nichols, APC. Prior to his death, my firm represented Denny Roy Steelman, deceased (the "Debtor"). The matters stated herein are within my own personal knowledge and belief, and if called as a witness, I would competently testify to the same.

2.      In or about September 2015, the Debtor engaged my firm to assist the Debtor in transitioning from his former profession as an electrical contractor into the property management field. I was also engaged to assist the Debtor in creating a retirement plan. At the commencement of our engagement the Debtor advised me that he was no longer able to work as a contractor, due to both financial problems and health. The Debtor had decided to set up a new business that would primarily focus on managing his own commercial real estate and eventually that of others, a business which he would be able to operate notwithstanding his failing health, and which he could continue to operate after his retirement. He also asked me to set up an appropriate retirement plan that would provide for his eventual retirement in the near future.

3.      During the course of my engagement I assisted the Debtor in creating Retirement Wealth Management LLC ("RWM"), whose articles of incorporation were filed on November 10, 2015. Concurrently, I explored several options for potential retirement vehicles, including 401ks, profit sharing plans and ERISA qualified plans. Given the Debtor's circumstances, I recommended that the Debtor consider a private retirement plan. The Debtor agreed and in his capacity as co-manager of RWM, engaged me and Trust-CFO to design and set up a private retirement plan.

4.      At the Debtor's direction, I engaged Raymond F. Olmo of Trust-CFO to prepare the plan adoption agreement **(Exhibit 2, pp 2-12)** and the plan document **(Exhibit 2, pp 15-41)**, and to create the required analytics, necessary to determine the proper amounts to be contributed to the Plan in order to adequately and properly fund the Debtor's retirement **(Exhibit 2, pp. 42-44)**. Following receipt of the adoption agreement, plan document and analytics from Mr. Olmo, I prepared the trust agreement. As set forth on the Certification of Trust, dated December 28, 2015 **(Exhibit 2, pp 89-93)**, the trust was named Private Retirement Trust #Steden1007 Dated December 28, 2018 (the "PRT"), the trust was settled by RWM, and Mark Ziebold was identified

1

2        I declare under penalty of perjury under the laws of the State of California and the United

3    States of America that the foregoing is true and correct.

4    Executed this 23rd day of August, 2018 at Newport Beach, California.

5

6                                                    DUSTIN J. NICHOLS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION

## DECLARATION OF MARK ZIEBOLD

I, MARK ZIEBOLD, declare as follows:

1.      I am the duly appointed and acting trustee of the Private Retirement Trust #Steden1007 Dated December 28, 2015 (the "PRT"). The matters stated herein are within my own personal knowledge and belief, and if called as a witness, I would competently testify to the same.

2.      In or about November 2015, I was asked by a colleague of mine, Dustin Nichols, to serve as the trustee of a private retirement trust that he was designing as part of a private retirement plan for Mr. Denny Steelman (the "Debtor"). Prior to this meeting with Dustin Nichols I had never heard of the Debtor, nor had ever met him. I subsequently met with the Debtor for the first time along with Mr. Nichols and Ray Olmo, who had prepared the plan adoption agreement **(Exhibit 2, pp 2-12)**, the plan document **(Exhibit 2, pp 15-41)**, and the required analytics, necessary to determine the proper amounts to be contributed to the Plan **(Exhibit 2, pp. 42-44)**. I was advised that the plan sponsor was going to be a newly created LLC, Retirement Wealth Management LLC ("RWM"), which Mr. Steelman was going to use as an ongoing business vehicle. I was also provided with copies of the proposed plan adoption agreement, plan document with analytics and the proposed trust agreement. After reviewing the proposed documents and further discussions, I agreed to act as Trustee for the PRT.

3.      In my capacity as Trustee of the PRT, I executed the Plan Adoption Agreement and the Plan Document on December 9, 2015. On December 28, 2015 I executed the PRT's Certification of Trust. As indicated in the Certificate of Trust **(Exhibit 2, pp 89-93)**, the trust was named Private Retirement Trust #Steden1007 Dated December 28, 2015 (the "PRT") and RWM was the settlor.

4.      In accordance with the Plan Analytics, the Debtor made a total of four contributions between December 28, 2015 and March 21, 2016 totaling $1,358,086.15. The contributions were approved by me in accordance with the plan document and re-characterized as PRT assets. As such, the re-characterized assets became assets of the PRT under my exclusive possession and control. In accordance with the plan document, all investment decisions regarding the PRT assets were made exclusively by me pursuant to my business judgment and my fiduciary obligations as Trustee of the PRT. Approximately $500,000.00 of PRT assets were invested in the purchase an annuity from Nationwide Life (the "Annuity").

