**WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
Michael R. Adele, 138339
techlitcenter@yahoo.com
Faye Rasch, State Bar No. 253838
frasch@wgllp.com
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Attorneys for Chapter 7 Trustee
Weneta M.A. Kosmala

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:16-bk-14227-ES |
| DENNY ROY STEELMAN, | Chapter 7 |
| Debtor. | Adversary No. 8:18-ap-01042-ES |
| WENETA M.A. KOSMALA, solely in her capacity as Chapter 7 Trustee of the Estate of Denny Roy Steelman, | **CHAPTER 7 TRUSTEE'S REPLY TO DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION** |
| Plaintiff, | **DATE:** September 6, 2018<br>**TIME:** 10:30 a.m.<br>**CTRM: 5A** |
| KEVIN LIEBECK, as executor of the Estate of DENNY ROY STEELMAN, KEVIN LIEBECK as successor Trustee of the Survivors Trust, as under the 2010 Steelman Inter-Vivos Trust, MARK ZIEBOLD as trustee of the PRIVATE RETIREMENT TRUST, SHAUNAH LYNN STEELMAN; an individual, and JODI DENISE STEELMAN, an individual, NATIONWIDE LIFE INSURANCE COMPANY, NATIONWIDE LIFE AND ANNUITY COMPANY, | |
| Defendants. | |

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE, DEFENDANTS AND ALL OTHER PARTIES-IN-INTEREST:**

Plaintiff Weneta M.A. Kosmala ("Plaintiff"), in her capacity as the duly appointed and acting chapter 7 trustee of the bankruptcy estate ("Estate") of Denny R. Steelman ("Debtor"), hereby submits her Reply to Defendants' Opposition ("Opposition") to Preliminary Injunction ("Motion") along with the Declaration of Claudia Yoshonis ("Yoshonis Dec.") and respectfully represents as follows:

## I.  INTRODUCTION

As a preliminary matter, the Trustee believes the temporary restraining order ("TRO") currently in place is sufficient and would ask that the Court simply convert the TRO into a preliminary injunction to maintain the status quo pending the outcome of the litigation. The Trustee has adequately set forth the grounds for a preliminary injunction in her moving papers. Put simply, the above captioned defendants (collectively "Defendants") cannot prevail in this action absent a finding of a valid private retirement trust. The Trustee's argument and evidence make clear that no such finding is possible. The argument advanced by the Defendants seems to be that the private retirement trust ("PRT") is exempt and valid because the Debtor paid professionals to make it so. There is no evidence whatsoever that the PRT was created in an employment context, or that it was designed for the Debtor's retirement -both of which are perquisites to a valid private retirement trust. The omissions from the Opposition are far more telling than its contents.

In the twenty pages of briefing submitted by the Defendants, there exists not even one sentence that suggests the Debtor **ever** performed **any** work for his purported employer and retirement plan sponsor, Retirement Wealth Management, LLC ("RMC"). Indeed, there is nothing that sets forth what if anything RMC did. There is merely an oblique reference to the Debtor's desire to manage commercial real estate – a field in which he seemingly had no experience.

Further, notwithstanding, the Debtor's alleged employment by RMC, the Debtor, in his schedules, made no mention of RMC and simply stated that he was retired.  The Opposition does not contain any evidence that this company did anything other than act as a shell for the purpose of the creation of the PRT.  The lack of a legitimate employer dooms the PRT. Even worse, and

1185578.1                                                              2                                                              REPLY

absurdly, even if the Debtor was to be employed by RMC, he was only going to be employed for a matter of months and then retire at 71.

In addition, while the Defendants acknowledge the deposits into the PRT, there is no information as to the source of these funds. Unlike a typical retirement fund, that accumulates funds annually for a period of time, the Debtor simply made four lump sum payments into the PRT that appear to derive from the sale of real property. Moreover, shortly after the PRT was created, the Debtor borrowed more than fifty percent (50%) if its value to purchase his residence.

In short, the evidence establishes that the PRT is invalid. As a result, its assets are property of the bankruptcy estate because the debtor fraudulently transferred them into the PRT. Therefore, the preliminary injunction should issue to preserve the status quo pending the outcome of the litigation.