1  Attached hereto as **Exhibit 1** is a true and correct copy of the Annuity Contract purchased by the

2  PRT from Nationwide Insurance Company for a lump sum premium of $502,500.00. The sum

3  of $815,000.00 was loaned to the Denny R. Steelman, Trustee of the Survivor's Trust under the

4  2010 Steelman Inter Vivos Trust dated August 10, 2010 (the "Secured Loan"). The Secured

5  Loan was evidenced by a promissory note in the amount of $815,000 and secured by a security

6  agreement and first deed of trust against real property commonly known as 26422 Lombardy

7  Road, Mission Viejo, CA  92692 **(Exhibit 2, pp 154-168).** The promissory note provided for a

8  maturity date of March 16, 2031, with an annual interest rate of 2.33% and fixed monthly

9  payments of $2,000.00 per month. All of the required monthly payments on the note were made

10 by the obligor until approximately August 2017. Following the note default I considered

commencing foreclosure proceedings under the deed of trust, but was advised that the automatic

stay in bankruptcy prevented me from doing so.

11         5.      Following completion of the formation and funding of the PRT, I caused a

12 compendium of the plan and PRT documents to be compiled and provided the same to the

13 Debtor. A true and correct copy of the PRT compendium is attached hereto as **Exhibit 2.**

14         6.      Since the PRT was the beneficiary of the death benefit under the PRT's annuity,

15 following Mr. Steelman's death I submitted the appropriate paperwork to Nationwide Life in

16 order to receive the death benefit. I subsequently received payment of the death benefit from

Nationwide Life.

17

18         I declare under penalty of perjury under the laws of the State of California and the United

19 States of America that the foregoing is true and correct.

20 Executed this **23rd** day of **August**, 2018 at Papaikou, Hawai'i

21

22         MARK ZIEBOLD

23

24

25

26

27

28

1

# PROOF OF SERVICE

2

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  15615 Alton Pkwy, Suite 175, Irvine, California 92618.

4

5

A true and correct copy of the foregoing document described as DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

6

7

8

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 23, 2018 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

9

10

11

12

13

14

15

- Daniel M Anderson    daniel.anderson@icemiller.com, sandy.heaberlin@icemiller.com
- Reem J Bello    rbello@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cyoshonis@wgllp.com;cbmeeker@gmail.com
- John C Cannizzaro    john.cannizzaro@icemiller.com, deborah.martin@icemiller.com
- Jeffrey I Golden    jgolden@wgllp.com,
  kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- Weneta M Kosmala (TR)    ecf.alert+Kosmala@titlexi.com,
  wkosmala@txitrustee.com;dmf@txitrustee.com;kgeorge@kosmalalaw.com
- Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- J Scott Williams    jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com

16

17

18

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On, _____I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

19

(See attached list)

20

21

22

23

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

24

 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25

| 8/23/2018 | J. SCOTT WILLIAMS | /s/ J. Scott Williams |
|-----------|-------------------|------------------------|
| Date | Type Name | Signature |

26

27

28

1

**(PROOF OF SERVICE)**
**CONT.**

2

**II. SERVED VIA U.S. MAIL**

3

KEVIN LIEBECK as executor of the Estate of
DENNY ROY STEELMAN

4

7655 Park Forest Drive
Huntington Beach, CA 92648

5

KEVIN LIEBECK, as successor Trustee of the

6

SURVIVORS TRUST, as under the 2010
STEELMAN INTER VIVOS TRUST

7

7655 Park Forest Drive
Huntington Beach, CA 92648

8

Shaunah Lynn Steelman

9

26422 Lombardy Road
Mission Viejo, CA 92692-3267

10

Jodi Denise Steelman

11

24453 Sunshine Drive
Laguna Niguel, CA 9677-7825

12

CSC-Lawyers Incorporating Service

13

Agent for Service of Process for Nationwide Life
Insurance Company

14

2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505

15

Nationwide Life Insurance Company

16

ATTN: President
One West Nationwide Blvd.

17

Columbus, OH 43215

18

CSC-Lawyers Incorporating Service
Agent for Service of Process for Nationwide Life

19

and Annuity Company
2710 Gateway Oaks Drive, Suite 150N

20

Sacramento, CA 95833-3505

21

Nationwide Life and Annuity Company
ATTN: President
One West Nationwide Blvd.

22

Columbus, OH 43215

23

24

25

26

27

28