### I. THE TRUSTEE IS LIKLEY TO SUCEED ON THE MERITS

#### a. The PRT Was Not Created by an Employer.

The legislative history of § 704.115(a)(1) evidences that legislature intended "to exempt only retirement plans established or maintained by private employers or employee organizations, such as unions, not arrangements by individuals to use specified assets for retirement purposes." *In re Lieberman*, 245 F.3d 1090, 1095 (9th Cir. 2001). For example, in *In re Simpson*, 557 F.3d 1010, 1018 (9th Cir. 2009), the Court declined to find a single-premium annuity would qualify under California law as a private retirement plan because it was not created in the employment sphere. "While the California Supreme Court has not expressly held that the statute limits private retirement plans to those established or maintained by an employer, it has applied the exemption only to such plans." *Id*; see also *In re Barnes*, 275 B.R. 889, 897 (E.D. Cal. 2002).

Here no such employer exists. In accordance with the Defendants' Opposition, the sum total of RWM acts and business operations was the filing of its articles of incorporation and operating agreement. There is no evidence that the Debtor worked even one day for this newly created company. Indeed, the Debtor's schedules make no mention of RWM and list his employment status as retired. The Defendants agree that "Private Retirement Plans are available for employed persons…who wish to save for retirement." Opposition at p.8. Thus, to show that the Debtor was

1185578.1 3 REPLY

eligible for such a plan, the Defendants would have had to show that he actually was an employee of RWM – a fact which his schedules contradict.

### b. <u>Lump Sum Contributions Are Not Retirement Planning.</u>

A private retirement plan "requires more than the instantaneous transmutation of a lump sum of previously nonexempt money or other assets into an exempt retirement plan. It contemplates the gradual accumulation of money to fund a future retirement." *In re Barnes,* 275 B.R. 889, 896 (Bankr. E.D. Cal. 2002)(Court rejected annuity purchased with proceeds of home sale characterized as private retirement plan). The *Barnes* court reasoned, *inter alia*, that such an understanding was supported by the statute which refers to plans, including but not limited to, union retirement plans that are funded by long term annual contributions. *Id.*

The Defendants seem to be arguing that the PRT was designed for retirement purposes because the Debtor paid professionals to say so. While the Defendants identify the transfers of funds into the PRT, they provide no information whatsoever as to the source of those funds. Real property records show that the Debtor sold the real property located at 26881 Windsor Drive, San Juan Capistrano, California in December of 2015 for $1,550,000 (the same month that he made the deposits into the PRT). It makes logical sense that the lion share of the PRT funds derived from this sale. A true and correct copy of the real property records is attached to the Yoshonis Dec. as Exhibit "1."

Instead of identifying the source of the contributions, the Defendants simply claim that the contributions made to the PRT were based on "analytics which determined the amount necessary to support the Debtor in retirement based on his age and intended retirement date." Regardless of Defendants' purported "analytics," a "retirement plan" established with an intended retirement date of <u>less than one year</u> is not a legitimate vehicle to provide for gradual accumulation of money to fund a future retirement – but rather, a transparent attempt to fraudulently shield specific assets from creditors at the last minute before retirement. Given this time line, the Defendants characterization of a plan that would provide for the debtor's "eventual retirement in the near future" is disingenuous.

### c. **The PRT Funds Were Not Used for Retirement Purposes.**

The PRT funds were **not** used to gradually grow funds for retirement, but as a last-ditch effort to shield specific assets from creditors without diminishing his continued use of the funds for his own benefit. The "independent investment choice" purportedly made by the PRT trustee was to lend the Debtor $815,000 to purchase a home. If the Debtor had no input in this selection, how did the PRT Trustee come to fund the home the Debtor lists on his schedules as his residence and as being owned by him personally? Even more strange, the loan was at below market interest and contained a balloon payment at the end. The above loan from the PRT had a term of 15 years, with an interest rate of 2.33% per annum, $2,000.00 payable per month (with the amount above the interest payment applied to principal), and any outstanding principal balance payable at the maturity date.

Moreover, the use of the funds in this manner made no investment sense whatsoever, except as an imminent retirement attempt to place specific assets outside the reach of creditors, because the "investment" below market. At 2.33%, the above loan had an interest rate below the average 15-year mortgage rate as of February 2016 of 2.96% (source: Freddie Mac). Furthermore, even if one were to assume a rate of 2.33% was reasonable, a monthly payment was far below the fully amortizing payment associated with this interest rate and a loan amount of $815,000. Using Excel's PMT function, the monthly payment that would fully amortize this loan in 15 years would be $5,369, over double the stated amount. Thus, the subject loan had a significant balloon payment (of over $700,000) due at maturity. Other things equal, this would increase the risk of the loan, warranting an even higher interest rate. Declaration of Howard Grobstein, Docket No. 15 at ¶10, 26-27.

### d. **The Cases Cited By Defendants Do Not Apply.**

The cases cited by the Defendants do nothing to assist their arguments. As a preliminary matter, the holding of *In re Stern*, 345 F.3d 1036, 1044 (9th Cir. 2003) is not as stated by the Defendants. The court did not find that conversion of assets from non-exempt to exempt property was not fraud, but rather found that such act was insufficient to establish *fraud per se* on a motion for summary judgment. The court explained that it was rendering its ruling in keeping with

*Wudrick v. Clements*, 451 F.2d 988 (9th Cir. 1971) wherein it rejected "[a] finding of fraud [that] was based solely on the fact that nonexempt assets were deliberately converted to exempt assets just prior to filing the bankruptcy petition." *Stern* at 1044. Stern does not by any means prevent a court from finding the attempted conversion to an exempt asset was made to hinder, delay, and defraud creditors in the presence of sufficient facts. *In re Beverly*, 374 B.R. 221, 242 (B.A.P. 9th Cir. 2007), aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008)("Stern should be understood as an elementary summary judgment decision in which the constellation of facts did not yield a genuine issue of material fact."). In *Beverly*, the Panel also stated that "[t]he conclusion that the pension plan in Stern was fully exempt **necessarily means that it passed muster under the California statutory requirement that it be designed and used for retirement purposes**." *Id.* (Emphasis Added). Thus, "even though not per se fraudulent, prebankruptcy transfers of nonexempt assets into exempt assets are also not per se insulated from avoidance." *In re Ganier*, 403 B.R. 79, 84 (Bankr. D. Idaho 2009).[1]

Here, the Debtor did not simply convert non-exempt property to exempt property. The Debtor created a sham retirement vehicle that by all reasonable and logical views cannot withstand scrutiny. There is no evidence that the PRT was created by the Debtor's employer, that the Debtor ever actually worked for the entity that purportedly created the PRT, that the entity that purportedly created the PRT had any funds to pay any employees (much less the Debtor), or that the Debtor was ever paid anything to work for any such "employer." Moreover, the funds were **not** used by the PRT as a legitimate retirement vehicle, but rather as an eleventh-hour attempt to shield specific assets immediately prior to imminent retirement. Indeed, the funds were even "invested" in below-market rates so that the Debtor could continue to benefit from and make use of the (fraudulently) transferred funds, while attempting to erect a last-minute shield against creditors who could

---

[1] In addition, a debtor's homestead exemption may be reduced to the extent the property claimed as the homestead was acquired with nonexempt assets in the 10-year period prior to bankruptcy with the intent to hinder, delay, or defraud a creditor. 11 USC § 522(o).

otherwise obtain those funds for payment of the Debtor's debts.  This is a far cry from simply moving assets into an exempt retirement plan.  Nothing about the PRT shows that it was legitimately created for retirement purposes.

The Defendants reading of *In re Daniel* seems to be at odds with its text. The Court did not, as the Defendants suggest, loosen the standard, but merely stated that the "two discrete transactions viewed together led the Bankruptcy and District Judges to conclude that the debtor did not use the plan principally for retirement purposes." *In re Daniel*, 771 F.2d 1352, 1357 (9th Cir. 1985), abrogated by *Patterson v. Shumate*, 504 U.S. 753, 112 S. Ct. 2242, 119 L. Ed. 2d 519 (1992). In any event, even if a private retirement trust need only be used principally for retirement purposes, *Jacoway* poses a problem for the Defendants.  The Court in *Jacoway* advocates for an analysis of the following factors:

> [W]hether withdrawals or loans were made following the procedures set out in the plan, whether the debtor used the plan to hide otherwise ineligible assets from bankruptcy administration, or from creditors, whether the withdrawals or loans "benefited the plan's retirement purpose by preserving and enhancing the capital of the plan, and whether any withdrawals diminished or will diminish the assets in the plan to such an extent that they are inconsistent with the majority of the assets being used for long-term retirement purposes.

*In re Jacoway*, 255 B.R. 234, 239–40 (B.A.P. 9th Cir. 2000), aff'd, 284 F.3d 1323 (9th Cir. 2002)(Internal Citations Omitted)(Emphasis Added). *See also, In Re Daniel* (*Daniel v Security Pacific National Bank*, No. 84-2412, argued and submitted July 12, 1985, decided Sept. 20, 1985)(If debtor's real concern had been retirement, rather than buying a residence with pre-tax dollars, then he would surely have invested the funds in assets which would yield a competitive money market return, would provide adequate security, and would preserve and enhance the capital of the plan); *In re Bloom*, 839 F.2d 1376, 1379 (9th Cir. 1988)(The debtor was charged a reasonable rate of interest on the loans).

Here, the Debtor, almost instantly, borrowed more than half of the value of the PRT to purchase his home. In accordance with the closing statement, the purchase price was $840,000. A true and correct copy of the Closing Statement is attached to the Yoshonis Dec. as Exhibit "2".

Given that the loan was at below market rates and carried a **ninety-seven percent (97%) loan to value ratio**, it can hardly be said to advance the capital of the plan. Further, the loan was a withdrawal that significantly reduced the value of the PRT by more than fifty (50%) percent. These facts cut against a finding that the PRT was designed for retirement purposes.

### e. The Nationwide Funds Are Subject to Recovery.

The Trustee is not even sure she can decipher the circular analysis provided by the Defendants regarding the Nationwide Annuity Contract. The Defendants seem to be arguing that even though they claim the Nationwide Annuity Contract is owned by the PRT and not the Debtor, it should be exempt because it is post-petition property of the Debtor.

This reasoning does not make any logical sense. The funds used to purchase the Nationwide Annuity were fraudulently transferred to the PRT by the Debtor and are therefore subject to recovery by the Trustee.

## II.    CONCLUSION

Based on the foregoing, the Trustee respectfully requests that this Court grant the Motion as follows:

1. Issuing a preliminary injunction order prohibiting the Defendants, from selling, encumbering, pledging, hypothecating, transferring, assigning, conveying, leasing, disposing of, abandoning or otherwise alienating the PRT Assets, Bank Account and Nationwide Proceeds; and

2. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  August 30, 2018    WEILAND GOLDEN GOODRICH LLP

By:  /s/ *Faye C. Rasch*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**650 Town Center Drive, Suite 600, Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S REPLY TO DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 30, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) **August 30, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **August 30, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Erithe Smith, 411 W. 4th Street, 5th Floor, Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 30, 2018 | Kelly Adele | *Kelly Adele* (signature) |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
0.0

F 9013-3.1.PROOF.SERVICE

**Electronic Mail Notice List**
Daniel M Anderson     daniel.anderson@icemiller.com, sandy.heaberlin@icemiller.com
Reem J Bello     rbello@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cyoshonis@wgllp.com;cbmeeker@gmail.com
Christopher L Blank     chris@chrisblanklaw.com
John C Cannizzaro     john.cannizzaro@icemiller.com, deborah.martin@icemiller.com
Jeffrey I Golden     jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
Weneta M Kosmala (TR)     ecf.alert+Kosmala@titlexi.com, wkosmala@txitrustee.com;dmf@txitrustee.com;kgeorge@kosmalalaw.com
J Paul Moorhead     moorhead@luch.com, gina@luch.com;kimberley@luch.com
Faye C Rasch     frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
J Scott Williams     jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com